ROBBINS GELLER RUDMAN
  & DOWD LLP
LAURIE L. LARGENT (153493)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
llargent@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| SANDRA WASWICK, on Behalf of All Others Similarly Situated, | Case No. 2:22-cv-08375-JLS(ASx) |
|---|---|
| Plaintiff, | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO UNDERWRITER DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT |
| vs. | |
| TORRID HOLDINGS INC., et al., | |
| Defendants. | |

DATE:          September 22, 2023
TIME:          10:30 a.m.
COURTROOM:   8A
JUDGE:        Hon. Josephine L. Staton

4875-9524-5428.v1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................. 1

II. STATEMENT OF FACTS ..................................................................... 2

III. THE COMPLAINT SUFFICIENTLY PLEADS SECURITIES ACT VIOLATIONS ........................................................................................ 3

    A.  Standard of Review on a Motion to Dismiss ..................................... 3

    B.  Legal Standard for Pleading Securities Act Violations ...................... 3

    C.  Rule 8 Applies to Plaintiffs' Securities Act Claims ........................... 4

    D.  Plaintiffs Adequately Allege that the Registration Statement Contained False and Misleading Statements ...................................... 6

        1.  The Complaint Sufficiently Alleges Why the Registration Statements Were False and Misleading ...................................... 6

        2.  The Merchandise Model Statements Are Not Inactionable Opinions .................................................................. 8

        3.  The Alleged Risk Warnings Concerning Inventory Were Misleading .................................................................................. 9

        4.  Defendants' Accurate Statements of Fact Arguments Fail ...... 10

        5.  The Bespeaks Caution Doctrine Does Not Apply .................... 12

    E.  The Registration Statement's Risk Disclosures Do Not Immunize Defendants from Liability ................................................ 14

    F.  Defendants Had a Duty to Disclose Under Regulation S-K ............... 14

    G.  Defendants Had a Duty to Disclose Under Ninth Circuit Law .......... 17

    H.  The Complaint States a Claim for Violation of §12(a)(2) .................. 18

IV. CONCLUSION ..................................................................................... 19

- i -

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Belodoff v. Netlist, Inc.*,
2009 WL 1293690 (C.D. Cal. Apr. 17, 2009) ...................................................... 12

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .......................................................................... 9, 10

*Brown v. China Integrated Energy, Inc.*,
2013 WL 12124124 (C.D. Cal. Apr. 22, 2013) ...................................................... 6

*Crews v. Rivian Auto., Inc.*,
2023 WL 3050081 (C.D. Cal. Feb. 16, 2023) ........................................................ 5

*Crews v. Rivian Auto., Inc.*,
2023 WL 4361098 (C.D. Cal. July 3, 2022) (Staton, J.) ................................. 4, 18

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................................ 19

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) .............................................................................................. 3

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ................................................................................. 9

*Golubowski v. Robinhood Mkts., Inc.*,
2023 WL 1927616 (N.D. Cal. Feb. 10, 2023) ..................................................... 15

*Herman & Maclean v. Huddleston*,
459 U.S. 375 (1983) ....................................................................................... 4, 18

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) ................................................................................ 4

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021), *cert. denied*,
__U.S. __, 142 S. Ct. 1227 (2022) ................................................................. 3, 13

- ii -

**Page**

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ......................................................11

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
   932 F. Supp. 2d 1095 (C.D. Cal. 2013) ................................................................6

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................5, 7

*In re CPI Card Grp. Inc. Sec. Litig.*,
   2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) ....................................................15

*In re CytRx Corp. Sec. Litig.*,
   2015 WL 5031232 (C.D. Cal. July 13, 2015) ......................................................4

*In re Daou Sys., Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) ...........................................................................4, 7

*In re DDi Corp. Sec. Litig.*,
   2005 WL 3090882 (C.D. Cal. July 21, 2005) ......................................................5

*In re Honest Co. Sec. Litig.*,
   615 F. Supp. 3d 1149 (C.D. Cal. July 18, 2022) ...............................................13

*In re Illumina, Inc.*,
   2018 WL 500990 (S.D. Cal. Jan. 22, 2018) .......................................................10

*In re LendingClub Sec. Litig.*,
   254 F. Supp. 3d 1107 (N.D. Cal. 2017) .............................................................11

*In re Lyft Inc. Sec. Litig.*,
   484 F. Supp. 3d 758 (N.D. Cal. 2020).............................................4, 9, 15, 17

*In re Pivotal Sec. Litig.*,
   2020 WL 4193384 (N.D. Cal. July 21, 2020) ....................................................17

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ............................................................................12

4875-9524-5428.v1

**Page**

*In re SLM Corp. Sec. Litig.*,
740 F. Supp. 2d 542 (S.D.N.Y. 2010) ............................................................... 12

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018) ...................................................... 14

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
2022 WL 2762213 (C.D. Cal. July 13, 2022) .................................................... 10

*In re Violin Memory Sec. Litig.*,
2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .................................................... 16

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2016) ..................................................................... 10, 17

*Lako v. Loandepot, Inc.*,
2023 WL 444151 (C.D. Cal. Jan. 24, 2023) ........................................................ 4

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) .............................................................................. 13

*Mallen v. Alphatec Holdings, Inc.*,
2013 WL 1294640 (S.D. Cal. Mar. 28, 2013),
*aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v.*
*Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) ............................. 14

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008) .......................................................................... 4, 10

*Mingbo Cai v. Switch, Inc.*,
2019 WL 3065591 (D. Nev. July 12, 2019) .................................................. 15, 16

*Oh v. Hanmi Fin. Corp.*,
621 F. Supp. 3d 1075 (C.D. Cal. 2022) ........................................................... 3, 18

*Okla. Police Pension & Ret. Sys. v. Lifelock, Inc.*,
780 F. App'x 480 (9th Cir. 2019) ......................................................................... 7

- iv -

4875-9524-5428.v1

**Page**

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ..................................................................................................... 8

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
    2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ..................................................... 16

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ..................................................................................................... 3

*Pirani v. Slack Techs., Inc.*,
    445 F. Supp. 3d 367 (N.D. Cal. 2020),
    *aff'd*, 13 F.4th 940 (9th Cir. 2021),
    *vacated on other grounds and remanded*,
    __ U.S. __, 143 S. Ct. 1433 (2023) ..................................................................... 17

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013) ................................................................ 5

*Rubke v. Capitol Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ............................................................................... 10

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ......................................................................... 10, 17

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
    375 U.S. 180 (1963) ..................................................................................................... 3

*Siegel v. Boston Beer Co., Inc.*,
    2022 WL 17417111 (S.D.N.Y. Dec. 5, 2022) ..................................................... 11

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ............................................................................... 14

*Sudunagunta v. NantKwest, Inc.*,
    2017 WL 8811116 (C.D. Cal. May 16, 2017) ................................................. 5, 6

*Terenzini v. GoodRx Holdings, Inc.*,
    2022 WL 2189592 (C.D. Cal. June 9, 2022) ..................................................... 16

4875-9524-5428.v1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77k ...............................................................................................................*passim*
  §77l ........................................................................................................................ 18
  §77l(a)(2) ......................................................................................................... 4, 17, 18
  §77l(a) ..................................................................................................................... 4
  §77z-1 ................................................................................................................. 4, 12
  §78j(b) ...................................................................................................................... 4

Federal Rules of Civil Procedure
  Rule 8(a) ............................................................................................................ 4, 5, 6
  Rule 8(a)(2) ............................................................................................................... 4
  Rule 9(b) .............................................................................................................. 2, 6
  Rule 12(b)(6) ........................................................................................................... 3

17 C.F.R.
  §229.105 ................................................................................................................ 16
  §229.303(b)(2)(ii) ............................................................................................... 14, 15

4875-9524-5428.v1

**TABLE OF ABBREVIATIONS**

| ABBREVIATION | DEFINITION |
|---|---|
| ¶___ and ¶¶___ | Citations to paragraphs in the Complaint |
| Complaint | Plaintiffs' Consolidated Class Action Complaint for the Violation of Federal Securities Laws (ECF 59) |
| CW | Confidential Witnesses |
| DC or Distribution Center | Distribution Center facility in West Jefferson, Ohio as described in ¶¶44-45 |
| Ex. __ | Refers to the attachments to the Declaration of Austin Norris in Support of Defendants' Motion to Dismiss Amended Class Action Complaint with Prejudice (ECF 72) |
| IPO | Torrid's initial public offering conducted on July 1, 2021 |
| Plaintiffs | Lead Plaintiff City of Warren Police and Fire Retirement System and additional plaintiff Erika Schroth |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| Sycamore Defendants | Sycamore Partners Management, L.P., Sycamore Partners Torrid, LLC, Sycamore Partners, L.P., Sycamore Partners Associates-C, L.P., Sycamore Partners Associates, L.P., Sycamore Partners Associates Investments, L.P., Sycamore Partners (Co-Invest), LLC, and Sycamore Partners Associates Co-Invest, L.P. |
| TB or Torrid Defendants' MTD | Defendant Torrid Holdings Inc. et al. Notice of Motion and Motion to Dismiss Amended Class Action Complaint with Prejudice (ECF 71) |
| Torrid or the Company | Torrid Holdings, Inc. |
| Torrid Defendants | Torrid Holdings, Inc., Lisa Harper ("Harper"), Stefan L. Kaluzny ("Kaluzny"), Theo Killion ("Killion"), Dary Kopelioff ("Kopelioff"), Elizabeth Muñoz ("Muñoz"), George Wehlitz ("Wehlitz"), and Sycamore Defendants |
| UB | Underwriter Defendants' Notice of Motion and Motion to Dismiss and Joinder; Memorandum of Points of Authorities in Support Thereof (ECF 74) |

- vii -

4875-9524-5428.v1

| ABBREVIATION | DEFINITION |
|---|---|
| Underwriter or UW Defendants | Morgan Stanley & Co. LLC, BofA Securities, Inc., Goldman Sachs & Co. LLC, Jefferies LLC, Robert W. Baird & Co. Incorporated, Cowen and Company, LLC, William Blair & Company, L.L.C., and Telsey Advisory Group LLC |

4875-9524-5428.v1

## I.   INTRODUCTION

The instant case against Morgan Stanley & Co. LLC, BofA Securities, Inc., Goldman Sachs & Co. LLC, Jefferies LLC, Robert W. Baird & Co. Incorporated, Cowen and Company, LLC, William Blair & Company, L.L.C., and Telsey Advisory Group LLC arises solely from those firms' negligent participation in Torrid's July 1, 2021 IPO.

Torrid's 2021 IPO was promoted by the UW Defendants who acted together, with the Torrid Defendants to draft and disseminate the Registration Statement. The UW Defendants collected more than $17 million for their participation in the IPO. Like the Torrid Defendants, the UW Defendants were also responsible for ensuring the completeness and accuracy of the statements contained in the Registration Statement. However, the Registration Statement misrepresented Torrid's strategies for product design and development, supply chain management, inventory planning, and resiliency to the COVID-19 pandemic.

Rather than truthfully disclose that Torrid had abandoned its data-driven merchandising strategies and was, instead, ordering large quantities of inventory in excess of demand causing a build-up of obsolete and out of season inventory, the Registration Statement assured investors that Torrid used a "data-driven approach to design, merchandising and inventory planning" with a flexible operating model that allowed Torrid "to respond quickly to the latest sales trends" (¶77), "make adjustments to . . . current offering[s] based on customer feedback" (*id.*) and "read and react with shallow initial buys" to evaluate customers' preferences while "minimizing fashion and inventory risk" (¶78). The Registration Statement also falsely represented that Torrid's only distribution facility was "highly automated," "state-of-the-art," and "capable of handling . . . existing and future needs." ¶83.

In truth, when Torrid's over-ordered inventory arrived at the DC, it sat in a pile-up of trailers that went unprocessed for weeks because of severe DC staffing shortages

- 1 -

4875-9524-5428.v1

and lack of storage capacity, which created millions of customer order backlogs prior to the IPO. Former employees who worked at Torrid's DC confirm that at the time of the IPO, inventory flow was a constant problem, Torrid was unable to hire enough employees to staff the DC, and, thus, dozens of trailers full of inventory sat in the DC's parking lot, remaining unreceived and unprocessed for months, causing an accumulation of inventory that would later require huge discounts to clear. As the excess inventory was eventually processed following the IPO, Torrid's inventory levels nearly doubled, adding to the accumulation of obsolete and seasonally-stale inventory, which required significant markdowns and promotions to sell and caused Torrid's financial performance to suffer.

The UW Defendants move to dismiss on the following grounds that: (i) the heightened pleadings standards of Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") apply to Plaintiffs' §11 claims; (ii) the alleged misstatements and omissions in the Registration Statement are non-actionable; and (iii) the Registration Statement did not violate Regulation S-K Items 303 and 105. As discussed below, each of the UW Defendants' arguments fail. Additionally, because the UW Defendants and the Torrid Defendants have joined in, and incorporated, each other's arguments (*see* TB at 1-2; UB at i), Plaintiffs incorporate herein the facts and arguments set forth in the concurrently filed memoranda of points and authorities in opposition to the Torrid Defendants' MTD in further support of this opposition.

## II.     STATEMENT OF FACTS

Plaintiffs refer the Court to the statement of facts set forth in §II of their opposition to the Torrid Defendants' MTD, and incorporate them herein.

- 2 -

4875-9524-5428.v1

### III.  THE COMPLAINT SUFFICIENTLY PLEADS SECURITIES ACT VIOLATIONS

#### A.  Standard of Review on a Motion to Dismiss

To withstand a Rule 12(b)(6) motion, the Complaint must be "plausible on its face." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 698 (9th Cir. 2021), *cert. denied*, __U.S. __, 142 S. Ct. 1227 (2022).[1] "A complaint is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*  The Court "'must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff.'" *Oh v. Hanmi Fin. Corp.*, 621 F. Supp. 3d 1075, 1082 (C.D. Cal. 2022).

#### B.  Legal Standard for Pleading Securities Act Violations

The Securities Act was enacted "to promote full and fair disclosure of information to the public in the sales of securities." *Pinter v. Dahl*, 486 U.S. 622, 646 (1988); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976) ("The Securities Act . . . was designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing."); *SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 (1963) ("A fundamental purpose [of the Securities Act], . . . was to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.").

To state a §11 claim, a plaintiff must plausibly allege "'(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor

---

[1]  Citations and footnotes are omitted and emphasis is added throughout unless otherwise indicated.

4875-9524-5428.v1

about the nature of his or her investment.'" *Lako v. Loandepot, Inc.*, 2023 WL 444151, at *10 (C.D. Cal. Jan. 24, 2023) (Staton, J.); *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) (§11 pleading burden is "'relatively minimal'"). "Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (1983).

For a §12(a)(2) claim, which establishes liability for "[a]ny person who . . . offers or sells a security" through a prospectus or oral communication containing a material misstatement or omission (15 U.S.C. §77l(a)), the requirement to plead a material misstatement or omission is materially identical to §11. *See Crews v. Rivian Auto., Inc.*, 2023 WL 4361098, at *51-*52 (C.D. Cal. July 3, 2022) (Staton, J.). Like a §11 claim, "'Section 12(a)(2) is a virtually absolute liability provision that does not require . . . that defendants possessed scienter.'" *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).

### C.    Rule 8 Applies to Plaintiffs' Securities Act Claims

As non-fraud claims, alleged Securities Act violations are subject to Rule 8(a) pleading standards, and a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 765 (N.D. Cal. 2020) ("Unlike Section 10(b) claims, the heightened pleading standards of the PSLRA do not apply to Section 11 claims. . . . '[A]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).'") (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1027 (9th Cir. 2005)). Defendants' contention otherwise is incorrect. TB at 5-6; UB at 2-3.

First, Plaintiffs' Securities Act allegations are carefully couched in negligence. *See* ¶93 ("In negligent violation . . . ."); ¶¶101, 103-104; *see also In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *13 (C.D. Cal. July 13, 2015) (applying Rule 8(a) and rejecting "unified course of fraudulent conduct" argument where complaint

- 4 -

4875-9524-5428.v1

alleges "Securities Act [d]efendants failed to conduct adequate due diligence . . . and acted negligently"); *In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *10 (C.D. Cal. July 21, 2005) (Rule 8(a) applies where Securities Act claims are "rooted in allegations of negligence").

Second, the Complaint alleges scienter only as to the Exchange Act Defendants. *Compare* ¶¶15-24 (defining Securities Act Defendants), *with* ¶¶120-128 (defining Exchange Act Defendants); ¶¶189-224 (scienter allegations); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1162 (C.D. Cal. 2008) (Rule 8(a) applies where fraud alleged only for certain defendants was "addressed in the '34 Act discussion"). Thus, the pleading distinctions here "are sufficiently different" such "that the less rigorous Rule 8(a) pleading standard applies" to Plaintiffs' Securities Act claims. *Sudunagunta v. NantKwest, Inc.*, 2017 WL 8811116, at *6 (C.D. Cal. May 16, 2017).

Notwithstanding Plaintiffs' diligent efforts to separate their non-fraud and fraud claims (*compare* ¶¶76-117, *with* ¶¶118-265), Defendants contend Plaintiffs' Securities Act claims "sound in fraud." UB at 2; TB at 5-6. Defendants, however, misleadingly quote Plaintiffs' Exchange Act claims to suggest Plaintiffs have contradicted their Securities Act fraud disclaimer. *See* TB at 5-6. But, while there are allegations "that some of Defendants' conduct in violation of the Exchange Act was fraudulent, Plaintiffs are permitted to plead their claims in the alternative in this manner." *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1114 (N.D. Cal. 2013). Defendants do not and cannot cite to "knowingly" or "recklessly false and misleading" allegations for Plaintiffs' Securities Act claims (¶¶76-117), and therefore, their reliance on *Crews v. Rivian Auto., Inc.*, 2023 WL 3050081, at *13 (C.D. Cal. Feb. 16, 2023), where "[p]laintiffs allege[d] that Defendants **knowingly** failed to disclose material facts even in the Securities Act sections of their Complaint" is misplaced. *Id.* (emphasis in original); TB at 5-6.

- 5 -

4875-9524-5428.v1

Plaintiffs allege that the Securities Act Defendants did not conduct a reasonable investigation, nor did they possess reasonable grounds to believe the Registration Statement did not contain untrue statements of material fact or omit information that was material to investors. ¶¶103-104.  These allegations are "terms of . . . negligence, not fraud, which proves that" Rule 8(a) applies. *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 932 F. Supp. 2d 1095, 1107 n.5 (C.D. Cal. 2013).  Thus, the pleading distinctions here "are sufficiently different" such "that the less rigorous Rule 8(a) pleading standard applies" to Plaintiffs' Securities Act claims against the Securities Act Defendants. *NantKwest*, 2017 WL 8811116, at \*6.

Even assuming *arguendo* that Rule 9(b) applies to Plaintiffs' Securities Act claims (it does not), the Complaint meets that standard because it details "'what is false or misleading about a statement, and why it is false.'"  *Brown v. China Integrated Energy, Inc.*, 2013 WL 12124124, at \*11 (C.D. Cal. Apr. 22, 2013).

### D.    Plaintiffs Adequately Allege that the Registration Statement Contained False and Misleading Statements

The UW Defendants challenge falsity on several unavailing grounds, including: (i) lack of particularity as to why the statements were false; (ii) non-actionable puffery and/or opinions; (iii) application of the bespeaks caution doctrine; and (iv) that the statements were accurate statements of fact.  The UW Defendants' arguments fail for the reasons discussed below and for those discussed in Plaintiffs' opposition to the Torrid Defendants' MTD, incorporated herein.

#### 1.    The Complaint Sufficiently Alleges Why the Registration Statements Were False and Misleading

The UW Defendants' claim that Plaintiffs have not pled with particularity why the alleged misstatements are materially false and misleading, is without merit for the reasons set forth in §§IV.A.1., of Plaintiffs' opposition to the Torrid Defendants' MTD, which Plaintiffs incorporate by reference herein.

- 6 -

Additionally, the UW Defendants' arguments that the CW allegations do not support the misstatements, should be rejected.  UB at 9, 11-13.  Defendants do not credibly challenge the reliability or personal knowledge of the allegations attributed to the CWs.  Nor can they because the Complaint contains sufficient particular factual matter to "'support the probability that a person in the position occupied by the source would possess the information alleged.'"  *Daou*, 411 F.3d at 1015-16.  The Complaint's CW allegations provide plausible, coherent, first-hand accounts of events concerning the ongoing undisclosed inventory and supply chain issues that occurred both pre-IPO and post-IPO.  ¶¶34-41.  Both CWs were in positions at the DC (where Torrid's inventory was received), and employed within date ranges (before and after the IPO), to be personally knowledgeable about these events.  *Okla. Police Pension & Ret. Sys. v. Lifelock, Inc.*, 780 F. App'x 480, 484 n.5 (9th Cir. 2019) (CW allegations accepted where they were "'in a position to be personally knowledgeable'").  Also, the CW accounts corroborate each other's in that they both describe the same ongoing events that CW-1 reported started before the IPO: delayed shipments, lack of resources at the DC, and dozens of trailers of unprocessed inventory parked outside the DC.  ¶¶35-36, 39-40; *Countrywide*, 588 F. Supp. 2d at 1146 n.10.  On this basis alone, the CW accounts must be credited to support why the alleged statements were misleading.

Instead, Defendants assert that CW-1's account is too vague to support the allegations that the Registration Statement was misleading and omitted material information.  UB at 9.  Not so.  CW-1 worked at the DC, where Torrid's inventory was delivered, stored, and managed from December 2019, before the pandemic and the IPO, to March 2022.  ¶34.  CW-1 tracked Torrid's inventory received at the DC and worked with the Company's WMS.  *Id.*  These allegations are sufficient to support CW-1's report that prior to the IPO, Torrid was experiencing shipment delays, constant inventory flow problems, increasingly growing order backlogs, insufficient resources at the DC, and unprocessed inventory accumulating in numerous trailers that

- 7 -

when eventually processed, had to be sold with promotions and deep discounts. ¶35. While Defendants might not like these allegations, they are sufficiently pled.

### 2.   The Merchandise Model Statements Are Not Inactionable Opinions

The UW Defendants' claim that two of the Merchandise Model misstatements (¶¶77-78) are non-actionable opinions is unavailing. UB at 6. First, ¶77 does not use opinion language (*e.g.*, believe). Rather, the alleged misstatement in ¶77 affirmatively told inventors that "[w]e employ a data-driven approach to design, merchandising and inventory planning" and "have the flexibility to respond quickly to the latest sales trends and make adjustments to our current offering." These affirmative statements convey embedded facts – *i.e.*, that Torrid was purportedly using a data-driven inventory approach to manage inventory levels and respond to demand – that were false when made given the backlog of unfulfilled customer orders, unprocessed trailers, and mounting inventory. *See* ¶¶34-35, 38-40. Accordingly, these statements are actionable. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015) (reasonable investors "expect[] not just that the issuer believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's possession at the time").

Second, the UW Defendants take a single sentence in ¶78 containing the word "believe" out of context to support their opinion argument. UB at 6. The statements in ¶78 told investors that "we utilize a read-and-react testing approach . . . thus minimizing fashion and inventory risk," and that Torrid's "merchandising strategy" enabled the Company to generate 80% of sales from products sold at full price, which was false given Torrid's abandonment of its data-driven inventory processes. Accordingly, this is also an actionable statement of affirmative fact, for which the Registration Statement's limited use of "believe" does not absolve liability. *Omnicare*, 575 U.S. at 188-89.

- 8 -

4875-9524-5428.v1

### 3.     The Alleged Risk Warnings Concerning Inventory Were Misleading

Contrary to the UW Defendants' argument, the risk warnings in ¶81 are actionable misstatements.  UB at 12.  "[R]isk disclosures can be misleading to investors when they 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of the[] risks may already have come to fruition.'" *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 781 (9th Cir. 2023); *see also Lyft*, 484 F. Supp. 3d at 769-70 (risk factor misleading where "warned-of risks" had already materialized); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986 (9th Cir. 2008) (statement that "speaks entirely of as-yet-unrealized risks and contingencies" does nothing to "alert[] the reader that some of these risks may already have come to fruition").  That is the case here.

Contrary to the UW Defendants' claim, Plaintiffs allege that Torrid's excess inventory problems began *before* the IPO.  *See* ¶6 (prior to the IPO, shipment delays were causing massive accumulation of excess inventory that could not be timely processed into the Company's inventory management system); ¶¶68, 82(b) (according to CW-1, delayed shipments were also causing Torrid to miss seasonal launches, such as spring/summer, which created excess inventory that either didn't move or could not be sold at full price because it was seasonally stale); ¶70 (by the time of the IPO, Torrid had completely lost its ability to accurately monitor demand and adjust inventory levels in real-time, to ensure it had the right products on hand to meet customer needs without carrying excess inventory); *id.* ([t]hese conditions resulted in Torrid being over-stocked in many of the Company's Basic, Core, and Curve line styles by the time of the IPO); ¶82(d) (before the IPO, Torrid was purchasing large quantities of product upfront and exceeding planned merchandise levels, which left the Company unable to quickly respond to customer demand; and this resulted in the Company not having the right products on hand to meet consumer demand and a build-up of excess, stale and obsolete seasonal inventory that was not selling).

- 9 -

4875-9524-5428.v1

Paragraph 81 did not alert investors to these materialized facts and, therefore, is actionable. *See In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2022 WL 2762213, at *9 (C.D. Cal. July 13, 2022) (risk disclosures may be actionable where they "do not 'alert[ ] the reader that some of the[] risks may already have come to fruition'").

The UW Defendants improperly insert extraneous facts to claim that the Registration Statement did not need to warn investors about Torrid's inventory management failings because "global supply chain disruptions were widely reported." UB at 10-11; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2016). Plaintiffs' argument, however, is not that Defendants were obligated to disclose "general trends." *See Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1163 (9th Cir. 2009). Instead, Defendants were required to disclose that Torrid deviated from its data-driven merchandising strategies, lacked sufficient resources and capacity to process its over-ordered inventory, and therefore, was both missing seasonal launches and saddled with a glut of seasonally stale inventory. ¶¶35-36, 67-71; *see In re Illumina, Inc.*, 2018 WL 500990, at *4 (S.D. Cal. Jan. 22, 2018) (boilerplate cautionary language insufficient where it lacked specificity and "simply rehashed a constant reality of most product driven businesses").

### 4. Defendants' Accurate Statements of Fact Arguments Fail

The UW Defendants challenge statements in ¶¶78 and 79 as non-actionable statement of historical fact. UB at 7-8. But "literal truth is not the standard for determining whether statements . . . are misleading." *Miller*, 519 F.3d at 886. Even if a statement is "technically accurate," a party may be obligated to disclose additional "'adverse information that cuts against the positive information'" if it chooses to tout the positive data. *See Khoja*, 899 F.3d at 1009; *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016); *Berson*, 527 F.3d at 987.

Even though Torrid abandoned its data-driven merchandising strategies well before the IPO, it nevertheless continued to promote them to investors in the

- 10 -

4875-9524-5428.v1

Registration Statement. In doing so, the Registration Statement used the historical results Defendants challenge to tout the benefits of the "read-and-react testing approach" (¶78) and Torrid's rigorous discipline around inventory (¶79). For instance, the Registration Statement expressly stated that the "read-and-react testing approach" had enabled Torrid to "generate approximately 80% of [its] net sales from products sold at regular price" (¶78), but failed to disclose that the testing approach had been abandoned and, as a result, Torrid was experiencing a build-up of excess, stale and obsolete seasonal inventory that could not be sold at full price. *See In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017) (where a party goes beyond describing historical results and touts specific factors driving those results, it is obligated to disclose negative information related to those factors).

Defendants also suggest investors were not misled because Torrid disclosed actual inventory levels. TB at 9-10; UB at 11. While the Registration Statement may have disclosed literally true figures, their statements implied that Torrid maintained appropriate inventory levels because Defendants were using a data-driven merchandising model (*see, e.g.*, ¶¶76-79, 88), when, in contrast, inventory was accumulating unprocessed in the parking lot, resulting in missed seasonal launches and millions of unfilled customer orders.[2] *See* ¶¶35-36, 38-40; *see In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *16 (N.D. Cal. June 2, 2020) ("literally true" statement actionable where it "did not align with the information [defendant] possessed at the time"). Thus, mere disclosure of inventory figures, without also disclosing Torrid was ordering large quantities of inventory untethered to any data-

---

[2] Contrary to Defendants' assertion (TB at 9), the market could not evaluate Torrid's inventory position because Defendants did not disclose that millions of inventory units remained unprocessed in the parking lot. ¶¶35, 39-40. Defendants' reliance on *Siegel v. Boston Beer Co., Inc.*, where the court found the statement that inventory was "'at an appropriate level'" was not rendered false by publicly available industry trends, is therefore inapt. 2022 WL 17417111, at *7 (S.D.N.Y. Dec. 5, 2022).

- 11 -

4875-9524-5428.v1

driven strategy or the parking lot full of unprocessed inventory, was materially misleading.[3]

### 5.    The Bespeaks Caution Doctrine Does Not Apply

The UW Defendants' claim that the statements in ¶¶77-78, and 80 are non-actionable forward-looking statements protected by the bespeaks caution doctrine is incorrect.  First, ¶¶79 and 80 do not contain forward-looking language but rather are actionable statements of current or historical fact.  *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141-42 (9th Cir. 2017) ("[S]afe harbor is not designed to protect companies and their officials when they knowingly make a materially false or misleading statement about current or past facts.").  While ¶78 contains the phrase "will continue" it is nonetheless actionable because the statements are premised on current and/or historical facts.  *In re SLM Corp. Sec. Litig.*, 740 F. Supp. 2d 542, 556 (S.D.N.Y. 2010) ("'[W]hen an allegedly false statement has both a forward looking aspect and an aspect that encompasses a representation of present fact, the safe harbor provision of the PSLRA does not apply.'").  Thus, ¶¶77-78 and 80 are not protected under the bespeaks caution doctrine.

The UW Defendants' argument that Registration Statement's purported risk warnings invoke the bespeaks caution doctrine, also fails.  UB at 6-7.  The bespeaks caution doctrine does not apply because the Registration Statement omitted facts that had already materialized at the time of the IPO, including that Torrid had abandoned its data-driven merchandising strategies because of ongoing shipment delays and increasing lead times during the pandemic and, instead, was purchasing large quantities of inventory in excess of demand that was creating a build-up of excess obsolete and seasonally-stale inventory that could only be sold through markdowns

---

[3]  Given Defendants' egregious omissions, this case is unlike *Belodoff v. Netlist, Inc.*, where plaintiffs only argued that defendants had not characterized the disclosed inventory levels as "'excessive.'" 2009 WL 1293690, at *7 (C.D. Cal. Apr. 17, 2009); TB at 10.

- 12 -

and promotions.  *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005) (bespeaks caution doctrine does not apply to historical and present facts); *see also In re Honest Co. Sec. Litig.*, 615 F. Supp. 3d 1149, 1155-56 (C.D. Cal. July 18, 2022) (bespeaks caution doctrine inapplicable where plaintiffs contend risk disclosures cast then-existing material events and adverse trends as "potential risks").

As discussed in Plaintiffs' opposition to Torrid Defendants' MTD (§IV.A.2), incorporated herein, the risk warnings Defendants reply on speak to yet-to-be and hypothetical possibilities and therefore do not absolve liability. *Alphabet*, 1 F.4th at 703 ("Risk disclosures that 'speak[] entirely of as-yet unrealized risks and contingencies' and do not 'alert[] the reader that some of these risks may already have come to fruition' can mislead reasonable investors.'").  For instance, the Registration Statement warned "if our manufacturers fail to supply quality products in a timely manner, we may experience inventory shortages, which may negatively impact customer relationships" (¶81) and if "the distribution facilities servicing our business were to encounter difficulties . . . we could face shortages of inventory" (*id.*) while already experiencing untimely deliveries, significant unprocessed inventory in trailers, and millions of delayed customer orders.  ¶¶35-36, 38-40.

Though Defendants argue that the Registration Statement "contained ample cautionary language" (UB at 7; TB at 12), the Torrid Defendants' stealth-edits to that very language months later demonstrates the purported cautions were misleading and insufficient to warn investors of ongoing issues.  For example, the Registration Statement stated that "[t]he COVID-19 outbreak **has the potential to cause** a disruption in our supply chain" (Ex. 3 at 21), but approximately nine months later, on March 30, 2022, that risk warning was quietly reformed in the Form 10-Q to reflect what should have been disclosed earlier—that the COVID-19 outbreak "**has caused a disruption** in our supply chain" (Ex. 6 at 10).  That same day, the Torrid Defendants quietly reformed their cautionary language relating to high employee turnover to

- 13 -

4875-9524-5428.v1

include all employees, including DC employees, rather than just store employees. *Compare* Ex. 3 at 26 (June 30, 2021 Registration Statement: "[e]xcessive **store** employee turnover") *with* Ex. 6 at 14 (March 30, 2022 Form 10-K: "[e]xcessive employee turnover"). CWs who worked at the DC, however, confirm that Torrid's supply chain and employee turnover issues existed at the time of the IPO and should have been disclosed. *See* ¶¶35-36.

### E. The Registration Statement's Risk Disclosures Do Not Immunize Defendants from Liability

The UW Defendants also claim that the Registration Statement's risk warnings render the Registration Statement's representations not materially misleading, and preclude Plaintiffs' claims under Items 303 and 105. Defendants are incorrect for the same reasons as discussed above and in Plaintiffs' opposition to the Torrid Defendants' MTD, §IV.A.2, which Plaintiffs incorporate herein.

### F. Defendants Had a Duty to Disclose Under Regulation S-K

"There is liability under [S]ection 11 if a registrant 'omit[s] to state a material fact required to be stated'" by Items 105 and 303 Regulation S-K. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998); *see also In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *8 (C.D. Cal. June 7, 2018) (sustaining §11 claims based on Items 303 and 105 violations); *Mallen v. Alphatec Holdings, Inc.*, 2013 WL 1294640, at *12 (S.D. Cal. Mar. 28, 2013) ("One potential basis for liability under §§ 11 and 12(a)(2) is 'an omission in contravention of an affirmative legal disclosure obligation.'"), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015).

Item 303 requires the Registration Statement disclose "any known trends or uncertainties that have had or that [the Company reasonably expects are] likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. §229.303(b)(2)(ii).

- 14 -

4875-9524-5428.v1

Here, Plaintiffs plausibly allege the existence of an undisclosed trend which should have been disclosed in the Registration Statement under Item 303. Before the IPO, Torrid abandoned its data-driven merchandising model and was instead ordering large quantities of inventory in excess of demand because of persistent shipping delays and increasing lead times. The Torrid Defendants' decision to discontinue processes that the Company was implementing to address prior inventory issues (¶¶50-52), in favor of pre-ordering large quantities of product in excess of planned merchandising levels was a known event that was likely to have a material unfavorable impact on net sales, revenues, and income. *See* 17 C.F.R. §229.303(b)(2)(ii); *see Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *5 (D. Nev. July 12, 2019) (Item 303 adequately alleged where change in strategy "presented a serious risk of diminishing revenue."). Indeed, when this over-ordered inventory arrived at the DC, it sat unprocessed in a slew of trailers and remained unprocessed for weeks given the DC's staffing shortages and capacity limitations, which created huge customer order backlogs prior to the IPO. ¶¶93-04.

Defendants claim there was no "persistent condition" or adverse trend to disclose because "inventory decreased and gross margins increased" prior to the IPO and inventory levels only increased after the IPO.[4] TB at 13; UB at 18. But this ignores that because of these internal conditions, within one quarter after the IPO, inventory increased 45%. *Compare* ¶71 (2Q'21 inventory and gross margin were 110,330,000 and 45%, respectively), *with id.* (3Q'21 inventory and gross margin were 159,499,000 and 40.9%, respectively). These allegations, viewed together, adequately allege an undisclosed trend that was material to investors. *See In re CPI Card Grp.*

---

[4] Plaintiffs allege a persistent pre-IPO condition given Torrid abandoned its processes during the "pandemic" and CW-1 reported that inventory flow was a constant problem pre-IPO. *See* ¶¶34-35, 74. These allegations go beyond merely alleging three months of sale declines (UB at 17 (citing *Golubowski v. Robinhood Mkts., Inc.*, 2023 WL 1927616, at *8 (N.D. Cal. Feb. 10, 2023))) and are more than sufficient at this stage of the litigation. *See Lyft*, 484 F. Supp. 3d at 776 n.7 ("[W]hether the bike issues constituted a 'trend' is a factual inquiry to be resolved at a later stage of these proceedings.").

- 15 -

*Inc. Sec. Litig.*, 2017 WL 4941597, at *4 (S.D.N.Y. Oct. 30, 2017) ("post-IPO sales drop-off . . . did not exist before the IPO" is "beside the point" where plaintiffs alleged a pre-IPO trend of overstocking); *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *15 (N.D. Cal. Oct. 31, 2014) (allegations of "a material negative trend . . . in the months leading up to the IPO," is a violation of Item 303, and not "a *future* trend projection") (emphasis in original); *cf.* TB at 13 (citing *Terenzini v. GoodRx Holdings, Inc.*, 2022 WL 2189592, at *5 (C.D. Cal. June 9, 2022) (no Item 303 claim for "'failure to "disclose the future"'")).

Item 105 mandates that offering materials include "a discussion of the most material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. §229.105. Here, Torrid went public in the middle of the pandemic with a Registration Statement that highlighted processes the Company claimed were the foundation of its "resilient" business model. *See, e.g.*, ¶¶79, 89. But Defendants did not disclose the adverse facts that made its IPO risky – namely, that Torrid had already deviated from those strategies and, as a result, it was suffering from mounting, unprocessed inventories, missed seasonal launches, and delayed customer order fulfilment. ¶¶67-68; *see Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *7 (S.D.N.Y. Sept. 27, 2020) ("'The same facts underlying an Item 303 violation may also support an Item 503 [now Item 105] violation, and a court's rationale for determining the former may also support the same determination of the latter.'").

While the Registration Statement included a discussion of risk factors (TB at 12; UB at 17-18), the boilerplate cautionary language did not warn investors that Torrid relinquished its data-driven inventory processes prior to the IPO or that the effects of that decision were then-occurring. ¶92; *see Mingbo Cai*, 2019 WL 3065591, at *6 (Item 105 adequately alleged where the registration statement and "boilerplate risk factors" did not warn of "specific risks arising from [defendant's] new . . . strategy"). Rather, the Registration Statement misleadingly represented those

- 16 -

4875-9524-5428.v1

already materialized risks were mere possibilities. *See, e.g.*, ¶81 ("*if* our manufacturers fail to supply quality products in a timely manner, *we may* experience inventory shortages); *see also* Ex. 3 at 30 ("The interruption of the flow of merchandise . . . *could* disrupt our supply chain . . . .); *id.* at 31 ("*If* we encounter difficulties associated with our distribution facilities…").

Because Plaintiffs allege that the risks warned of in the Registration Statement had already materialized, Defendants reliance on *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020), where no such argument was made, is misplaced. *See* TB at 12-13; UB at 17; *cf. Lyft*, 484 F. Supp. 3d at 776 n.7 (Item 105 adequately pled where "hypothetical risk of defects" did not disclose "the present reality of such defects"); *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 392 (N.D. Cal. 2020), *aff'd*, 13 F.4th 940 (9th Cir. 2021), *vacated on other grounds and remanded*, __ U.S. __, 143 S. Ct. 1433 (2023) (same).

### G.    Defendants Had a Duty to Disclose Under Ninth Circuit Law

Plaintiffs adequately allege that Defendants violated §§11 and 12(a)(2) by failing to disclose that Torrid abandoned its data-driven inventory processes, the severe backlog of customer orders, dozens of unreceived trailers of inventory sitting in the parking lot, and a chronic understaffing of the DC.  Once individuals choose to speak on a particular topic, "'they [are] bound to do so in a manner that wouldn't mislead investors,' including disclosing adverse information." *Schueneman*, 840 F.3d at 705-06; *Khoja*, 899 F.3d at 1010.  Here, Defendants affirmatively spoke about Torrid's merchandising model, and its benefits to the Company, the DC's capacity to handle the Company's needs, and the resiliency of Torrid's business model to pandemic-related disruptions in the Registration Statement (¶¶76-81, 83, 85-89), and were therefore required to disclose, among other things, that data-driven processes (*e.g.*, read-and-react, core inventory disciplines, chase mode, etc.) had already been abandoned, the build-up of inventory that was becoming increasingly obsolete and out

- 17 -

of season, the millions of unfilled customer orders, and the persistent staffing insufficiencies *before the IPO*. ¶¶35-36, 67-68. These undisclosed facts presented a significantly different risk profile for Torrid than inventors were led to believe at the time of the IPO. In the end, these undisclosed facts caused Torrid's financial performance to significantly suffer.

### H.   The Complaint States a Claim for Violation of §12(a)(2)

Because Plaintiffs allege a primary violation of §11, the UW Defendants are also liable for §12(a)(2) violations. *See Herman & Maclean*, 459 U.S. at 382 (under §§11 and 12, a purchaser "need only show a material misstatement or omission to establish his *prima facie* case"); *Crews*, 2023 WL 4361098, at *17 (declining to dismiss 12(a)(2) "[b]ecause the Court has already concluded that Plaintiffs' Section 11 claims are adequately pleaded").

Moreover, Defendants' falsity challenges to the Torrid Roadshow Presentation statements are unavailing. UB at 18-19. For the same reasons discussed in the opposition to Torrid Defendants' MTD, §IV.A.1, the roadshow statements were objectively verifiable and therefore, not puffery. For example, the Roadshow Presentation stated that Torrid had implemented "key initiatives" during the pandemic to improve the speed and flexibility of its supply chain, including developing a "shortened product development cycle," that created "strong resiliency amid the COVID-19 pandemic." ¶85; *see Oh*, 621 F. Supp. 3d at 1087-88 (statement describing asset quality as "'about as strong as you can get'" objectively verifiable where defendants knew contradictory information concerning those assets). The Roadshow Presentation also told investors that the Company's "agile response to COVID *led to sequential improvement in comp sales growth*." ¶85. But in truth, at the time of the IPO, Torrid's response to the pandemic was to abandon its touted merchandise strategies, including read-and-react, chase mode, core disciplines, and rigorous product planning, in the face of persistent shipment delays and increasing

- 18 -

4875-9524-5428.v1

lead times, which impaired the Company's ability to respond quickly to customer demand and resulted in a build-up of excess, stale and obsolete seasonal inventory that was not selling. ¶¶82, 90. Therefore, contrary to Defendants' claim, Plaintiffs have sufficiently alleged, as discussed herein and in Plaintiffs' opposition to the Torrid Defendants' MTD, why the Roadshow Presentation statements were false and misleading.

## IV.   CONCLUSION

Wherefore, the UW Defendants' motion should be denied. Should the Court grant the motion to dismiss, in whole or in part, Plaintiffs request leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052-53 (9th Cir. 2003).

DATED:  August 4, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LAURIE L. LARGENT
STEPHEN JOHNSON

s/ LAURIE L. LARGENT
LAURIE L. LARGENT

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
llargent@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

- 19 -

4875-9524-5428.v1

LEVI & KORSINSKY LLP
SHANNON L. HOPKINS (*pro hac vice*)
GREGORY M. POTREPKA (*pro hac vice*)
DAVID JAYNES (SBN 338917)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: 203/9924523
shopkins@zlk.com
gpotreka@zlk.com
diavnes@zlk.com

Additional Counsel for Plaintiff Erika
Schroth

- 20 -

4875-9524-5428.v1

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Lead Plaintiff City of Warren Police and Fire Retirement System and additional plaintiff Erika Schroth, certifies that this brief contains 5,920 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1

__complies with the word limit set by court order dated _____.

 s/ LAURIE L. LARGENT
LAURIE L. LARGENT

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  llargent@rgrdlaw.com

4875-9524-5428.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 4, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ LAURIE L. LARGENT
LAURIE L. LARGENT

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  llargent@rgrdlaw.com

4875-9524-5428.v1

**Mailing Information for a Case 2:22-cv-08375-JLS-AS Sandra Waswick v. Torrid Holdings, Inc. et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Marc Apton**
  aapton@zlk.com,ecf@zlk.com

- **Kevin M. Askew**
  kaskew@orrick.com

- **Darrell S. Cafasso**
  dcafasso@orrick.com

- **Mark C. Holscher**
  mark.holscher@kirkland.com,mholscher@kirkland.com,adrienne-levin-5018@ecf.pacerpro.com

- **Shannon L. Hopkins**
  shopkins@zlk.com,shalliday@zlk.com,ecf@zlk.com

- **David C Jaynes**
  djaynes@zlk.com,gpotrepka@zlk.com,shalliday@zlk.com,ecf@zlk.com,shopkins@zlk.com

- **Stephen Johnson**
  sjohnson@rgrdlaw.com

- **Jennifer M. Keighley**
  jkeighley@orrick.com

- **James N. Kramer**
  jkramer@orrick.com,lpatts@orrick.com,casestream@ecf.courtdrive.com

- **Laurie L Largent**
  llargent@rgrdlaw.com,agonzales@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brett M. Middleton**
  brettm@johnsonfistel.com,kristeno@johnsonfistel.com,paralegal@johnsonfistel.com

- **Austin C Norris**
  austin.norris@kirkland.com,laura-bay-kirkland-ellis-llp-2744@ecf.pacerpro.com,jelani.solper@kirkland.com,laura.bay@kirkland.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,egoodman@pomlaw.com,tprzybylowski@pomlaw.com,jlopiano@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,jalieberman@pomlaw.c

- **Gregory M. Potrepka**
  gpotrepka@zlk.com,ecf@zlk.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com,lrosen@ecf.courtdrive.com

- **Matthew O. Solum**
  msolum@kirkland.com

- **Alexander K. Talarides**
  atalarides@orrick.com,lpatts@orrick.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)