Mark Holscher (SBN 139582)
Austin Norris (SBN 284603)
KIRKLAND AND ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:   (310) 552-4200
Facsimile:    (310) 552-5900
Email: mark.holscher@kirkland.com
Email: austin.norris@kirkland.com

[*Additional Counsel on Signature Page*]

*Attorneys for Defendants Torrid Holdings, Inc., et. al.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WASWICK, On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TORRID HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-08375-JLS(AS)<br><br>**DEFENDANTS TORRID HOLDINGS INC., ELIZABETH MUÑOZ, GEORGE WEHLITZ, STEFAN L. KALUZNY, DARY KOPELIOFF, LISA HARPER, THEO KILLION, SYCAMORE PARTNERS MANAGEMENT, L.P., SYCAMORE PARTNERS TORRID, LLC, SYCAMORE PARTNERS, L.P., SYCAMORE PARTNERS ASSOCIATES-C, L.P., SYCAMORE PARTNERS ASSOCIATES, L.P., SYCAMORE PARTNERS ASSOCIATES INVESTMENTS, L.P., SYCAMORE PARTNERS (CO-INVEST), LLC, AND SYCAMORE PARTNERS ASSOCIATES CO-INVEST, L.P.'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE**<br><br>FAC Filed:    May 12, 2023<br><br>Judge:    Hon. Josephine L. Staton<br>Hearing:    Friday, Sep. 22, 2023<br>Time:    10:30 a.m.<br>Courtroom:    8A |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   ARGUMENT .............................................................................................2

    A.   Plaintiffs' "Abandonment" Theory Fails. ..............................................2

    B.   Plaintiffs Fail to Plead Falsity with Particularity. .................................4

        1.   Data-Driven Merchandising Model Statements. .......................4

        2.   Distribution Center Statements. ................................................6

        3.   COVID-19 Statements. ..............................................................8

        4.   Inventory and Promotions Statements. ......................................9

    C.   Plaintiffs Fail to Plead Scienter with Particularity.............................10

        1.   Plaintiffs' Vague CW Accounts Are Inadequate......................10

        2.   Plaintiffs' Circumstantial Scienter Theories Fail. ..................12

            a.   Later "Admissions." .......................................................12

            b.   Access to Inventory Information. ...................................13

            c.   Responses to Analyst Questions......................................14

            d.   2017 IPO.........................................................................15

            e.   Core Operations..............................................................15

            f.   Executive Departures.......................................................16

            g.   Stock Sales and Compensation........................................17

    D.   Plaintiffs Fail to Plead Loss Causation. ..............................................18

    E.   The FAC Does Not Plead Control Person Liability...........................19

    F.   Plaintiffs Fail to Salvage Their Insider Trading Claim.......................19

    G.   The FAC Fails to Plead Securities Act Claims....................................20

III.  CONCLUSION .......................................................................................21

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Adecco S.A.*,
   434 F. Supp. 2d 815 (S.D. Cal. 2006) ..................................................................18

*Batwin v. Occam Networks, Inc.*,
   2008 WL 2676364 (C.D. Cal. July 1, 2008) ...................................................17, 18

*Belodoff v. Netlist, Inc.*,
   2009 WL 1293690 (C.D. Cal. Apr. 17, 2009)........................................................7

*Berg v. Velocity Fin., Inc.*,
   2021 WL 268250 (C.D. Cal. Jan. 25, 2021)...........................................................5

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharm., Inc.*,
   2022 WL 4491093 (S.D. Cal. Sep. 27, 2022)....................................................17, 18

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech. Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................................6

*Crews v. Rivian Auto., Inc.*,
   2023 WL 3050081 (C.D. Cal. Feb. 16, 2023).............................................3, 4, 20

*Glazer Cap. Mgmt., L.P. v. Forescout Techs. Inc.*,
   63 F.4th 747 (9th Cir. 2023) ..........................................................................10, 11

*In re BioMarin Pharm. Inc. Sec. Litig.*,
   2022 WL 164299 (N.D. Cal. Jan. 6, 2022)......................................................17, 18

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)..........................................................19, 20

*In re Daou Sys., Inc. Sec. Litig.*,
   411 F.3d 1006 (9th Cir. 2005) .......................................................................11, 16

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
   503 F. Supp. 2d 25 (D.D.C. 2007)........................................................................20

*In re Fibrogen, Inc.*,
   2022 WL 2793032 (N.D. Cal. July 15, 2022) ......................................................15

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008)......................................................................5

*In re LeapFrog Enterprises, Inc. Sec. Litig.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007)......................................................................5

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)..................................................................................16

*In re Plantronics, Inc. Sec. Litig.*,
2022 WL 3653333 (N.D. Cal. Aug. 17, 2022)....................................................9, 17

*In re Progenity, Inc. Secs. Litig.*,
2023 WL 219345 (S.D. Cal. Jan. 13, 2023) ...............................................................8

*In re Qualcomm Inc. Sec. Litig.*,
2019 WL 1239301 (S.D. Cal. Mar. 18, 2019)..........................................................15

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ....................................................................................9

*In re Questcor Sec. Litig.*,
2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ......................................................17, 18

*In re Read–Rite Corp. Sec. Litig.*,
335 F.3d 843 (9th Cir. 2003) ....................................................................................13

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) ..............................................................................12, 14

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001)......................................................................4

*In re Vantive Corp. Secs. Litig.*,
283 F.3d at 1079 (9th Cir. 2002) ..............................................................................13

*In re VeriFone Holdings, Inc., Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ....................................................................................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.
Litig.*,
2017 WL 66281 (N.D. Cal. Jan 4, 2017)..................................................................16

iii

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) .................................................................................14

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ............................................................................18, 19

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
2017 WL 5635425 (C.D. Cal. Oct. 30, 2017) .......................................................10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .......................................................................1, 3, 8

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
2008 WL 7084629 (C.D. Cal. July 10, 2008) .......................................................20

*Middlesex Ret. Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................................13

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) ................................................................................15

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) .................................................................13, 17, 18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
131 S. Ct. 1318 (2015) .............................................................................................6

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ..................................................................................5

*Patel v. Parnes*,
253 F.R.D. 531 (C.D. Cal. 2008) ..........................................................................11

*Pebble Beach Inv. Grp., LLC v. Square One Starts, LLC*,
2021 WL 2531150 (N.D. Cal. June 21, 2021) ........................................................7

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
2023 WL 3569068 (S.D.N.Y. May 19, 2023) .........................................................4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .................................................................12, 14, 16

*Purple Mountain Tr. v. Wells Fargo & Co.*,
432 F. Supp. 3d 1095 (N.D. Cal. 2020).........................................................13, 19

iv

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Ret. Sys. v. EnergySolutions, Inc.*,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011) ...........................................................17, 18

*Rubke v. Capitol Bancorp Ltd*,
   551 F.3d 1156 (9th Cir. 2009) .......................................................................21

*S. Ferry LP No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .........................................................................14

*S.E.C. v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) .......................................................................19

*Sanders v. RealReal, Inc.*,
   2021 WL 1222625 (N.D. Cal. Mar. 31, 2021) ...............................................5

*Schneider v. California Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) .........................................................................3

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
   485 F. Supp. 3d 1113 (N.D. Cal. 2020)....................................................19, 20

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   2019 WL 4859099 (N.D. Cal. Oct. 2, 2019) .................................................16

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017).....................................................5, 14

*Siegel v. Bos. Beer Co., Inc.*,
   2022 WL 17417111 (S.D.N.Y. Dec. 5, 2022).................................................7

*Silva v. U.S. Bancorp*,
   2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ..............................................2, 20

*Swartzendruber v. Colony Cap., Inc.*,
   2020 WL 7754008 (C.D. Cal. Dec. 10, 2020)................................................15

*Turocy v. El Pollo Loco Holdings*,
   2017 WL 3328543 (C.D. Cal. Aug. 4, 2017) ...........................................14, 17

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019)..............................................................8

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ..................................................3

v

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Winer Family Tr. v. Queen,*
   2004 WL 2203709 (E.D. Pa. Sept. 27, 2004)........................................................7

*Xiaojiao Lu v. Align Tech.*, Inc.,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019)...............................................................4

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ......................................................................*passim*

**Rules**

Fed. R. Civ. P. 8..................................................................................................20

Fed. R. Civ. P. 9(b) ....................................................................................2, 4, 20

Fed. R. Civ. P. 12(b)(6) ......................................................................................2

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
| --- | --- |
| ¶ or FAC | Consolidated Class Action Complaint for the Violation of Federal Securities Laws filed by Lead Plaintiff City of Warren Police and Fire Retirement System and additional Plaintiff Erika Schroth (ECF No. 59) |
| TMTD | Defendants Torrid Holdings Inc., Elizabeth Muñoz, George Wehlitz, Stefan L. Kaluzny, Dary Kopelioff, Lisa Harper, Theo Killion, Sycamore Partners Management, L.P., Sycamore Partners Torrid, LLC, Sycamore Partners, L.P., Sycamore Partners Associates-C, L.P., Sycamore Partners Associates, L.P., Sycamore Partners Associates Investments, L.P., Sycamore Partners (Co-Invest), LLC, and Sycamore Partners Associates Co-Invest, L.P.'s Notice of Motion and Motion to Dismiss Amended Class Action Complaint with Prejudice (ECF No. 71) |
| UMTD | Underwriter Defendants' Notice of Motion and Motion to Dismiss and Joinder; Memorandum of Points and Authorities in Support Thereof (ECF No. 74) |
| TO | Plaintiffs' Memorandum in Opposition to Defendants Torrid Holdings Inc., Elizabeth Muñoz, George Wehlitz, Stefan L. Kaluzny, Dary Kopelioff, Lisa Harper, Theo Killion, Sycamore Partners Management, L.P., Sycamore Partners Torrid, LLC, Sycamore Partners, L.P., Sycamore Partners Associates-C, L.P., Sycamore Partners Associates, L.P., Sycamore Partners Associates Investments, L.P., Sycamore Partners (Co-Invest), LLC, and Sycamore Partners Associates Co-Invest, L.P.'s Motion to Dismiss Consolidated Class Action Complaint (ECF. No. 77) |
| UO | Plaintiffs' Memorandum in Opposition to Underwriter Defendant's Motion to Dismiss the Consolidated Class Action Complaint. (ECF No. 78) |
| RJN | Request for Judicial Notice in Support of Defendants' Motion to Dismiss Amended Class Action Complaint (ECF No. 73) |
| RJN Opp'n | Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants Request for Judicial Notice (ECF. No 79) |
| "Torrid" or "the Company" | Torrid Holdings, Inc. |
| CW | Confidential Witness |
| Ex. | Exhibits to the June 23, 2023 Declaration of Austin Norris, ECF No. 72, unless otherwise noted |
| MNPI | Material Non-Public Information |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

| IPO | Initial Public Offering |
|---|---|
| App'x A | Appendix of Alleged Misstatements from the Amended Complaint and the Related Cautionary Language that Had Been Disclosed by the Company, attached to the Norris Declaration as Ex. 1 (ECF No. 72-1) |
| App'x B | Appendix of Trades in Torrid Stock by Defendants During the Class Period, attached to the Norris Declaration as Ex. 2 (ECF No. 72-2) |
| Sycamore | Sycamore Partners Management, L.P. |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiffs' Opposition to Defendants' motion (the "Opposition" or "TO") confirms that their case is premised on a myth: the notion that at some unknown time, in some unknown manner, Torrid supposedly "abandon[ed] [its] data-driven merchandising model." TO at 2. Although this theory underpins Plaintiffs' entire case, Plaintiffs alleged zero factual support for it in their FAC. TMTD at 7–8. The Opposition reveals that there is no support. The supposed "admission" Plaintiffs reference—an anodyne statement by Defendant Harper during a Q3 2022 earnings call—does not even mention Torrid's data-driven merchandising model, much less cure Plaintiffs' total failure to plead specific facts showing the Company had abandoned the model. Ex. 10 at 7. Indeed, Plaintiffs do not dispute that Torrid disclosed its continued use of its "data-driven [inventory management] approach" repeatedly during the Class Period (and beyond). TMTD at 8.

Even if Plaintiffs' abandonment theory were adequately alleged, their claims would still fail. There is no allegation regarding when the data-driven model was supposedly abandoned, or how it was abandoned, much less anything to suggest that any statement was false when made.

The claims also fail because the Opposition primarily summarizes the same boilerplate falsity allegations set forth in the FAC. Plaintiffs do not dispute that the PSLRA's "exacting requirements" apply to their claims. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). Their vague and conclusory falsity allegations flunk these requirements. Further, Plaintiffs' Opposition ignores the robust information that Torrid disclosed to investors, including regular disclosures of the pandemic's actual and potential impact and Torrid's actual inventory, which Plaintiffs now admit reflect "literally true figures." UO at 11:13–14.

The Opposition also reveals the weakness of Plaintiffs' scienter theories. Plaintiffs' vague CW accounts and grab-bag of speculative theories do not come close to showing a strong inference of scienter. "The allegations of scienter in the [FAC],

1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

though voluminous, are not pled with the particularity required to survive a [Rule] 12(b)(6) dismissal under the standards enumerated in [Rule] 9(b) and the PSLRA." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009).

Plaintiffs do not dispute that Plaintiff Warren is a serial securities litigant whose complaints are often dismissed. TMTD at 4 n.6. Indeed, they fail even to attempt a response to many of Defendants' arguments, thereby conceding those points. *See Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011). For these and numerous additional reasons explained below, the FAC should be dismissed.[1]

## II.    ARGUMENT

### A.    Plaintiffs' "Abandonment" Theory Fails.

Plaintiffs' Opposition makes clear that the linchpin of their case is the allegation that Defendants "abandon[ed] Torrid's data-driven merchandising model." TO at 2. According to Plaintiffs, this allegation underpins Plaintiffs' theories of falsity, scienter, and loss causation. *See* TO at 7:8–10 (data-driven statements); 8:24–26 (distribution center statements); 10:20–23 (pandemic statements); 11:18–19 (inventory statements); 13:8–10 (risk disclosures); 15:7–8 (admission of scienter); 17:7–8 (core operations); 20:4–5 (loss causation). Yet this theory is completely baseless.

Torrid disclosed that it relied upon its "data-driven [inventory management] approach" every quarter during the Class Period (and beyond). TMTD at 8.[2] Plaintiffs' only response is to assert that these disclosures are "extraneous." TO at 15. Not so. The FAC relies upon and incorporates Torrid's SEC filings and the transcripts from earnings

---

[1]    Among other things, Plaintiffs' Opposition fails to address Torrid's arguments regarding Regulation S-K, the Rule 9(b) standard, Torrid's inventory disclosures, and forward-looking earnings guidance. TMTD at 3, 5–6, 11–13. Plaintiffs have conceded a number of the challenged statements. *See* ¶¶135, 136, 145, 147, 153, 155, 157, 166, 168, 176, 180, 181, 199. Notwithstanding the Court's Order regarding "confusion as to which arguments Plaintiffs are responding to" (ECF No. 76), Plaintiffs attempt to address certain Torrid arguments in the Underwriter Opposition. Torrid joins and incorporates the Underwriter Defendants' arguments, including their response to Plaintiffs' Regulation S-K arguments, at UO § III.F.

[2]    Ex. 4 at 32 (Q2-2021 Form 10-Q); Ex. 5 at 32 (Q3-2021 Form 10-Q); Ex. 6. at 2 (2022 10-K); Ex. 19 at 28 (Q1-2022 Form 10-Q); Ex. 21 at 28 (Q2-2022 Form 10-Q); Ex. 22 at 30 (2022-Q3 10-Q); Ex. 42 at 26 (2023-Q1 10-Q).

2

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

calls. Plaintiffs "may not cherry-pick portions of documents that support their claims while ignoring other portions of the same documents that undermine their claims." *Crews v. Rivian Auto., Inc.*, 2023 WL 3050081, at *8 (C.D. Cal. Feb. 16, 2023).

Plaintiffs also fail to meet the PSLRA's "exacting requirements for pleading falsity." *Metzler*, 540 F.3d at 1070. Plaintiffs do not dispute that they must plead specific false statements and "specific facts indicating why those statements were false." *Id.* Nor do they dispute that "to be actionable, a statement must be known to be false or misleading at [the time made] by the people who made them." *Rivian*, 2023 WL 3050081, at *9. Defendants' motion explained that the FAC fails to allege when the model was abandoned, who decided to abandon it, how it was abandoned, or who knew it was abandoned. TMTD at 7. Plaintiffs now claim the allegation is based on a statement by Harper during Torrid's Q3 2022 Earnings Call. *Id.* at 7. Plaintiffs cannot inject new facts through their Opposition. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Regardless, this Q3 2022 statement provides none of the factual detail that is missing from the FAC. There are no facts or allegations reflecting when Torrid supposedly abandoned its data-driven model, who knew it was abandoned, how it was abandoned, or for how long. It only refers to "some … discipline" during "the pandemic time period" regarding "product assortment flow." Ex. 10 at 7. Plaintiffs assert that Harper "conceded that Torrid's '[read] and react' testing and 'core disciplines' … were not in place during the Class Period," but they do not explain what this means, where Harper said this, or when during the Class Period this occurred. TO at 7. "Rather than plead specific facts that render Defendants' representations false or misleading, Plaintiff[s] take[] pieces of Defendants' 'admissions' out of context, and urge[] the Court to adopt an implausible inference of falsity." *Welgus v. TriNet Grp., Inc.*, 2017

3

WL 6466264, at *10 (N.D. Cal. Dec. 18, 2017). These deficiencies are fatal to Plaintiffs' claims.

Plaintiffs' failure to allege the specific facts that would contradict the challenged statements is fatal for another reason. Plaintiffs challenge different statements made at different times, by different people, over more than a year. ¶¶82, 90(a), 139(a), 144, 148(a), 161(a), 170(a), 183(a). But for each statement they "repeat the same tangential factual allegations to claim falsity." *Xiaojiao Lu v. Align Tech.*, Inc., 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019); *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (plaintiff "provide[d] a list of between five and nineteen 'reasons' that the statements were false"). "Plaintiffs' shotgun approach [] falls short of what Rule 9(b) requires." *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, 2023 WL 3569068, at *9 (S.D.N.Y. May 19, 2023).

### B.  Plaintiffs Fail to Plead Falsity with Particularity.

#### 1.  Data-Driven Merchandising Model Statements.[3]

Plaintiffs assert that statements about the data-driven model were misleading because Defendants "abandoned" this model before the IPO. TO at 7. As discussed above, nothing in Harper's statement contradicts Defendants' statements about their data-driven approach, read-and-react testing, speed model, and other strategies. *Compare* Ex. 10 at 7 *with* TO at 6–7. Nor have Plaintiffs alleged specific facts showing that Defendants' statements were "known to be false or misleading at [the time made] by the people who made them." *Rivian*, 2023 WL 3050081, at *9.

Regardless, the challenged statements are non-actionable. The Opposition focuses on statements about "read-and-react testing" and "rigorous discipline," claiming that "context[] explains [their] specific and verifiable meaning." TO at 8. In particular, it asserts that investors would have relied on statements about "shallow initial buys" and "clear guidelines on in-season product." *Id.* But Plaintiffs do not explain how

---

[3]   The remaining alleged data-driven model misstatements are ¶¶76, 77, 78 79, 80, 132, 138, 141, 144, 159, 163.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

these terms are actionable, and they allege nothing suggesting that Torrid did not use these strategies. While "shallow initial buys" and "clear guidelines" are mentioned in a single block quote in the FAC (¶78), they are not even mentioned as bases for falsity (¶82).

Moreover, "data-driven," "read-and-react," and "rigorous discipline" are the kinds of amorphous statements that courts routinely deem non-actionable. *See In re LeapFrog Enterprises, Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (holding that "we are a 'financially disciplined company'" and "[we are] strengthening our operations group, supply-chain management system and warehousing and logistics functions" are "soft statements ... that do not give rise to a securities fraud claim"); *Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *4 (C.D. Cal. Jan. 25, 2021) (finding non-actionable statements "extolling Velocity's application of 'disciplined due diligence'"); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (holding that statements about business model, such as "comprehensive services" and "quality educational content," were non-actionable).

Plaintiffs' cases affirm the non-actionable nature of the statements. *See In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1097 (C.D. Cal. 2008) ("[T]he word 'solid,' like the words 'robust' and 'strong,' is such a vague expression of optimism that it would not have conveyed a misleading impression of the future"); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1142 (N.D. Cal. 2017) ("exciting results" and "continuous improvements" are "the type of statements that Courts have deemed non-actionable"). The court in *Sanders v. RealReal, Inc.* agreed that "rigorous" is often "mere corporate window dressing," but concluded the phrase "rigorous authentication process" was actionable because "authentication is a cognizable process that delivers an outcome." 2021 WL 1222625, at *10 (N.D. Cal. Mar. 31, 2021). Conversely, "rigorous ***discipline***" is quintessential puffery.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

### 2.    Distribution Center Statements.[4]

Plaintiffs' distribution center arguments likewise hinge on their bogus "abandonment" theory. TO at 8. They fail for multiple other reasons as well.

Plaintiffs do not dispute Defendants' argument that these are statements of belief, yet they ignore the legal standards that apply to such statements. TMTD at 8. To plead falsity, Plaintiffs must allege particular facts showing not only "that the belief is objectively untrue," but also that Defendants "did not hold the belief [they] professed." *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech. Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017) (construing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 131 S. Ct. 1318 (2015)). The Opposition does neither. Plaintiffs point to "large inventory quantities," "insufficient staffing," and discounts. TO at 8–9. But none of these allegations show that the center was not state-of-the-art or not capable of handling Torrid's needs, much less that Defendants did not believe their statements.

Plaintiffs claim that Defendants "obscured that the DC's … constraints resulted in unfulfilled customer orders and missed launches." TO at 9. But Defendants merely expressed a belief that the center was "capable"; they did not guarantee that the center was perfect or pandemic-proof. In fact, Defendants extensively warned investors that Torrid's "operations and financial performance **have been affected** by, and **may continue to be affected by**, the COVID-19 pandemic." Ex. 3 at 13 (emphasis added); *see also* TMTD at 2–3; *infra* § II.B.3. As Plaintiffs concede, the CW accounts claim that "inventory flow" and staffing shortages—not the center's capabilities—caused the alleged issues. TO at 8–9.

Moreover, Plaintiffs **concede that the Company's disclosures of its inventory levels were, in fact, accurate**. UO at 11 (conceding that "the Registration Statement may have disclosed literally true figures"). Plaintiffs nonetheless assert that in addition

---

[4]    The remaining alleged distribution center misstatements are ¶¶83, 160.

6

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

to disclosing accurate inventory levels, Defendants had to tell investors that Torrid's inventory was purportedly "excessive" and "growing" at some unknown time. *Id.* Plaintiffs do not provide any specifics regarding how much inventory accrued, what kind, when, and how this allegedly contradicted Defendants' statements at the time they were made. The claim fails. *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *7 (C.D. Cal. Apr. 17, 2009); *Siegel v. Bos. Beer Co., Inc.*, 2022 WL 17417111, at *8 (S.D.N.Y. Dec. 5, 2022).

In *Belodoff* and *Siegel*, as here, the defendants allegedly "failed to disclose that … inventory had reached 'excessive' levels" and "was piling up because shipments were outpacing demand." *Belodoff*, 2009 WL 1293690, at *7; *Siegel*, 2022 WL 17417111, at *8. But just as those courts held, Torrid "was under no particular obligation to characterize the facts in a particular manner," and "Plaintiffs cite no authority indicating that [Torrid] needed to provide a more detailed account of its inventory in order to make the disclosures not misleading." *Belodoff*, 2009 WL 1293690, at *8. Vague allegations of later issues with discounts and seasonal launches, again at specific times unknown, cannot "be reasonably read to impute actual knowledge of falsity as to statements [when] made." *Siegel*, 2022 WL 17417111, at *8.

The statements Plaintiffs reference are non-actionable in any event. *Pebble Beach Inv. Grp., LLC v. Square One Starts, LLC* does not "acknowledge[] that 'state-of-the-art' may be actionable when read in context." TO at 9. Instead, it found that a different statement that defendants had the "'experience, resources, training, facilities, and capability' to germinate Pebble Beach's seeds" could be actionable. 2021 WL 2531150, at *1. Similarly, in *The Winer Family Tr. v. Queen*, the court agreed that claiming a facility is "state-of-the-art" is typically "inactionable puffery." 2004 WL 2203709, at *17 (E.D. Pa. Sept. 27, 2004). But there, the purported "'state of the art' plant" had serious "flaws in the design and construction." *Id.* at *15–17. Plaintiffs allege no such flaws here.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

### 3.    COVID-19 Statements.[5]

Plaintiffs cite five statements addressing Torrid's pre-IPO performance and response to the pandemic. TO at 10. Defendants' motion explained that the FAC alleges no facts showing that Torrid misrepresented these statements. TMTD at 10. Plaintiffs do not address this flaw. They instead cite unrelated allegations about the bogus "abandonment" theory, supply chain disruptions, and staffing issues. TO at 10. Plaintiffs do not (and cannot) explain how these allegations contradict the Company's statements about navigating the pandemic. The empty claim that these statements are "materially false and misleading" fails. *Metzler*, 540 F.3d at 1070.

Moreover, the Opposition simply ignores the robust cautionary statements detailed in Defendants' motion. TMTD at 2–3, 10. In addition to extensive warnings, Defendants repeatedly told investors that the Company was actually affected by the pandemic. Ex. 3 at 13 ("Our operations and financial performance [have] been affected by, and may continue to be affected by, the COVID-19 pandemic"); *id.* at 62 ("COVID-19 pandemic has caused general business disruptions worldwide," including by altering "the operations of our suppliers and manufacturers."); *id.* at F-15, F-58 ("Our business operations, including net sales, were substantially affected by COVID-19"); Exs. 4–6, 19, 21–22 (same); Ex. 7 at 7–8 ("[T]he global supply chain has become more challenged, and we expect continued shipping delays or congestion and manufacturing disruptions."); Ex. 8 at 6, 11 ("We, along with the rest of the industry, are facing global supply chain headwinds," and "as far as delays to the product, it was relatively widespread"); Ex. 18 at 5 ("We are also addressing supply chain challenges, which we expect to persist into 2022 by managing areas that are within our control.").[6]

---

[5]    The remaining alleged COVID-19 misstatements are ¶¶85, 86, 87, 88, 89, 156.

[6]    These disclosures negate Plaintiffs' assertion regarding "as-yet-unrealized risks." TO at 12–13. Where, as here, "a company's filings contain abundant and specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies." *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 809 (N.D. Cal. 2019); *accord In re Progenity, Inc. Secs. Litig.*, 2023 WL 219345, at *9 (S.D. Cal. Jan. 13, 2023).

8

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

As Defendants' motion explained, the statements Plaintiffs reference are also classic puffery, replete with statements about "strong resiliency," "agile response," "powerful and nimble," "rapid profitability," and "speed and flexibility." TO at 10; TMTD at 11. Plaintiffs address this only with the empty assertion that Defendants' argument is "unavailing." TO at 10. But their cases merely confirm that statements that "provide[] a concrete description of the past and present state" of a company are actionable, whereas others that use merely "subjective or emotive terms" are not. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017); *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *16 (N.D. Cal. Aug. 17, 2022). The challenged statements are subjective and emotive, not concrete.

### 4.    Inventory and Promotions Statements.[7]

Plaintiffs cite statements from two post-IPO earnings calls (Q4 2021 and Q1 2022) and an August 3, 2022 press release, claiming that Torrid lied to investors about promotions and discounts. TO at 11–12 (citing ¶¶154, 156, 167, 171). Plaintiffs are wrong.

Defendants' motion explained that the FAC mischaracterizes comments about using promotions, and that Plaintiffs' promotion allegations ignore Torrid's regular disclosures of actual inventory levels. TMTD at 9–10 & n.9. Plaintiffs do not dispute these points. For example, they ignore that immediately before Torrid's CFO said the Company was "comfortable with both the level and newness of our inventory," he disclosed actual inventory levels and stated they were "12% higher at the end of the fiscal 2021 versus fiscal 2019." Ex. 18 at 7.

Plaintiffs pivot in their Opposition to challenging three obviously forward-looking statements about plans and expectations. TO at 11; *see also* Ex. 12 at 3 ("we *plan* to take a more surgical approach to promotions ....") (emphasis added); Ex. 18 at 11 ("we *see* promotional activity to be similar to 2021" and "[we're] *looking* at 2022 to

---

[7]    The remaining alleged inventory and promotional activity misstatements are ¶¶79, 81, 88, 132, 141, 142, 146, 154, 156, 160, 167, 171.

9

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

be more of a normalized year related to" promotions.) (emphasis added); Ex. 20 at 2 (we "***expect*** to have assortments in a balanced position by mid-September") (emphasis added). As Defendants explained in the motion, "[t]he PSLRA's safe harbor protects forward-looking statements that have adequate warnings or were made without the defendant's actual knowledge of the statement's falsity." *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635425, at \*6 (C.D. Cal. Oct. 30, 2017).

Plaintiffs do not dispute this standard, nor that the statements were accompanied by a robust forward-looking disclaimer and cautionary language. Ex. 12 at 2, 16; Ex. 18 at 2, 18; Ex. 20 at 2, 4–5. They further fail to identify any facts showing that Defendants had actual knowledge that their forward-looking statements were false. Torrid never said that it "never has or will use promotions, especially in response to unprecedented disruptions during the pandemic." TMTD at 10 n.9. The statements are therefore non-actionable. *See M & M Hart*, 2017 WL 5635425, at \*6.

All that remains is the August 3, 2022 statement that "we were able to clear out projected levels of excess inventory." TO at 11 (citing ¶171); Ex. 20 at 2. Plaintiffs do not claim that this statement was false when made. They instead say that inventory levels rose after the statement. TO at 11. But the statement concerned "levels of excess inventory" ***before*** August 3, 2022. Whether inventory rose ***after*** that date has no bearing on the statement whatsoever.

> **C.     Plaintiffs Fail to Plead Scienter with Particularity.**

> **1.      Plaintiffs' Vague CW Accounts Are Inadequate.**

Plaintiffs relegate their defense of the CW accounts to a footnote in their Opposition. TO at 14 n.6. That is because these accounts fall woefully short of establishing a strong inference of scienter.

As Defendants' motion explained, while the CW accounts vaguely allude to staffing, inventory, and storage issues, neither statement is "indicative of scienter." TMTD at 14. Plaintiffs' arguments do not address this dispositive flaw. Plaintiffs cite *Glazer Cap. Mgmt., L.P. v. Forescout Techs. Inc.*, 63 F.4th 747, 771 (9th Cir. 2023),

10

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

claiming that they "need only provide a basis for each CW's knowledge." TO at 14 n.6. That is wrong: Plaintiffs must establish how their two low-level CWs have "reliable personal knowledge of the defendants' mental state." TMTD at 14 (citing *Zucco Partners, LLC*, 552 F.3d at 998). Plaintiffs identify no such allegations here, nor any contemporaneous misstatements about the shipping, staffing, and other issues alleged by the CWs. The CW accounts are irrelevant.

Neither CW claims to have ever spoken to any Defendant about anything, nor to know anything about any Defendant's state of mind. Plaintiffs' cases are easily distinguished. *See In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005) (23 CWs, including former executives, alleged that defendants knowingly violated GAAP procedures); *Glazer*, 63 F.4th at 771 (20 CWs, including senior executives and their associates, who "were pressured by senior executives" and "heard an executive" say something).

Plaintiffs say that CW-1 "worked at the DC" and "tracked Torrid's inventory received at the DC and worked with the Company's WMS." UO at 7.[8] But this goes to whether CW-1 has ***personal*** knowledge of inventory—not whether CW-1's allegations are evidence of ***Defendants'*** knowledge.

Plaintiffs' arguments as to CW-2 fare no better. While CW-2 allegedly conducted "daily counts" and "submitted periodical reports … [to] Torrid headquarters," ¶38, Plaintiffs do not reference a specific report, a particular date, any content within a particular report, or who received it and when. Defendants' motion made clear that such allegations are required. TMTD at 14–15. Plaintiffs' own authority admits Defendants' argument that "[g]eneral allegations of defendants'…receipt of unspecified weekly or monthly reports are insufficient." *Daou*, 411 F.3d at 1022; *accord Patel v. Parnes*, 253 F.R.D. 531, 558 (C.D. Cal. 2008). Similar allegations have been rejected by a legion of Ninth Circuit authority. *See Zucco*, 552 F.3d at 1000 (rejecting "allegations that senior

[8]    Plaintiffs incorporate their arguments "discussed in the UO at §III.D.1." TO at 14 n.6. Defendants join and incorporate the Underwriters' responses to these arguments.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

management...closely reviewed the accounting numbers generated...each quarter..., and that top executives had several meetings in which they discussed quarterly inventory numbers"); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) ("Missing are allegations linking specific reports and their contents to executives, not to mention the link between the witnesses and the executives."); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) ("We would expect that a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability.").

### 2. Plaintiffs' Circumstantial Scienter Theories Fail.

Defendants' motion explained why Plaintiffs' circumstantial allegations of scienter are insufficient. TMTD at 15–18. Plaintiffs either concede or change course midstream to try to save their case. Both strategies fail.[9]

### a. Later "Admissions."

Plaintiffs point to their bogus "abandonment" theory. TO at 14. As explained above, Plaintiffs mischaracterize Harper's statement. Harper never said that Torrid abandoned its data-driven merchandising model or read-and-react approach. Ex. 10 at 7. Plaintiffs assert for the first time an unalleged theory that Torrid abandoned its "chase mode" and "core disciplines," but they do not explain what these are, how they relate to the data-driven model, or how they evidence fraud. TO at 14.

Plaintiffs next claim that Harper "publicly admitted that Torrid had to upgrade the DC because it lacked sufficient capacity." TO at 15. But the paragraph Plaintiffs cite (¶83) says nothing about "upgrad[ing] the DC." While Plaintiffs elsewhere claim that "Torrid had been upgrading the capacity in [its] distribution center" (¶200), that does not contradict Torrid's statement that the distribution center was "capable." ¶83.

_____

[9] Plaintiffs decline to meaningfully defend the FAC's scienter theories related to "Executive Compensation" (except to obliquely reference IPO "proceeds") and "Internal Reports and Controls."

12

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Rather, as explained in Defendants' motion, it affirms the statement. TMTD at 9. Torrid proved the center's capabilities by increasing capacity, thereby handling Torrid's needs.

Further, Plaintiffs' argument about upgrades six months after the relevant statements does not show scienter because "the complaint does not allege *contemporaneous facts* … that would create a strong inference that the alleged adverse facts were known *at the time of the challenged statements*." *In re Vantive Corp. Secs. Litig.*, 283 F.3d at 1079, 1085 (9th Cir. 2002) (emphasis added). At the time and throughout the Class Period, Defendants were navigating challenging market conditions caused by an unprecedented pandemic. *See Zucco*, 552 F.3d at 1007 (rather than specific intent to defraud, allegations "point[ed] towards the conclusion that Digimarc was simply overwhelmed with integrating a large new division into its existing business").

In short, unlike their cited cases, Plaintiffs fail to allege a later statement that "directly contradicts or is inconsistent with the earlier statement." *In re Read–Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003). In *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106 (N.D. Cal. 2020), unlike here, the defendant admitted it "had been aware of the problem" at the time of the alleged misstatements. Likewise in Plaintiffs' other cases. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1190 (C.D. Cal. 2007) (basing scienter on "contemporaneous knowledge of the financial reports signed by the Individual Defendants"); *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1232-33 (9th Cir. 2004) (defendant admitted knowing that a key product "required certain patches and bug fixes" and "an awful lot of [] deals" had fallen through).

### b.   Access to Inventory Information.

Lacking evidence of Defendants' mental state, Plaintiffs try to shift focus to Defendants' access to inventory information. TO at 15–16. But as Defendants' motion made clear and Plaintiffs do not refute, Plaintiffs do not allege that Defendants lied about Torrid's inventory levels. Torrid, in fact, accurately disclosed its actual inventory

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

levels. TMTD at 3. Consequently, whether Defendants were aware of information relating to inventory is irrelevant.

Nevertheless, Plaintiffs' barebone CW allegations that defendants "had access" to unspecified "inventory accounting reports and logs" are inadequate. The Ninth Circuit has repeatedly rejected such allegations. *See Zucco*, 552 F.3d at 1000; *Intuitive*, 759 F.3d at 1063; *Silicon Graphics*, 183 F.3d at 985. "[N]egative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002).

Plaintiffs' cases highlight their deficient allegations. In *S. Ferry LP No. 2 v. Killinger*, 542 F.3d 776, 784–85 (9th Cir. 2008), the Ninth Circuit confirmed that "[w]here a complaint relies on allegations that management had an important role in the company ***but does not contain additional detailed allegations about the defendants' actual exposure to information***, it will usually fall short of the PSLRA standard." (emphasis added). Such is the case here. And unlike *Turocy v. El Pollo Loco Holdings* and *Shenwick*, where the CWs had "personal knowledge" about defendants' access to specific information, the FAC does not contain any allegation that any Defendant accessed any particular information. 2017 WL 3328543, at *16 (C.D. Cal. Aug. 4, 2017); 282 F. Supp. 3d at 1148–49.

### c.      Responses to Analyst Questions.

Plaintiffs ignore Defendants' argument that analyst responses do not "show[] an intent to defraud." TMTD at 17. For instance, Muñoz's statement that "[w]e don't necessarily use promotions to drive product" is a bland reference to Torrid's marketing strategies. TO at 16 (citing ¶203). Wehlitz's statement that inventory levels increased for goods "in-transit in the water, not in our buildings" merely summarized Torrid's publicly disclosed inventory levels. *Id.* (citing ¶205). And Harper's statement that "[w]e're really comfortable with the mix of inventory between clearance and regular price," appears to refer to the pricing of clothing lines. *Id.* (citing ¶206). Plaintiffs'

14

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

"vague allegations concerning analyst questions do not support a strong inference of scienter." *Swartzendruber v. Colony Cap., Inc.*, 2020 WL 7754008, at *7 (C.D. Cal. Dec. 10, 2020).

Plaintiffs' cases demonstrate that responses to analysts are relevant only where they conceal fraud. *See In re Qualcomm Inc. Sec. Litig.*, 2019 WL 1239301, at *11 (S.D. Cal. Mar. 18, 2019) (referring to "specific denials [of]…anticompetitive practices in response to questions from analysts"); *In re Fibrogen, Inc.*, 2022 WL 2793032, at *23 (N.D. Cal. July 15, 2022) (mentioning "specific responses to questions that falsely implied that the data was sanctioned"). Here, Plaintiffs' examples show the opposite: Defendants openly engaged with analysts on earnings calls, providing forthright responses in the midst of unprecedented market turmoil. This candid dialogue disproves rather than supports scienter. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 417 (9th Cir. 2020) ("The complaint provides no explanation as to why a company supposedly bent on concealment ... would have open discussions with numerous company outsiders.").

### d.    2017 IPO.

In their motion, Defendants explained that Plaintiffs had not established any connection between the alleged "inventory management" issues present before a prior IPO, and the alleged issues in the FAC—which Plaintiffs admit were caused by an unprecedented pandemic. TMTD at 18 (citing ¶67). The Opposition does not provide that connection. Plaintiffs further admit that leading up to the July 2021 IPO, inventory decreased, revenue increased, gross margin increased, and gross profit nearly doubled. ¶71. Given this, the prior IPO is wholly irrelevant. Plaintiffs further ignore that the FAC identified several reasons for the IPO withdrawal besides "inventory management." ¶52 (citing "constant proliferation of SKUs," and "not having all the right leadership").

### e.    Core Operations.

Plaintiffs claim that certain of their "[f]actual allegations support scienter under the core operations doctrine" because "it would be 'absurd' to suggest that management was without knowledge of the matter." TO at 17. But such allegations appear nowhere

15

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

in the FAC. In support of their newfound theory, Plaintiffs point to an allegation that Muñoz is a "a self-claimed 'product person'" (¶54) and the unalleged fact that she "had hands-on involvement in Torrid's inventory." TO at 17. But Plaintiffs' own authorities admit that "[g]eneral allegations of defendants' 'hands-on' management style … are insufficient." *Daou*, 411 F.3d at 1022; *In re VeriFone Holdings, Inc., Sec. Litig.*, 704 F.3d 694, 710 (9th Cir. 2012) (complaint alleged "in detail" that defendants were "hands-on managers").

"Proof under [the core operations] theory is not easy," and Plaintiffs "must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations ... or witness accounts demonstrating that executives had actual involvement in creating false reports." *Intuitive*, 759 F.3d at 1062. Plaintiffs offer none of that here.

### f.        Executive Departures.

In response to Defendants' argument that Plaintiffs fail to allege whether any of the departures were suspicious, TMTD at 17, Plaintiffs merely recycle their deficient allegations that four directors, plus the CFO and head of HR (neither of whom are Defendants), "had either resigned, been fired, or replaced" within two years of Torrid's IPO. TO at 17. Plaintiffs still fail to "differentiate between a suspicious change in personnel and a benign one." *Zucco*, 552 F.3d at 1002. Allegations "that the resignation at issue was uncharacteristic" or "accompanied by suspicious circumstances" are essential, otherwise "the inference [of wrongdoing] ... will never be as cogent or as compelling as the inference that the employees resigned or were terminated for unrelated personal or business reasons." *Id.* Plaintiffs "fail to provide any facts to connect [the] departures with the problems at issue." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062–63 (9th Cir. 2014).

Plaintiffs' authorities confirm that more is needed. *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 4859099, at *5 (N.D. Cal. Oct. 2, 2019) (eleven executives left the company following an Audit Committee investigation); *In re Volkswagen*

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*"Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281, at *14 (N.D. Cal. Jan 4, 2017) (virtually all management was replaced amid emissions cheating scandal and executives "expressly admitted wrongdoing").

### g.   Stock Sales and Compensation.

Defendants' motion explained that securities fraud plaintiffs must allege meaningful trading histories. TMTD at 15. Plaintiffs' references to the "proceeds" and "personal financial gain" that resulted from the IPO, TO at 18, do not excuse their failure to provide those histories. This is true even if "the defendant's trading history is simply not available," "the defendant had no trading history" at all, or the defendant was "legally forbidden to trade for a long period before the class period." *Zucco*, 552 F.3d at 1005–06. Plaintiffs' authorities either reaffirm this requirement or are from another circuit.[10]

As the motion also explained, Plaintiffs' generic allegations of compensation fail for a similar reason. TMTD at 17. They do not show a "strong correlation" between the compensation and the Company's bottom line, nor do they compare Defendants' compensation to previous years, as Plaintiffs' cited authorities do.[11] *Id.*

Instead of addressing these mandatory requirements, Plaintiffs engage in sleight of hand. They point to "Defendants' more than $235 million in proceeds" from the IPO, but overlook that $210 million of this figure is attributed to Sycamore, which is irrelevant to "Torrid and the Individual Defendants." ¶236.

More fundamentally, Plaintiffs' argument that profits from the IPO are sufficient

---

[10]   *See In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *14 (N.D. Cal. Jan. 6, 2022) (analyzing Defendants' alleged "prior trading practices"); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *18 (C.D. Cal. Oct. 1, 2013) (discussing sales' "Consistency With Prior Trading History"); *Turocy*, 2017 WL 3328543, at *17 (same); *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 420 (S.D.N.Y. 2011) (analyzing whether insider sales are "unusual"); *Oracle*, 380 F.3d at 1232 (defendants' trades were "highly inconsistent with his prior trading history"); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharm., Inc.*, 2022 WL 4491093, at *13 (S.D. Cal. Sep. 27, 2022) (examining "whether the sales were consistent with the insider's prior trading history"); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *14 (C.D. Cal. July 1, 2008) (same).

[11]   TO at 18 (citing *In re Plantronics, Inc.*, 2022 WL 3653333 at *19).

---

17

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

to establish scienter is incorrect. All IPOs and corporate transactions are designed to make money, yet clearly not every money-making transaction is evidence of fraud. Hence, all of Plaintiffs' cited cases involve situations where the defendants sold large percentages of their holdings,[12] sold stock in highly suspicious circumstances,[13] or sold nearly $1 billion of stock at suspicious times.[14]

Plaintiffs allege nothing of the sort here. Indeed, they do not dispute the trading information set forth in Defendants' motion. TMTD at 15–16; App'x B (stock sales chart). Half the Individual Defendants sold no stock at all. *See Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 835 (S.D. Cal. 2006) (non-trading defendants "negate[] any inference of scienter"). The Registration Statement publicly disclosed all trades before they took place. Ex. 3 at 125. At the end of the Class Period, all trading Defendants held nearly 90% or more of their stock, and Sycamore remained "the Company's controlling shareholder before, during, and after the IPO." *See* TMTD at 16. These facts heavily undermine an inference of scienter.

### D.   Plaintiffs Fail to Plead Loss Causation.

Plaintiffs admit Defendants' argument that the corrective disclosures pertain to "Torrid's disappointing financial performance." TO at 19. Alleging that the market learned about "the financial impact" of alleged fraudulent practices is not enough—the market must have reacted to the revelation of the practices themselves. *Loos v. Immersion Corp.*, 762 F.3d 880, 888 (9th Cir. 2014). Here, the alleged disclosures refer to "inflation" (¶227), "discounts," "and promotions" (¶230), not the revelation of any fraud. This deficiency is not saved by the "performance of Torrid's peers," TO at 20,

---

[12]   *BioMarin*, 2022 WL 164299, at *14 (defendant sold 64% of his stock during class period); *Questcor*, 2013 WL 5486762, at *15 (defendants sold 30%, 60%, and 50% of their shares during class period); *Roseville*, 814 F. Supp. 2d at 421 ("defendants sold more than 80% of their holdings ... through the IPO"); *Batwin*, 2008 WL 2676364, at *14 (defendants "sold all of the common stock in Occam" that they owned).

[13]   *City of Birmingham, Inc.*, 2022 WL 4491093, at *5, *13 (defendants sold no stock before announcement of allegedly fraudulent study results, then sold more than $40 million after announcement boosted the share price).

[14]   *Oracle*, 380 F.3d at 1232.

18

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

because whether Torrid was uniquely susceptible to these market factors is of little consequence. "[D]isappointing earnings ... are merely indicative of poor financial health; they do not tend to suggest that the company had engaged in fraudulent ... practices." *Loos*, 762 F.3d at 888. Plaintiffs have failed to plead loss causation.

### E. The FAC Does Not Plead Control Person Liability.

Because Plaintiffs have failed to state Section 10(b) claims, their Section 20(a) claims "may be dismissed summarily." *Zucco*, 552 F.3d at 990. Plaintiffs again point to Sycamore's stock holdings and Kaluzny's and Kopelioff's positions as directors. TO at 20–21. These allegations do not support the conclusion that Defendants participated "in the day-to-day affairs of the corporation" or had the "power to control corporate actions." *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011). Plaintiffs' own authority rejects similar "conclusory efforts to allege control person liability." *Purple Mountain Trust*, 432 F. Supp. 3d at 1106-07.[15]

### F. Plaintiffs Fail to Salvage Their Insider Trading Claim.

Because Plaintiffs fail to allege a predicate violation of the securities laws, their insider trading claim fails. *See SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1135–36 (N.D. Cal. 2020). It also fails for additional reasons.

Plaintiffs do not address multiple dispositive defects raised in Defendants' motion. The motion explained that Plaintiffs failed to allege any particularized facts that Defendants traded on the basis of MNPI. *See* TMTD at 20. Plaintiffs ignore (and thus concede) this argument. TO at 21–22. The motion also explained that Plaintiffs failed to allege scienter, which "for insider trading requires that the insider ***actually use*** (scienter) the insider information in deciding to make the trade (loss causation)." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202–03 (C.D. Cal. 2008).

---

[15] Plaintiffs concede that Kaluzny and Kopelioff are alleged to have "made" only statements in the Registration Statement. TO at 6 n.2. Because none of these statements are actionable or misleading, as explained in Defendants' and the Underwriters' motions, Kaluzny and Kopelioff must be dismissed from the case.

19

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs ignore (and thus concede) this argument, too. TO at 21–22. The insider trading claim should be dismissed. *Silva*, 2011 WL 7096576, at *3.

The Opposition's lone argument addresses contemporaneity. Pointing to trades that allegedly occurred two and four trading days after Defendants sold shares, Plaintiffs assert that their "purchases were ... contemporaneous." TO at 21. Plaintiffs ignore the authority cited in Defendants' motion, holding that "Plaintiffs must 'plead facts showing they traded the same class of security on the same trading day, or one trading day after, the insider's transaction.'" TMTD at 20–21 (quoting *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1204–05). Plaintiffs' authority confirms that the contemporaneous requirement "limits the private right of action to those who actually traded with someone who had an unfair advantage." *Middlesex Ret. Sys. v. Quest Software, Inc.*, 2008 WL 7084629, at *14 (C.D. Cal. July 10, 2008). But "to expand the reach of Section 20A beyond same day trades would in effect, permit plaintiffs to assert claims where it is implausible that they traded with defendants." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 503 F. Supp. 2d 25, 47 (D.D.C. 2007).

Plaintiffs erroneously assert that it does not matter whether they purchased shares for less than Defendants sold. But "courts have consistently held that shares purchased below the defendant's sale price cannot satisfy the contemporaneity requirement." *SEB Inv.*, 485 F. Supp. 3d at 1136. That is because "it is impossible that those trades occurred with defendant at an unfair advantage." *Id.*

**G.     The FAC Fails to Plead Securities Act Claims.**

Plaintiffs admit that § 11 and § 12 claims must allege an actionable material omission or misrepresentation. UO at 3–4. Because Plaintiffs have not done so, their claims must be dismissed.

Plaintiffs further argue that Rule 8, rather than Rule 9(b), applies to their Securities Act claims. But Rule 9(b) applies because the FAC "sounds in fraud." *Rivian,* 2023 WL 3050081, at *13–14.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' allegations directly contradict their assertion that the Securities Act allegations are "carefully couched in negligence." *Id.* First, the FAC admits that the Securities Act allegations sound in fraud. It alleges that "as set forth in ¶¶ 82, 84, 90 (Securities Act Allegations)," the "statements and omissions described were ***knowingly or recklessly false*** and misleading when made." ¶129. Second, Plaintiffs suggest that they allege scienter only as to the Exchange Act Defendants, UO at 5, but six of the Securities Act Defendants ***are also*** Exchange Act Defendants for whom scienter is alleged based on the same statements. ¶¶15–24, 120–128. Third, Plaintiffs' Securities Act and Exchange Act claims are based on the same factual allegations and alleged false statements, and the Exchange Act claims "incorporate by reference ***all*** of the allegations contained" in the Securities Act section of the FAC. ¶129 (emphasis added); *see Rubke v. Capitol Bancorp Ltd,* 551 F.3d 1156, 1161 (9th Cir. 2009).

## III.   CONCLUSION

Defendants respectfully request that the Court dismiss the FAC with prejudice.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

DATED: August 25, 2023

Respectfully submitted,
KIRKLAND & ELLIS LLP

By: */s/ Austin Norris*

Mark Holscher (SBN 139582)
Austin Norris (SBN 284603)
KIRKLAND AND ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Tel: (310) 552-4200
Facsimile: (310) 552-5900
Email: mark.holscher@kirkland.com
Email: austin.norris@kirkland.com

Matthew Solum (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4688
Facsimile: (212) 446-4900
Email: matthew.solum@kirkland.com

*Attorneys for Defendants Torrid Holdings Inc., Elizabeth Muñoz, George Wehlitz, Stefan L. Kaluzny, Dary Kopelioff, Lisa Harper, Theo Killion, Sycamore Partners Management, L.P., Sycamore Partners Torrid, LLC, Sycamore Partners, L.P., Sycamore Partners Associates-C, L.P., Sycamore Partners Associates, L.P., Sycamore Partners Associates Investments, L.P., Sycamore Partners (Co-Invest), LLC, and Sycamore Partners Associates Co-Invest, L.P.*

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## CERTIFICATE OF COMPLIANCE

I hereby attest that this brief contains 7,000 words, which complies with the word limit of L.R. 11-6.1.


DATED: August 25, 2023          */s/ Austin Norris*

                                *Attorney for Defendants*