Mark Holscher (SBN 139582)
Austin Norris (SBN 284603)
KIRKLAND AND ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:   (310) 552-4200
Facsimile:   (310) 552-5900
Email: mark.holscher@kirkland.com
Email: austin.norris@kirkland.com

Matthew Solum (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4688
Facsimile: (212) 446-4900
Email: matthew.solum@kirkland.com

*Attorneys for the Torrid, Sycamore, and
Individual Defendants*

James N. Kramer (SBN 154709)
Alexander K. Talarides (SBN 268068)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759
Email: jkramer@orrick.com
Email: atalarides@orrick.com

Darrell S. Cafasso (*Pro Hac Vice*)
Jennifer Keighley (*Pro Hac Vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 506-5000
Facsimile:   (212) 506-5151
Email: dcafasso@orrick.com
Email: jkeighley@orrick.com

*Attorneys for Underwriter Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WASWICK, On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TORRID HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-08375-JLS(ASx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>FAC Filed:      May 12, 2023<br>SAC: Filed:     December 22, 2023<br><br>Judge:          Hon. Josephine L. Staton<br>Hearing:       May 10, 2024<br>Time:           10:30 a.m.<br>Courtroom:   8A |

PLEASE TAKE NOTICE that, on May 10, 2024 at 10:30 a.m. in Courtroom 8A of the United States District Court for the Central District of California, at the First Street Courthouse, located at 350 West 1st St., Los Angeles, California 90012, all Defendants in this action will and hereby do move pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b) for an order dismissing the First Amended Consolidated Class Action Complaint for the Violation of Federal Securities Laws ("SAC") (ECF 91) with prejudice.[1]

As explained in the Memorandum of Points and Authorities below, the Court should dismiss the claims asserted against Defendants because the SAC fails to state a claim under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Austin Norris and Exhibits in Support, the Request for Judicial Notice, any Reply, all other papers and pleadings on file in this action, and any oral argument that may be presented at the hearing in this matter.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 18, 2024.

---

[1] The SAC names three groups of Defendants, defined as "Torrid and the Individual Defendants," the "Underwriter Defendants," and the "Sycamore Defendants." SAC ¶¶15–33. This Motion is made jointly on behalf of all Defendants named in the SAC.

**DEFENDANTS' MOTION TO DISMISS SAC WITH PREJUDICE**

1
2   DATED: January 26, 2024                Respectfully submitted,

3                                          KIRKLAND & ELLIS LLP
4
                                           By: */s/ Austin Norris*
5
                                           Mark Holscher (SBN 139582)
6                                          Austin Norris (SBN 284603)
7                                          KIRKLAND AND ELLIS LLP
                                           2049 Century Park East
8                                          Los Angeles, CA 90067
                                           Telephone:  (310) 552-4200
9                                          Facsimile:   (310) 552-5900
                                           Email: mark.holscher@kirkland.com
10                                         Email: austin.norris@kirkland.com

11                                         Matthew Solum (*Pro Hac Vice*)
12                                         KIRKLAND & ELLIS LLP
                                           601 Lexington Avenue
13                                         New York, New York 10022-4611
                                           Telephone: (212) 446-4688
14                                         Facsimile: (212) 446-4900
                                           Email: matthew.solum@kirkland.com
15
16                                         *Attorneys for the Torrid, Sycamore, and*
                                           *Individual Defendants*
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' MOTION TO DISMISS SAC WITH PREJUDICE**

1

2    DATED: January 26, 2024                    Respectfully submitted,

3                                               ORRICK, HERRINGTON &
                                                SUTCLIFFE LLP

4

5                                               By: */s/ Alexander K. Talarides*
                                                James N. Kramer (SBN 154709)
6                                               Alexander K. Talarides (SBN 268068)
                                                ORRICK, HERRINGTON &
7                                               SUTCLIFFE LLP
                                                405 Howard Street
8                                               San Francisco, California 94105
                                                Telephone:   (415) 773-5700
9                                               Facsimile:   (415) 773-5759
                                                Email: jkramer@orrick.com
10                                              Email: atalarides@orrick.com

11

12                                              Darrell S. Cafasso (*Pro Hac Vice*)
                                                Jennifer Keighley (*Pro Hac Vice*)
13                                              ORRICK, HERRINGTON &
                                                SUTCLIFFE LLP
14                                              51 West 52nd Street
                                                New York, New York 10019
15                                              Telephone:   (212) 506-5000
                                                Facsimile:   (212) 506-5151
16                                              Email: dcafasso@orrick.com
                                                Email: jkeighley@orrick.com
17

18                                              *Attorneys for the Underwriter Defendants*

19

20

21

22

23

24

25

26

27

28

---

3

**DEFENDANTS' MOTION TO DISMISS SAC WITH PREJUDICE**

1

## ATTESTATION OF COMPLIANCE

2

Pursuant to L.R. 5-4.3.4, the filer, Austin Norris, attests that all other signatories

3

listed, and on whose behalf the filing is being submitted, concur in the filing's content

4

and have authorized the filing.

5

6

DATED:  January 26, 2024                    By: */s/ Austin Norris*
                                                           Austin Norris

7

*Attorney for the Torrid, Sycamore, and*
*Individual Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION TO DISMISS SAC WITH PREJUDICE**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 2

      A.   Torrid Goes Public During the COVID-19 Pandemic. ........................ 2

      B.   The Court Dismisses the FAC. ............................................................ 2

      C.   Plaintiffs File the SAC. ....................................................................... 3

      D.   Torrid Disclosed the Pandemic's Risks and Impact. ........................... 5

      E.   Torrid Disclosed Its Fluctuating Inventory and Inventory In-
          Transit. ................................................................................................ 6

III.    LEGAL STANDARD ..................................................................................... 8

IV.     ARGUMENT .................................................................................................. 9

      A.   Plaintiffs Have Not Alleged Section 11 or 12(a)(2) Claims. ............... 9

          1.   Plaintiffs Plead No Actionable Misstatements or Omissions. ..... 9

          2.   Plaintiffs' Shipping-Delay Claim Is Time-Barred. ................... 19

          3.   Plaintiffs' Allegations Establish Negative Causation. .............. 20

      B.   Plaintiffs' Section 15 Claim Also Fails. ............................................ 22

V.      CONCLUSION ............................................................................................. 22

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpern v. Utilicorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ...............................................................21

*Barnes v. Edison Int'l*,
   2022 WL 822191 (9th Cir. Mar. 18, 2022) ....................................2, 20

*Belodoff v. Netlist, Inc.*,
   2009 WL 1293690 (C.D. Cal. Apr. 17, 2009)..............................15, 17

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
   2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .......................................17

*Cai v. Switch, Inc.*,
   2020 WL 3893246 (D. Nev. July 10, 2020) ................................20, 22

*Chapman v. Mueller Water Prods., Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020) ................................................16

*Charter Twp. of Clinton Police & Fire Ret. Sys. v. LPL Fin. Holdings Inc.*,
   2017 WL 3582973 (S.D. Cal. Aug. 18, 2017).....................................13

*Crews v. Rivian Auto., Inc.*,
   2023 WL 4361098 (C.D. Cal. July 3, 2023) .......................................10

*Golubowski v. Robinhood Markets, Inc.*,
   2023 WL 1927616 (N.D. Cal. Feb. 10, 2023)........................11, 12, 17

*Golubowski v. Robinhood Markets, Inc.*,
   2024 WL 269507 (N.D. Cal. Jan. 24, 2024)..................12, 14, 15, 17

*Guangyi Xu v. ChinaCache Int'l*,
   2017 WL 114401 (C.D. Cal. Jan. 9, 2017).........................................13

*Hoang v. ContextLogic, Inc.*,
   2023 WL 8879263 (N.D. Cal. Dec. 22, 2023) .........................2, 20, 21

*Holbrook v. Trivago*,
   2019 WL 948809 (S.D.N.Y. Feb. 26, 2019) ......................................19

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

*In re Anchor Gaming Sec. Litig.*,
  33 F. Supp. 2d 889 (D. Nev. 1999) .......................................................................9

*In re AppHarvest Sec. Litig.*,
  2023 WL 4866233 (S.D.N.Y. July 31, 2023)....................................................17

*In re Barclays Bank PLC Secs. Litig.*,
  2016 WL 3235290 (S.D.N.Y. June 9, 2016) .....................................................21

*In re Countrywide Fin. Corp. Secs. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008)..............................................................22

*In re Dropbox Secs. Litig.*,
  2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ............................................18, 20

*In re Fortune Sys. Secs. Litig.*,
  680 F. Supp. 1360 (N.D. Cal. 1987).....................................................................22

*In re Harmonic Inc. Secs. Litig.*,
  163 F. Supp. 2d 1079 (N.D. Cal. 2001)..........................................................9, 13

*In re Merrill Lynch & Co., Rsch. Reports Secs. Litig.*,
  289 F. Supp. 2d 429 (S.D.N.Y. Oct. 29, 2003) ...........................................21, 22

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
  2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010).........................................1, 11, 16

*In re Obalon Therapeutics, Inc.*,
  2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ..................................................20

*In re Pivotal Secs. Litig.*,
  2020 WL 4193384 (N.D. Cal. July 21, 2020) ....................................................17

*In re Progenity, Inc.*,
  2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) .....................................................11

*In re Progenity, Inc. Sec. Litig.*,
  2023 WL 219345 (S.D. Cal. Jan. 13, 2023) .................................................11, 15

*In re Restoration Robotics, Inc. Secs. Litig.*,
  417 F. Supp. 3d 1242 (N.D. Cal. 2019).........................................................10, 17

*In re Shoretel, Inc., Secs. Litig.*,
  2009 WL 248326 (N.D. Cal. Feb. 2, 2009).........................................................21

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

*In re Talis Biomedical Secs. Litig.*,
  2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) ..................................................18

*In re Velti PLC Secs. Litig.*,
  2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) .............................................21, 22

*In re YogaWorks, Inc. Secs. Litig.*,
  2020 WL 2549290 (C.D. Cal. Apr. 23, 2020)...................................................20

*Katz v. China Centy. Dragon, Media, Inc.*,
  2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) ....................................................9

*Klein v. Maverick Tube Corp.*,
  790 F. Supp. 68 (S.D.N.Y. 1991), *aff'd*, 969 F.2d 1041 (2d Cir. 1992) ...........11

*Lowthorp v. Mesa Air Grp. Inc.*,
  2021 WL 3089118 (D. Ariz. July 22, 2021)......................................................20

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)..........................................................................................19

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fla. 2014) ..............................................................13

*Nguyen v. MaxPoint Interactive, Inc.*,
  234 F. Supp. 3d 540 (S.D.N.Y. 2017) .........................................................11, 17

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015)..........................................................................................14

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014) ............................................................................13

*Parnes v. Gateway 2000, Inc.*,
  122 F.3d 539 (8th Cir. 1997) ............................................................................16

*Pearlstein v. BlackBerry Ltd.*,
  93 F. Supp. 3d 233 (S.D.N.Y. 2015) .................................................................17

*Pierce v. Morris*,
  2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) .................................................22

*Rieckborn v. Jefferies LLC*,
  81 F. Supp. 3d 902 (N.D. Cal. 2015).................................................................20

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

*Rubke v. Capitol Bancorp Ltd*,
   551 F.3d 1156 (9th Cir. 2009) ...................................................................8, 10

*Shurkin v. Golden State Vintners, Inc.*,
   303 F. App'x 431 (9th Cir. 2008) .....................................................................11

*Sylebra Cap. Partners Master Fund Ltd.*,
   2023 WL 3549506 (C.D. Cal. May 9, 2023) ....................................................14

*Terenzini v. GoodRx Holdings, Inc.*,
   2022 WL 2189592 (C.D. Cal. June 9, 2022) ....................................................19

*Thomas v. Magnachip Semiconductor Corp.*,
   167 F. Supp. 3d 1029 (N.D. Cal. 2016)............................................................20

*Welgus v. TriNet Grp.*, Inc.,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239
   (9th Cir. 2019) ..................................................................................................18

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 167708 (N.D. Cal. Jan. 17, 2017)......................................................20

*Weston Fam. P'ship LLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022) .......................................................................1, 10

*Williams v. TouchTunes Music Corp.*,
   2014 WL 12626340 (C.D. Cal. June 13, 2014), *aff'd*, 639 F. App'x
   504 (9th Cir. 2016) .............................................................................................9

**Statutes**

15 U.S.C. § 77k(e) ....................................................................................20, 21

15 U.S.C. § 77m..................................................................................................19

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................10

Fed. R. Civ. P. 9(b) .....................................................................................8, 9, 10

**Other Authorities**

17 C.F.R. § 229.303 ...........................................................................................18

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

Edgar Public Dissemination Service Technical Specifications, available
    at https://www.sec.gov/files/edgar/pds_dissemination_spec.pdf..........................8

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

# TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| SAC | First Amended Consolidated Class Action Complaint for the Violation of Federal Securities Laws (ECF 91) |
| FAC | Consolidated Class Action Complaint for the Violation of Federal Securities Laws (ECF 59) |
| "Torrid" or the "Company" | Torrid Holdings Inc. |
| MTD Order | Order Granting Defendants' Motions to Dismiss (ECF 90) |
| Ex. | Exhibits to the concurrently filed Declaration of Austin Norris, unless otherwise noted. Page citations refer to the native page numbering at the bottom of each page, where applicable. |
| IPO | Initial Public Offering |
| Sycamore | Sycamore Partners Management, L.P. |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS AMENDED CLASS ACTION COMPLAINT WITH PREJUDICE**

## I.    INTRODUCTION

Plaintiffs' third attempt to plead a violation of the securities laws fares no better than their prior two. In the SAC, Plaintiffs allege that the Delta variant of COVID-19 caused shipping delays in the weeks before Torrid's July 1, 2021 IPO, resulting in order backlogs, lost sales, and lower prices that somehow led simultaneously to "excess inventory" and "severe inventory shortages."

If this sounds familiar, it should: Plaintiffs alleged the same theory in their FAC. Although the Court dismissed the FAC in full, holding that the challenged statements were non-actionable puffery and not false, Plaintiffs do not identify any new witnesses or documents. Instead, the SAC (1) abandons Plaintiffs' confidential witnesses and Exchange Act claims and (2) recycles Plaintiffs' challenge to a subset of non-actionable statements in Torrid's Registration Statement, almost all of which were previously alleged by Plaintiffs and dismissed by the Court. Plaintiffs do not come close to overcoming the dispositive flaws outlined in the Court's MTD Order.

***First***, the SAC is based on Torrid's alleged failure to disclose real-time shipping and financial data as of its July 1, 2021 IPO, which occurred in the middle of Torrid's fiscal second quarter. But companies "do not have an obligation to offer [] instantaneous update[s]," *Weston Fam. P'ship LLP v. Twitter, Inc.*, 29 F.4th 611, 620 (9th Cir. 2022), nor to "disclose interim financial data" absent extreme deviations from prior performance at the time of the IPO, *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *7 (S.D.N.Y. Mar. 31, 2010). Torrid's inventory and in-transit inventory fluctuated more before the IPO than after. And contrary to Plaintiffs' unsubstantiated claim that pre-IPO shipping delays were "wreaking havoc on Torrid's financial performance" (SAC ¶53), Torrid's financial performance improved at quarter-end following the IPO. Moreover, after the allegedly disastrous shipping delays were disclosed on September 8, 2021, Torrid's stock price ***surged upward*** by 32% in a single day.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

*Second*, Plaintiffs do not identify any actionable misstatements. Investors know that shipping delays, fluctuating inventory, and supply chain issues "are a part of everyday life for businesses" like Torrid. MTD Order at 14. Supply chain disruptions were widely reported during the pandemic and known by any reasonable investor; Plaintiffs even admit that Torrid's customers spoke publicly about these issues "before the IPO." SAC ¶43. Plaintiffs challenge non-actionable puffery, fail to plead falsity, and misconstrue Torrid's risk warnings as guarantees that no similar risks had affected the Company.

*Third*, Plaintiffs' shipping-delay claims are barred by the Securities Act's one-year statute of limitations. *See, e.g.*, *Barnes v. Edison Int'l*, 2022 WL 822191, at *1 (9th Cir. Mar. 18, 2022).

*Fourth*, Plaintiffs' claims are also barred by negative causation because the SAC establishes that factors other than the alleged misstatements caused Plaintiffs' alleged damages. *See, e.g.*, *Hoang v. ContextLogic, Inc.*, 2023 WL 8879263, at *16 (N.D. Cal. Dec. 22, 2023).

## II.    BACKGROUND[2]

### A.    Torrid Goes Public During the COVID-19 Pandemic.

Torrid is a retailer of plus-size women's clothes. SAC ¶15. Nearly all of Torrid's merchandise is sourced from international manufacturers. *Id.* ¶35. Torrid filed an S-1 registration statement during the pandemic, effective June 30, 2021. Ex. 1 (Reg. Statement); SAC ¶30. Torrid went public on July 1, 2021. SAC ¶4.

### B.    The Court Dismisses the FAC.

The SAC is the third Securities Act complaint filed in this action. ECF 1 (Nov. 16, 2022 Complaint); ECF 59 (May 12, 2023 FAC). The FAC challenged dozens of statements    regarding    Torrid's    inventory,    data-driven    merchandising    model,

---

[2]    This background is drawn from the SAC's allegations, as to which Defendants reserve all rights.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

distribution center, and response to the COVID pandemic. ECF 59. Plaintiffs alleged that these statements were false because (1) Torrid "was experiencing increased merchandise shipment delays" before the IPO, which "created increasingly growing customer order backlogs, to the point that millions of customer orders remained unfulfilled in the months before the IPO"; (2) "The delayed shipments were also causing Torrid to miss seasonal launches … which created excess inventory that either didn't move or could not be sold at full price"; (3) "Torrid was forced to abandon its data driven, low risk merchandising model" and "was unable to make data driven merchandise decisions, perform read-and-react testing … or use its speed model"; and (4) "Torrid was purchasing large quantities of product upfront and exceeding planned merchandise levels, which left the Company unable to quickly respond to consumer demand." FAC ¶82; *see also* ¶¶84, 90, 139, 148, 161, 170, 183.

The Court granted Defendants' motions to dismiss, finding that "[t]he vast majority of statements that Plaintiffs identify are non-actionable puffery," and that "the remaining statements have not plausibly been pleaded to be false or misleading." MTD Order at 7. Key to the Court's analysis was the fact that the metrics underlying Plaintiffs' claims—shipping and inventory—are necessarily fluid. *Id.* at 10–14. "Fluctuating input costs are a part of everyday life for businesses" and so are "delayed shipments, as some amount of lag time between order placement and fulfillment is inevitable for any online retailer." *Id.* at 14. Consequently, "a reasonable investor would not read" Torrid's statements "to imply that Torrid, in the leadup to the IPO, had categorically experienced neither disruptions nor delayed shipments." *Id.*

### C.    Plaintiffs File the SAC.

Nearly all statements challenged in the SAC were previously alleged in the FAC and dismissed by the Court:

1.    <u>Statement 1</u>:  "We leverage our robust customer data to inform purchasing decisions and have the flexibility to respond quickly to the

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

latest sales trends and incorporate customer feedback to deliver the products our customer wants." SAC ¶64 (FAC ¶77).[3]

2.  <u>Statement 2</u>:  "Through our vertical sourcing model, we have the flexibility to respond quickly to the latest sales trends and make adjustments to our current offering ...." SAC ¶64 (FAC ¶77).

3.  <u>Statement 3</u>:  "[W]e have the flexibility to react quickly to product performance, make in-season inventory purchasing adjustments where possible and to respond to the latest sales trends by ordering or re-ordering as appropriate." SAC ¶64 (FAC ¶¶56, 159).

4.  <u>Statement 4</u>:  Torrid made "targeted investments and changes to our process to improve the speed and flexibility of our supply chain including shortening our development cycle by two weeks." SAC ¶65 (FAC ¶¶60, 87).

5.  <u>Statement 5</u>:  Torrid used a "speed model" to enhance supply chain flexibility and "accelerate product replenishment cycles, improve inventory turnover, and drive higher margins sales." SAC ¶66 (FAC ¶¶59, 80).

6.  <u>Statement 6</u>:  "The Registration Statement purported to warned [sic] that Torrid may be negatively impacted by 'inventory shortages' 'if our manufacturers fail to supply quality products in a timely manner.'" SAC ¶70 (FAC ¶81).

7.  <u>Statement 7</u>:  "If our manufacturers do not ship orders to us in a timely manner or meet our quality standards, it could cause delays in responding to consumer demands or inventory shortages and negatively affect consumer confidence in the quality and value of our brand or negatively impact our competitive position." SAC ¶71.

8.  <u>Statement 8</u>:  The "COVID-19 outbreak has the potential to cause a disruption in our supply chain and may adversely impact economic conditions in North America, Europe, China and elsewhere." SAC ¶72.[4]

---

[3]  Statement 1 differs trivially from, and is materially identical to, the language quoted at FAC ¶77.

[4]  Plaintiffs also include a statement about Torrid's "scale to order sufficient quantities and effectively manage a continuously refreshed plus-size inventory." SAC ¶67. Because no part of the statement is bolded or italicized, the statement is included only "for context." *Id.* n.3. Regardless, Plaintiffs do not allege any facts showing this statement is false, and it fails for the same reasons described below.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

To challenge these statements, the SAC reasserts the same theory previously alleged in the FAC: shipping delays in the weeks before the IPO, driven by "the Delta variant of COVID-19," caused order backlogs, lost sales, and lower prices. SAC ¶¶40, 68. Also like the FAC, Plaintiffs assert that Torrid's risk disclosures were misleading because shipping delays and inventory issues were already impacting the Company. *Id.* ¶¶69, 73.[5]

But Plaintiffs admit that investors were well aware of these issues before the IPO. The SAC states that "before the IPO, Torrid customers took to social media and repeatedly complained about the stockouts and order backlogs, and expressed dissatisfaction with the Company." SAC ¶43.

### D.    Torrid Disclosed the Pandemic's Risks and Impact.

Torrid's Registration Statement contained extensive disclosures related to the pandemic and its impact, telling investors of "a high degree of risk." Ex. 1 at 21. Torrid specifically disclosed risks associated with inventory, shipping, and data-based inventory systems, including:

- "[T]he potential of the interruption of the flow of merchandise from international manufacturers *to disrupt our supply chain*."
- "The *inability of a manufacturer to ship goods on time* and to our specifications … could negatively impact our business."
- "[W]e could *fail to effectively utilize information systems* and implement new technologies."
- "[T]he COVID-19 outbreak has the potential to *cause a disruption in our supply chain and may adversely impact economic conditions*."
- "[O]ur business is dependent upon our ability to identify and respond to changes in customer preferences .... Our failure to identify and react

---

[5]    Defendants have prepared two appendices reflecting: (1) the alleged misstatements and their bases for dismissal (Ex. 7, App'x A); and (2) relevant cautionary language (Ex. 8, App'x B). MTD Order at 5 (relying on Torrid's appendices).

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

appropriately ... could lead to ... *excess or insufficient amounts of inventory, markdowns and write-offs*."

- "While we believe we have a flexible supply chain, we often enter into agreements for the manufacture and purchase of merchandise well ahead of the season in which that merchandise will be sold. Therefore, *we are vulnerable to changes in consumer preference and demand*."

- "*Inventory levels for certain merchandise styles may exceed planned levels, leading to higher markdowns* ... [I]f we underestimate consumer demand for our merchandise, or if our manufacturers fail to supply quality products in a timely manner, *we may experience inventory shortages*."

- "The extent to which the COVID-19 pandemic impacts us will depend on future developments, including *the duration, spread and severity of the pandemic, the extent of additional outbreaks*, … *all of which are highly uncertain and difficult to accurately predict*."

Ex. 1 at 13, 21–23, 28, 29–31.

The Registration Statement went beyond disclosures of potential risks. Torrid also disclosed that its "operations and financial performance *have been affected by*, and may continue to be affected by, *the COVID-19-pandemic*." Ex. 1 at 13, 21. Similarly, Torrid disclosed that the "COVID-19 pandemic has caused general business disruption worldwide," and that "the operations of our suppliers and manufacturers and behaviors of customers have ... been altered." *Id.* at 21, 62. Further, Torrid disclosed that "our business operations, including net sales, *were substantially affected by COVID-19* and there is continued uncertainty regarding the manner and timing in which we can return some or all of our business to more normal business operations." *Id.* at F-15; *see also id.* at F-58.

## E.    Torrid Disclosed Its Fluctuating Inventory and Inventory In-Transit.

Torrid's fiscal year ends at the end of January, with fiscal quarters thereafter. *See* Ex. 1 at F-7 (fiscal year "ends on the Saturday nearest to January 31"). Torrid went public on July 1, 2021, in the middle of Torrid's fiscal second quarter. SAC ¶¶4, 50; Ex. 2 (Q2 2021 10-Q) (quarter ending July 31, 2021).

6

The Registration Statement disclosed three periods of data reflecting Torrid's inventory and inventory in-transit, or "inventory on its way to Torrid from suppliers." SAC ¶50. Such figures were reported as of February 1, 2020, as of January 30, 2021 (end of fiscal year 2020), and as of May 1, 2021 (end of Q1 2021), the quarter immediately preceding IPO. Ex. 1 at F-10, F-29, F-53, F-61. Consistent with Torrid's investor warnings and the reality that fluctuating inventory is "part of everyday life" (MTD Order at 14), the figures Torrid disclosed fluctuated over time:

|  | Feb. 1, 2020 | Jan. 30, 2021 | May 1, 2021 |
|---|---|---|---|
| Inventory | 119,705 | 105,843 | 111,929 |
| Inventory In-Transit | 11,756 | 21,749 | 18,042 |
| Percentage of Inventory In-Transit | 8.9% | 17% | 13.9% |

The SAC claims that Torrid's supply chain issues were revealed during a Q2 2021 earnings call, held on September 8, 2021. SAC ¶¶52–53; Ex. 3 (Q2 2021 Call). Torrid's Q2 2021 results reflected data for the fiscal quarter ending July 31, 2021, not available as of the July 1 IPO.[6] Plaintiffs claim that the Q2 2021 results confirmed that shipping delays and supply chain "problems were wreaking havoc on Torrid's financial performance." SAC ¶53. But the data contradicts that claim. The SAC alleges that Torrid's percentage of inventory in-transit increased by just 2% as of July 31, 2021, and by just over 1% as of the July 1 IPO, far less fluctuation than before the

---

[6]    Plaintiffs include a chart of Torrid's "Percentage of Inventory In-Transit" on certain dates. SAC ¶54. Only the first two dates (January 30 and May 1, 2021) predated the July 1, 2021 IPO. *Id.* ¶4. This data was disclosed in the Registration Statement. The latter two dates (July 31 and October 30, 2021) postdated the IPO and were timely reported in Torrid's quarterly SEC filings. In calculating the "percentage of inventory in-transit," Plaintiffs use a "total inventory" figure representing the sum of inventory and inventory in-transit. *Id.* ¶50. While Defendants use the same convention here for consistency, Defendants note that the "Inventory" figures in Torrid's SEC filings already include inventory in-transit and thus reflect total inventory.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

IPO. *Id.* ¶54. Moreover, as Plaintiffs admitted in the FAC (*see* FAC ¶71), Torrid's Q2 2021 results outperformed Torrid's pre-IPO results across the board:

|  | Q1 2021 (*Pre*-IPO)[7] | Q2 2021 (*Post*-IPO)[8] |
|---|---|---|
| **Inventory** | 111,929 | 110,330 |
| **Revenue** | 325,747 | **332,870** |
| **Gross Profit** | 144,932 | **149,720** |
| **Gross Margin** | 44.5% | **45%** |
| **Net Income** | 12,925 | **38,787** |
| **EBITDA** | 75,711 | **86,516** |

Indeed, Torrid's stock price ***increased*** after the September 8, 2021 disclosure and surged for days thereafter. Ex. 4 (Stock Price).[9] Torrid's stock price closed at $18.46 before this announcement, increased to $24.44 the next day, and traded above $18.46 until September 17, 2021. *Id.*

## III.    LEGAL STANDARD

"[P]rinciples used to determine whether a statement is false or misleading are largely interchangeable across" claims under the Exchange Act and Securities Act. MTD Order at 6. Here, Plaintiffs must allege their Securities Act claims with particularity under Rule 9(b) because the SAC "sounds in fraud." *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009). While the SAC alleges only Securities Act claims, it maintains that the misstatements reflect a "unified course of

---

[7]    Ex. 1 at 18, 19, F-53, F-54; FAC ¶71.

[8]    Ex. 2 at 5, 6, 30; FAC ¶71.

[9]    Torrid's Q2 2021 results were published, and the ensuing earnings call was held, after the close of trading hours on September 8, 2021. Ex. 5 (Q2 2021 10-Q posted at 4:17p ET, after market close at 4:00p ET); Ex. 6 (Q2 2021 earnings call held at 4:30p ET). The timestamps on the SEC's website are in Eastern Time as described at p. 10 of the Edgar Public Dissemination Service Technical Specifications, available at https://www.sec.gov/files/edgar/pds_dissemination_spec.pdf.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

fraudulent conduct." *Katz v. China Centy. Dragon, Media, Inc.*, 2011 WL 6047093, at
*2 (C.D. Cal. Nov. 30, 2011). Plaintiffs allege that Torrid "knew about the shipment
delays before the IPO" and, therefore, knowingly made the alleged misstatements.
SAC ¶¶50–55. Plaintiffs also allege that Torrid's inventory management system had
been "broken" since 2017, so the Company had known for years about its
deficiencies. *Id.* ¶¶56–62. Since Plaintiffs allege knowing misrepresentations and
concealment, "[t]he fact that Plaintiffs disclaim that they are pleading fraud is
irrelevant, because the only actions of Defendants that Plaintiffs rely on in their
Section 11 claim are those that sound in fraud." *Katz*, 2011 WL 6047093, at *4; *see
also In re Harmonic Inc. Secs. Litig.*, 163 F. Supp. 2d 1079, 1088–89 (N.D. Cal.
2001).

In short, Plaintiffs previously alleged a "unified course of fraudulent conduct"
(MTD Order at 6) and still do. The Court should reject Plaintiffs' "attempt[] to
circumvent Rule 9(b)'s heightened pleading standards by disclaiming fraud from
[their] previously dismissed fraud allegations." *Williams v. TouchTunes Music Corp.*,
2014 WL 12626340, at *4 (C.D. Cal. June 13, 2014), *aff'd*, 639 F. App'x 504 (9th Cir.
2016); *see also In re Anchor Gaming Sec. Litig.*, 33 F. Supp. 2d 889, 892 (D. Nev.
1999) ("While Plaintiffs' [complaint] drops the Section 10(b) claims and avoids using
the words 'fraud' or 'fraudulent,' the gravamen of the Complaint clearly alleges
fraudulent concealment or misrepresentation.").

## IV.    ARGUMENT

### A.    Plaintiffs Have Not Alleged Section 11 or 12(a)(2) Claims.

#### 1.    Plaintiffs Plead No Actionable Misstatements or Omissions.

To establish a claim under Section 11, a plaintiff must allege that (1) the
registration statement contains an omission or misrepresentation, and (2) that the
omission or misrepresentation was material—meaning, it would have misled a

9

1    reasonable investor. *Rubke*, 551 F.3d at 1161.[10] Plaintiffs' claims fail under either

2    Rule 9(b) or Rule 8.

3                    **a.    Torrid Had No Duty to Disclose Real-Time Information.**

4           Plaintiffs admit that the Registration Statement disclosed accurate data through

5    Q1 2021 (i.e., May 1, 2021), the quarter immediately preceding the IPO. SAC ¶50.

6    Nonetheless, Plaintiffs claim that the securities laws required Torrid to disclose real-

7    time updates through the July 1 IPO concerning shipping delays that allegedly began

8    sometime in May 2021—i.e., during the IPO's ongoing quarter. *Id.* ¶¶49, 50. But the

9    "[s]ecurities laws ... do not require real-time business updates or complete disclosure

10   of all material information whenever a company speaks on a particular topic," and

11   "companies do not have an obligation to offer an instantaneous update of every

12   internal development." *Twitter*, 29 F.4th at 615, 620. This is true even if the

13   information is material to investors. "Section 11 does not require the disclosure of all

14   information a potential investor might take into account when making his decision."

15   *Rubke*, 551 F.3d at 1163. Rather, "omissions are actionable only if a defendant has a

16   duty to disclose information and fails to do so." *In re Restoration Robotics, Inc. Secs.*

17   *Litig.*, 417 F. Supp. 3d 1242, 1254 (N.D. Cal. 2019).

18          Plaintiffs cite no duty here, and there is none. Companies are not required to

19   make continuous disclosures about shipping delays, even material ones. *See Twitter*,

20   29 F.4th at 620. And for good reason. Because fluctuating shipments and inventory

21   are "inevitable" and "part of everyday life" (MTD Order at 14), continuous updates

22   "would inject instability into the securities market, as stocks may wildly gyrate based

23   on even fleeting developments." *Twitter*, 29 F.4th at 620.

24

25   ---

     [10]    "Sections 11 and 12(a)(2) [have] … similar elements," and the "'misstatement
26   or omission' requirement under Section 12(a)(2) is materially identical to that under
     Section 11." *Crews v. Rivian Auto., Inc.,* 2023 WL 4361098, at *16 (C.D. Cal. July 3,
27   2023).

28

                                              10

     **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
     DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

This rule is especially salient here because Torrid's July 1 IPO occurred in the middle of a fiscal quarter. Plaintiffs' claims are based on a comparison between Torrid's Q1 2021 (pre-IPO) and Q2 2021 (post-IPO) financial results. SAC ¶¶50–55. But the Q2 2021 results, running through the end of July 2021, were not available as of the July 1 IPO. Public companies "have at least 40 days to file Forms 10-Q following the end of a fiscal quarter, and generally 'need time to audit [financial] data before including it in any public materials.'" *In re Progenity, Inc. Secs. Litig.*, 2023 WL 219345, at *6 (S.D. Cal. Jan. 13, 2023).

"A company ... has no general obligation to disclose the result of a quarter in progress." *Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017). Courts routinely dismiss securities complaints on this basis. *See Shurkin v. Golden State Vintners, Inc.*, 303 F. App'x 431, 433 (9th Cir. 2008) (rejecting securities claim where "[s]econd quarter figures were not available at the time GSV issued the proxy statement"); *Golubowski v. Robinhood Markets, Inc.*, 2023 WL 1927616, at *5 (N.D. Cal. Feb. 10, 2023) (no duty to disclose because "data [was] not so extraordinary as to mandate specific out-of-quarter disclosure"); *In re Progenity, Inc.*, 2021 WL 3929708, at *6 (S.D. Cal. Sept. 1, 2021) ("Defendants were [thus] under no obligation to audit and report their second quarter 2020 financial results prior to the end of that fiscal quarter."); *Klein v. Maverick Tube Corp.*, 790 F. Supp. 68, 70 (S.D.N.Y. 1991), *aff'd*, 969 F.2d 1041 (2d Cir. 1992) (dismissing Section 11 claim where the plaintiff "alleges that because [the company] announced lower earnings on April 15, 1991, it should have disclosed these results one month earlier").

To require interim reporting here, Plaintiffs would need to allege that—at the time of the IPO—there was "an ***extreme***" or "***extraordinary***" deviation from past performance. *Noah Educ. Holdings*, 2010 WL 1372709, at *7; *Golubowski*, 2023 WL 1927616, at *5. But Plaintiffs have alleged nothing close. As an initial matter, the SAC assumes without basis that because in-transit inventory increased between May 1

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

(Q1) and July 31, 2021 (Q2), it must also have increased as of the July 1 IPO. SAC
¶54 (drawing a straight line between May 1 and July 31, 2021). But it is entirely
plausible that this increase occurred in the final month of the quarter, **after** the July 1
IPO.

Regardless, the percentage of in-transit inventory before the IPO fluctuated
between roughly 9% and 17%, was within that range (16%) at quarter-end following
the IPO, and had only risen by 2% (13.9% to 16%) from the prior quarter. SAC ¶54;
*supra*, § II.E. The fluctuation before the IPO (9% to 17%) was larger than the
fluctuation in the quarter spanning the IPO (13.9% to 16%). *Id.* Plus, Torrid's
financial results improved across the board immediately after the IPO, including
increased revenue, gross profit, gross margin, net income, and EBITDA, sending the
stock price soaring. *See supra*, § II.E. Plaintiffs therefore cannot state a claim under
Section 11 or 12. *Golubowski v. Robinhood Markets, Inc.*, 2024 WL 269507, at *9
(N.D. Cal. Jan. 24, 2024) (granting motion to dismiss where "the omitted data that
Plaintiffs point to does not show a persistent decline in multiple financial metrics").

### b.    The Supply Chain Statements Are Not Actionable or Misleading.

Even were Plaintiffs able to establish a duty to disclose, they still would fail to
plead actionable claims. Statements 1 through 5 are general statements about Torrid's
business model, including its "vertical sourcing model" and "speed model," and
Torrid's "flexibility" and ability to "react" and "respond quickly." SAC ¶¶64–66.
These statements were previously alleged in the FAC and were among the statements
dismissed by the Court. FAC ¶77 (Statements 1 & 2); *Id.* ¶¶56, 159 (Statement 3); *Id.*
¶¶60, 87 (Statement 4); *Id.* ¶¶59, 80 (Statement 5). Plaintiffs plucked these statements
from sections of the Registration Statement describing Torrid's data-driven
merchandising model and response to the pandemic. *See* Ex. 1 at 3, 10, 12, 85, 96. As
the Court previously held, none of these statements are actionable or false. MTD
Order at 8–11, 15–16.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

"[V]ague statements of optimism ... are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." MTD Order at 7. Among the statements that the Court dismissed as non-actionable puffery were statements about Torrid's merchandising model, including that it was "highly responsive" and enabled Torrid to engage in "effective in-season inventory management" plus "quickly read and react to customers' preferences." *Id.* at 8. Statements about Torrid's "resiliency" during the pandemic, its "agile response," and its "powerful and nimble operating model," were also dismissed as puffery. *Id.* at 15.

Statements 1 through 5 are classic examples of puffery. Torrid's "flexibility" to "react" and "respond quickly," use a "speed model," and "accelerate product replenishment cycles," are the kinds of vague statements routinely dismissed in securities cases. *See, e.g.*, *Macomb Cnty. Emps. Ret. Sys.*, 39 F.4th 1092, 1099 (9th Cir. 2022) ("really good dynamics"); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) ("comprehensive services," "quality educational content"); *Guangyi Xu v. ChinaCache Int'l*, 2017 WL 114401, at *9 (C.D. Cal. Jan. 9, 2017) ("higher scalability, flexibility and stability"); *Charter Twp. of Clinton Police & Fire Ret. Sys. v. LPL Fin. Holdings Inc.*, 2017 WL 3582973, at *7 (S.D. Cal. Aug. 18, 2017) ("buyback plan was … built with having the flexibility to be dynamic"); *LeapFrog Enters., Inc. Secs. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) ("[we are] strengthening our operations group, supply-chain management system and warehousing and logistics functions"); *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1213 (M.D. Fla. 2014) (we "respond rapidly to changing trends" and "focus on quickly adapting to the latest trends to provide the right merchandise").

To the extent any of these statements are actionable, Plaintiffs do not allege facts showing they are false. Plaintiffs allege that Torrid was affected by pandemic-related shipping and supply chain issues (SAC ¶68), but none of the challenged

---

13

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

1 statements claim otherwise. Plaintiffs identify no representations that Torrid was
2 pandemic-proof and immune from shipping delays. As the Court found previously,
3 Torrid's statements "simply described [its] efforts to 'minimize' [supply chain] risks"
4 and "never promised that Torrid's approach would entirely eliminate inventory risk or
5 render the company immune to supply chain issues." MTD Order at 10.

6 Torrid's statements described features of its "vertical sourcing model," "speed
7 model," use of "robust customer data," and "targeted investments and changes" in
8 response to the pandemic. SAC ¶64. Plaintiffs allege no facts showing that Torrid
9 abandoned or lied about implementing these initiatives. That Torrid's business model
10 may not have worked perfectly does not render fraudulent Torrid's statements about
11 that model. *See* MTD Order at 10–11 ("Plaintiffs have not plausibly pleaded that
12 Torrid abandoned its data-driven model aimed at minimizing inventory risk simply
13 because it later experienced an uptick in that risk."); *see also Sylebra Cap. Partners*
14 *Master Fund Ltd.*, 2023 WL 3549506, at *9 (C.D. Cal. May 9, 2023) ("Everbridge
15 later encountering difficulty in utilizing acquired companies and technologies does not
16 transform statements of corporate optimism into securities fraud").[11]

17 Nor can Plaintiffs show that investors were deceived. "[A] reasonable investor
18 'reads each statement ... in light of all its surrounding text, including hedges,
19 disclaimers, and apparently conflicting information," and "also takes into account the
20 customs and practices of the relevant industry." MTD Order at 7 (quoting *Omnicare,*
21 *Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)).
22 Where events are already known to investors, they "cannot support a securities claim."
23 *Robinhood*, 2024 WL 269507, at *15 (granting motion to dismiss where "a reasonable

---

25 [11]    Plaintiffs' reliance on Harper's December 8, 2022 statement is flawed for the
26 same reasons discussed in the MTD Order. The statement does not say what
"discipline" had been "lost" or when the Company "lost" it. SAC ¶62 "[T]he full
27 quotation cannot bear the meaning with which Plaintiffs attempt to imbue it." MTD
Order at 10.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

investor would have been aware of the meme stock and Dogecoin events in early 2021"). Here, Torrid's investors know that delayed shipments and supply chain disruptions are "inevitable for any online retailer," particularly during a global pandemic. MTD Order at 14–15.[12] The Registration Statement contained detailed disclosures of the pandemic's impact on Torrid's sales and supply chain, the potential for further disruptions, Torrid's fluctuating inventory and in-transit inventory, and Torrid's contract terms with manufacturers, negating Plaintiffs' disclosure claims. *Compare supra*, § II.D. *with* SAC ¶68; *see also Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *9 (C.D. Cal. Apr. 17, 2009) (dismissing Section 11 claim where risk disclosures warned that company may inaccurately forecast inventory needs); *In re Progenity, Inc. Secs. Litig.*, 2023 WL 219345, at *9 (S.D. Cal. Jan. 13, 2023) (dismissing Section 11 claim where registration statement "mention[ed] … challenges they faced because of the pandemic"); *Robinhood*, 2024 WL 269507, at *17 (dismissing Section 11 claim where defendant "explained that there is volatility in the cryptocurrency market and in the price of Dogecoin"). Indeed, Plaintiffs admit that Torrid's customers were well aware of these issues before the IPO. SAC ¶43.

"A reasonable investor familiar with industry practice would not read Torrid's disclosure[s] in the manner Plaintiffs contend—making the statement[s] not misleading as a matter of law." MTD Order at 14–15.

### c.    Torrid's Risk Disclosures Are Not Actionable or Misleading.

Statements 6 through 8 are risk disclosures warning investors about fluctuating inventory, shipping times, and the pandemic's effect on Torrid's supply chain. SAC ¶¶69–72. Plaintiffs previously based their claims on Statement 6 in the FAC, and Statements 7 and 8 are substantially similar to Statement 6. FAC ¶81 (Statement 6).

---

[12]    Such issues were widespread public knowledge before the IPO. N.Y. Times, *I've Never Seen Anything Like This: Chaos Strikes Global Shipping* (Mar. 6, 2021), https://www.nytimes.com/2021/03/06/business/global-shipping.html.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

1   These risk disclosures fail for the same reasons explained in the MTD Order. MTD

2   Order at 12–15.

3       "[N]ot all risk disclosures can fairly be read by a reasonable investor to imply

4   that none of the[] risks, at least to some extent, would affect [the business's] most

5   recent fiscal quarter." MTD Order at 13 (quoting *Noah Educ.*, 2010 WL 1372709, at

6   *7–8). "[A] risk disclosure is not misleading as a matter of law where it concerns a

7   risk that is inherent in running a business, always present to some extent, and the

8   significance of which is not a yes-or-no question of occurrence but one of degree."

9   MTD Order at 13. In particular, Torrid's risk disclosures concerning inventory,

10   delayed shipments, and supply chain disruptions are not actionable because "[a]

11   reasonable investor would not read [the] risk disclosure[s] ... to imply that Torrid, in

12   the leadup to the IPO, had categorically experienced neither disruptions nor delayed

13   shipments." *Id.* at 14.

14       Statements 6 through 8 are therefore not actionable and should be dismissed.

15   *See id.*; *see also Noah Educ.*, 2010 WL at 1372709, at *7 (risk disclosure could not

16   "reasonably be read to imply that [the company's] cost of raw materials had not

17   increased, to some extent," before IPO); *Chapman v. Mueller Water Prods., Inc.*, 466

18   F. Supp. 3d 382, 406 (S.D.N.Y. 2020) ("It is evident and would have been evident to

19   the ordinary investor that Mueller was not warranting that every one of its newer

20   technologies was defect-free or would not incur a warranty charge.").

21       Further, the Registration Statement expressly disclosed fluctuating inventory,

22   fluctuating in-transit inventory, and that Torrid and its manufacturers "***were***

23   ***substantially affected*** by COVID-19." Ex. 1 at 21, 62, F-15, F-58. "Only by

24   discarding common sense and ignoring the multitude of explicit and on-point

25   warnings … could investors have been misled." *Parnes v. Gateway 2000, Inc.*, 122

26   F.3d 539, 549 (8th Cir. 1997).

27

28

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

### d. Plaintiffs' Regulation S-K Claim Also Fails.

As in the FAC, Plaintiffs "repackage [their misrepresentation claim] as a Regulation S-K violation." MTD Order at 11 n.4; SAC ¶¶74–82. The claim fails for all the reasons discussed above. MTD Order at 11 n.4. It also fails for additional reasons.

*First*, given the Registration Statement's ample warnings and factual disclosures, Plaintiffs cannot plausibly allege that the Registration Statement violated Regulation S-K. *See Robinhood*, 2024 WL 269507, at *16–18 (rejecting Item 105 claim where defendant disclosed alleged issues and risks); *In re Pivotal Secs. Litig.*, 2020 WL 4193384, at *8 (N.D. Cal. July 21, 2020) ("Given these risk disclosures, Plaintiffs have not plausibly alleged that Pivotal violated Item 105"); *Belodoff*, 2009 WL 1293690, at *12 (holding that inventory disclosures "cannot form the basis for a Regulation S-K violation or the nondisclosure of an adverse trend").

*Second*, Plaintiffs fail to allege any persistent trend that existed prior to the IPO. Item 303 requires that Plaintiffs plausibly allege a "persistent condition[]." *In re Restoration Robotics*, 417 F. Supp. 3d at 1263. Adverse conditions must persist for more than just a few months to constitute a trend under Item 303. *See In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *44 (S.D.N.Y. July 31, 2023) ("[E]vents occurring within a few months" not enough) (collecting cases); *Golubowski*, 2023 WL 1927616, at *8 (no allegations that three-month decline "reflect[s] persistent conditions of Robinhood's business"); *Nguyen*, 234 F. Supp. 3d at 546 ("events occurring within a two month period of time" not enough); *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *10 (S.D.N.Y. Jan. 14, 2010) ("As a matter of law, a two-month period of time" is insufficient); *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015) ("The two- and five-month periods preceding defendants' public filings were insufficient").

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

Here, Plaintiffs' claims at most implicate two months (and potentially just one month). They allege "shipment delays beginning [sometime] in May 2021," just weeks before the July 1, 2021 IPO. SAC ¶82. These fluctuations were far from persistent. Torrid's inventory and in-transit inventory fluctuated significantly in the quarters before the IPO. As the Court found in the MTD Order, these fluctuations "are a part of everyday life for businesses." MTD Order at 14. Plaintiffs admit that such variations were especially unpredictable during the pandemic. SAC ¶¶40, 45, 87. Because one or two months of alleged shipping delays in the midst of a pandemic are insufficient to establish a persistent trend, Plaintiffs' claim fails.

**Third**, Plaintiffs allege no facts showing that, as of July 1, 2021, shipping delays were "reasonably likely" to continue and have a "material ... impact on net sales or revenues or income" moving forward—much less that any Defendant knew it. *See* 17 C.F.R. § 229.303(b)(2)(ii); *see, e.g., In re Talis Biomedical Secs. Litig.*, 2022 WL 17551984, at *21 (N.D. Cal. Dec. 9, 2022) (dismissing claims where plaintiffs failed to allege facts showing defendants' knowledge). As explained, Plaintiffs admit that pre-IPO shipping delays resulted from the unexpected emergence of the Delta variant. SAC ¶40. Plaintiffs do not allege facts showing that Defendants knew this temporary disruption would continue after the IPO.

Nor do they allege facts showing that Defendants knew the temporary shipping delays would materially affect Torrid's post-IPO performance. While Plaintiffs claim these fluctuations "were wreaking havoc on Torrid's financial performance" (SAC ¶53), in fact Torrid's performance in the quarter of the IPO (Q2 2021) improved across the board. *See supra*, § II.E. Plaintiffs' claim therefore fails as a matter of law. *In re Dropbox Secs. Litig.*, 2020 WL 6161502, at *8 (N.D. Cal. Oct. 21, 2020) (plaintiffs failed to allege how "waning user conversion rate had a materially adverse impact on the company's revenue," and "Dropbox's revenue continued to grow after its IPO"); *Welgus v. TriNet Grp.*, Inc., 2017 WL 6466264, at *24 (N.D. Cal. Dec. 18,

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) ("This one-off allegation does not support an inference that the 'adverse trends' were either known to Defendants or could have reasonably been expected to have a material impact on TriNet's net sales, revenues or income.").

Plaintiffs allege declining performance in later quarters (SAC ¶¶89–91), but this "does not speak to what the Company knew or should have known at the time of the Offering." *Holbrook v. Trivago*, 2019 WL 948809, at \*13 (S.D.N.Y. Feb. 26, 2019). "Regulation S-K [] governs the disclosure of known historic trends, [and] does not provide a basis of liability where a corporation fails to 'disclose' the future." *Terenzini v. GoodRx Holdings, Inc.*, 2022 WL 2189592, at \*4 (C.D. Cal. June 9, 2022).

### 2.    Plaintiffs' Shipping-Delay Claim Is Time-Barred.

Plaintiffs' claims are largely based on allegedly undisclosed shipping delays. SAC ¶¶50–55, 68(a)–(g). Plaintiffs allege that these delays were revealed to the market on September 8, 2021. *Id.* ¶¶52–53. Because Plaintiffs did not file Securities Act claims until—at the earliest—November 16, 2022, more than one year after the SAC alleges that a reasonably diligent plaintiff should have discovered the claims, they are untimely under the Securities Act's one-year statute of limitations. *See* 15 U.S.C. § 77m.

The one-year period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010). Here, Plaintiffs admit that they did or should have discovered their shipping delay claims as of September 8, 2021, when "defendant Wehlitz, the Company's CFO, confirmed that delays associated with global supply chain challenges, resulted in lower inventory levels" and that Torrid "expect[ed] continued shipping delays or congestion or manufacturing disruption." SAC ¶52. According to the SAC, "Wehlitz's remarks ... confirmed what Torrid knew at the time of the IPO, but investors did not:

---

19

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

Torrid's previously improving supply chain was getting worse, the Company was experiencing heightened delays in shipments, and these problems were wreaking havoc on Torrid's financial performance." *Id.* ¶53.

This stark admission confirms that Plaintiffs' shipping-delay claims are time-barred. As of September 8, 2021, a "'reasonably diligent' plaintiff could ... have discovered the facts constituting the alleged Securities Act violation ... , and the statute of limitations began to run on that date." *Barnes*, 2022 WL 822191, at *1. But Plaintiffs did not file Securities Act claims until more than a year later. Courts routinely dismiss Securities Act claims where, as here, the complaint itself shows they are untimely. *Id.* (affirming dismissal where "the purportedly concealed risks ... materialized" more than one year before filing); *see also Lowthorp v. Mesa Air Grp. Inc.*, 2021 WL 3089118, at *7 (D. Ariz. July 22, 2021) (dismissing Securities Act claim as time-barred); *In re Dropbox Secs. Litig.*, 2020 WL 6161502, at *11 (same); *In re YogaWorks, Inc. Secs. Litig.*, 2020 WL 2549290, at *5 (C.D. Cal. Apr. 23, 2020) (same); *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *12 (S.D. Cal. Sept. 25, 2019) (same); *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *22 (N.D. Cal. Jan. 17, 2017) (same); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1054 (N.D. Cal. 2016) (same); *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 916 (N.D. Cal. 2015) (same).

### 3.    Plaintiffs' Allegations Establish Negative Causation.

Under Section 11, the "negative causation" defense applies where "the depreciation of the value of [the security] resulted from factors other than the alleged false and misleading statements." *Cai v. Switch, Inc.*, 2020 WL 3893246, at *4 (D. Nev. July 10, 2020); *see* 15 U.S.C. § 77k(e). Where the face of the complaint or judicially noticeable facts demonstrate negative causation, dismissal on the pleadings is appropriate. *Switch*, 2020 WL 3893246, at *4 (granting judgment on the pleadings); *see also Hoang*, 2023 WL 8879263, at *16 (granting defendants' motion to dismiss on

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

negative causation); *In re Shoretel, Inc., Secs. Litig.*, 2009 WL 248326, at \*5 (N.D. Cal. Feb. 2, 2009) (rejecting contention that negative causation is premature at the motion to dismiss stage); *In re Merrill Lynch & Co., Rsch. Reports Secs. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. Oct. 29, 2003) (granting motion to dismiss on negative causation); *In re Velti PLC Secs. Litig.*, 2015 WL 5736589, at \*28 (N.D. Cal. Oct. 1, 2015) (same).

Plaintiffs' first alleged corrective disclosure occurred on September 8, 2021, when Torrid disclosed shipping delays. SAC ¶¶52–53. Notably, Plaintiffs do not allege that the disclosure caused a drop in Torrid's stock price. In fact, Torrid's stock price ***increased*** after the September 8th disclosure and surged for several days thereafter. Ex. 4. Consequently, the September 8th disclosure cannot support Plaintiffs' claims. *See Hoang*, 2023 WL 8879263, at \*16 (finding negative causation where "after the one corrective disclosure made on March 8, 2021, the stock price actually increased and stayed at a higher level" for days).

In apparent recognition of these flaws, Plaintiffs attempt to sweep in claims concerning Torrid's inventory management system. SAC ¶¶56–62, 68(h). They allege that the truth was revealed on December 8, 2022, when Torrid disclosed that, "'over the pandemic time,' the Company had ceased using the core disciplines that Torrid had previously implemented." SAC ¶62. But since the December 2022 disclosure occurred after this Section 11 action was filed in November 2022, Plaintiffs' inventory management claim is also barred.

Section 11 sets an outer limit on damages, measured by the difference between the amount paid for the security and the price at "the time such suit was brought." 15 U.S.C. § 77k(e).[13] "[W]hether the price of the security rises or falls after the date of

---

[13]    Damages are measured as of "the first-filed complaint, rather than [] a later-filed amended or consolidated complaint." *In re Barclays Bank PLC Secs. Litig.*, 2016 WL 3235290, at \*5 (S.D.N.Y. June 9, 2016); *Alpern v. Utilicorp United, Inc.*, 84 F.3d

21

suit[,] the subsequent rise or fall is not part of the measure of damages." *In re Countrywide Fin. Corp. Secs. Litig.*, 588 F. Supp. 2d 1132, 1167 (C.D. Cal. 2008); *see also In re Fortune Sys. Secs. Litig.*, 680 F. Supp. 1360, 1364, 1370 (N.D. Cal. 1987).

Because post-filing stock price movement is excluded from Section 11 damages, alleged corrective disclosures occurring after the first-filed complaint are barred as a matter of law. *See In re Merrill Lynch & Co. Rsch. Reports Secs. Litig.*, 289 F. Supp. 2d at 437; *Switch*, 2020 WL 3893246, at *4. Here, Securities Act claims were filed in November 2022. ECF 1. Negative causation therefore bars Plaintiffs from relying on the December 8, 2022 disclosure (SAC ¶62) and the December 2022 stock price (*id.* ¶8).

In sum, Plaintiffs' alleged disclosures (a) increased the price of Torrid's stock or (b) are precluded because they occurred after the first-filed complaint. Defendants are therefore entitled to judgment on negative causation.

## B.    Plaintiffs' Section 15 Claim Also Fails.

Plaintiffs' Section 15 claim must be dismissed for failure to allege any primary violation. *In re Velti PLC Secs. Litig.*, 2015 WL 5736589, at *31.

## V.    CONCLUSION

Defendants respectfully submit that the SAC should be dismissed. Because Plaintiffs already had two prior opportunities to amend, and further amendment would prove futile, Defendants request that the Court dismiss the case with prejudice.

---

1525, 1544 (8th Cir. 1996); *Pierce v. Morris*, 2006 WL 2370343, at *4 (N.D. Tex. Aug. 16, 2006).

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

DATED: January 26, 2024

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: */s/ Austin Norris*
Mark Holscher (SBN 139582)
Austin Norris (SBN 284603)
KIRKLAND AND ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:  (310) 552-4200
Facsimile:  (310) 552-5900
Email: mark.holscher@kirkland.com
Email: austin.norris@kirkland.com

Matthew Solum (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4688
Facsimile: (212) 446-4900
Email: matthew.solum@kirkland.com

*Attorneys for the Torrid, Sycamore, and Individual Defendants*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

DATED: January 26, 2024          Respectfully submitted,

ORRICK, HERRINGTON &
SUTCLIFFE LLP

By: */s/ Alexander K. Talarides*
James N. Kramer (SBN 154709)
Alexander K. Talarides (SBN 268068)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:   (415) 773-5700
Facsimile:    (415) 773-5759
Email: jkramer@orrick.com
Email: atalarides@orrick.com

Darrell S. Cafasso (*Pro Hac Vice*)
Jennifer Keighley (*Pro Hac Vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 506-5000
Facsimile:    (212) 506-5151
Email: dcafasso@orrick.com
Email: jkeighley@orrick.com

*Attorneys for the Underwriter Defendants*

24

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

## **ATTESTATION OF COMPLIANCE**

Pursuant to L.R. 5-4.3.4, the filer, Austin Norris, attests that all other signatories listed, and on whose behalf the filing is being submitted, concur in the filing's content and have authorized the filing.

DATED:  January 26, 2024                    By: */s/ Austin Norris*
                                            Austin Norris

                                            *Attorney for the Torrid, Sycamore, and
                                            Individual Defendants*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**

## CERTIFICATE OF COMPLIANCE

I hereby attest that this brief contains 6,994 words, which complies with the word limit of L.R. 11-6.1.


DATED: January 26, 2024                    By: */s/ Austin Norris*
                                               Austin Norris

                                               *Attorney for the Torrid, Sycamore, and Individual Defendants*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**