ROBBINS GELLER RUDMAN
  & DOWD LLP
LAURIE L. LARGENT (153493)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
llargent@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WASWICK, on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>    vs.<br><br>TORRID HOLDINGS INC., et al.,<br><br>                  Defendants. | Case No. 2:22-cv-08375-JLS(ASx)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>DATE: May 10, 2024<br>TIME: 10:30 a.m.<br>CTRM: 8A<br>JUDGE: Hon. Josephine L. Stanton |

4869-3043-6521.v1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF FACTS......................................... 1

II.  ARGUMENT ............................................................................................ 2

    A.   Legal Standards................................................................................ 2

    B.   Rule 8 Pleading Standards Apply .................................................... 3

    C.   Plaintiffs Plead Material Misstatements or Omissions Under §11 ................................................................................................... 5

    D.   Torrid's Risk Factors Are Also Actionable ...................................... 12

    E.   Defendants' Violation of Items 303 and 105 .................................... 13

    F.   Defendants' Other Defenses Fail ...................................................... 16

        1.   Defendants' Statute of Limitations Defense Fails.................... 16

        2.   Defendants' Negative Causation Defense Fails ....................... 18

    G.   Plaintiffs Plead Claims Under §§12(a)(2) and 15............................... 20

III.  CONCLUSION ........................................................................................ 20

- i -

4869-3043-6521.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alameda v. Nuveen Mun. High Inc. Opportunity Fund*,
2009 WL 1424529 (N.D. Cal. May 20, 2009) ...................................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 2, 3, 5

*Barnes v. Edison Int'l*,
2022 WL 822191 (9th Cir. Mar. 18, 2022) ........................................................ 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 3, 5

*Belodoff v. Netlist, Inc.*,
2009 WL 1293690 (C.D. Cal. Apr. 17, 2009) ...................................................... 9

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ........................................................................ 6, 12

*Booth v. Strategic Realty Tr., Inc.*,
2014 WL 3749759 (N.D. Cal. July 29, 2014) ............................................... 16, 17

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ....................................................... 3

*Cali v. Switch, Inc.*,
2020 WL 3893246 (D. Nev. July 10, 2023) ........................................................ 20

*Casella v. Webb*,
883 F.2d 805 (9th Cir. 1989) ............................................................................... 8

*Chen v. Missfresh Ltd.*,
2023 WL 7289750 (S.D.N.Y. Nov. 6, 2023) ...................................................... 19

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010) .................................................................. 4

4869-3043-6521.v1

**Page**

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys.*
*v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ........................................................................... 3

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
527 F. Supp. 3d 1151 (N.D. Cal. 2021) ........................................................... 6

*Crews v. Rivian Auto., Inc.*,
2023 WL 4361098 (July 3, 2023) .................................................... 5, 11, 13, 20

*DeMaria v. Andersen*,
318 F.3d 170 (2d Cir. 2023) .......................................................................... 11

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ....................................................................... 20

*Franchi v. SmileDirectClub, Inc.*,
633 F. Supp. 3d 1046 (M.D. Tenn. 2022) ..................................................... 15

*FTC v. Trudeau*,
579 F.3d 754 (7th Cir. 2009) ........................................................................... 8

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) .............................................................. 5, 6, 9, 12

*Golubowski v. Robinhood Mkts., Inc*,
2024 WL 269507 (N.D. Cal. Jan. 24, 2024) .................................................... 9

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) .................................................................................. 3, 20

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) ......................................................................... 18

*Hoang v. Contextlogic, Inc.*,
2023 WL 8879263 (N.D. Cal. Dec. 22, 2023) ............................................... 20

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .............................................................................. 9

- iii -

**Page**

*In re Bare Escentuals, Inc. Sec. Litig.*,
 745 F. Supp. 2d 1052 (N.D. Cal. 2010) ............................................................. 16

*In re Blue Apron Holdings, Inc.*,
 2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) ..................................................... 14

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
 2013 WL 5206216 (S.D. Cal. Sept. 13, 2013) ..................................................... 8

*In re Charles Schwab Corp. Sec. Litig.*,
 257 F.R.D. 534 (N.D. Cal. 2009) ......................................................................... 4

*In re Countrywide Fin. Corp. Sec. Litig.*,
 588 F. Supp. 2d 1132 (C.D. Cal. 2008) ......................................................... 18, 19

*In re CPI Card Grp. Inc. Sec. Litig.*,
 2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) ....................................................... 4

*In re DDi Corp. Sec. Litig.*,
 2005 WL 3090882 (C.D. Cal. July 21, 2005) .................................................. 3, 10

*In re Dropbox Sec. Litig.*,
 2020 WL 6161502 (N.D. Cal. 2020) ................................................................... 18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
 986 F. Supp. 2d 487 (S.D.N.Y. 2013) ............................................................ 10, 15

*In re Facebook, Inc. Sec. Litig.*,
 87 F.4th 934 (9th Cir. 2023) ................................................................................. 8

*In re Harmonic Inc. Sec. Litig.*,
 163 F. Supp. 2d 1079 (N.D. Cal. 2001) ............................................................... 5

*In re Lyft Inc. Sec. Litig.*,
 484 F. Supp. 3d 758 (N.D. Cal. 2020) ........................................................... 12, 15

*In re Merrill Lynch & Co., Res. Rep. Sec. Litig.*,
 289 F. Supp. 2d 429 (S.D.N.Y. Oct. 29, 2003) ................................................... 20

- iv -

**Page**

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ............................................... 11, 12

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ......................................................................... 11

*In re Obalon Therapeutics, Inc.*,
2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ...................................................... 18

*In re Peregrine Sys., Inc. Sec. Litig.*,
2005 WL 8158819 (S.D. Cal. Jan. 20, 2005) ........................................................ 16

*In re Progenity, Inc. Sec. Litig.*,
2023 WL 219345 (S.D. Cal. Jan. 13, 2023) .......................................................... 9

*In re Shoretel Inc.*,
2009 WL 248326 (N.D. Cal. Feb. 2, 2009) .......................................................... 20

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018) ..................................... 9, 13, 19, 20

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
2022 WL 2762213 (C.D. Cal. July 13, 2022) ...................................................... 12

*In re Velti PLC Sec., Litig.*,
2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ........................................................ 20

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
712 F. Supp. 2d 958 (N.D. Cal. 2010) ................................................................ 16

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) ........................................................................... 18

*In re YogaWorks, Inc. Sec. Litig.*,
2020 WL 2549290 (C.D. Cal. Apr. 23, 2020) ...................................................... 18

*Jaeger v. Zillow Grp., Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022) ............................................................. 8

- v -

4869-3043-6521.v1

**Page**

*Johnson v. Riverside Healthcare Sys., LP*,
534 F.3d 1116 (9th Cir. 2008) ................................................................................. 3

*Karinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ............................................................ 6

*Katz v. China Century Dragon Media, Inc.*,
2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) ........................................................ 4

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005) ........................................................................... 4

*Kuhne v. Gossamer Bio, Inc.*,
2021 WL 1529934 (S.D. Cal. Apr. 19, 2021) ...................................................... 20

*Lako v. Loandepot, Inc.*,
2023 WL 444151 (C.D. Cal. Jan. 24, 2023) .................................... 3, 5, 14, 16

*Lilley v. Charren*,
936 F. Supp. 708 (N.D. Cal. 1996) ....................................................................... 16

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) ................................................................................. 13

*Lowthorp v. Mesa Air Grp. Inc.*,
2021 WL 3089118 (D. Ariz. July 22, 2021) ......................................................... 18

*Mallen v. Alphatec Holdings, Inc.*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012), *aff'd sub nom.*
*Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*,
607 F. App'x 694 (9th Cir. 2015) .......................................................................... 19

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........................................................................................... 11, 15

*McKenna v. SMART Techs. Inc.*,
2012 WL 3589655 (S.D.N.Y. Aug. 21, 2012) ...................................................... 14

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010) ............................................................................................... 16

- vi -

4869-3043-6521.v1

**Page**

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008) ...................................................................... 11

*Milman v. Box Hill Sys. Corp.*,
72 F. Supp. 2d 220 (S.D.N.Y. 1999) ......................................................... 15

*Mingbo Cai v. Switch, Inc.*,
2019 WL 3065591 (D. Nev. July 12, 2019) ................................................ 4

*Mulligan v. Impax Laby's, Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014) ........................................................... 8

*Nayani v. Lifestance Health Grp., Inc.*,
2023 WL 3260260 (S.D.N.Y. May 4, 2023) .............................................. 10

*Omnicare, Inc. v. Laborers Dist. Council Constr.*
*Indus. Pension Fund*,
575 U.S. 175 (2015) ..................................................................................... 3

*Pace v. Quintanilla*,
2015 UWL 652719 (C.D. Cal. Feb. 13, 2015) ........................................... 17

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
681 F.3d 114 (2d Cir. 20212) ................................................................ 4, 15

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ................................................................... 18

*Rafton v. Rydex Series Funds*,
2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ........................................ 5, 12, 16, 17

*Rieckborn v. Jefferies LLC*,
81 F. Supp. 3d 902 (N.D. Cal. 2015) ......................................................... 18

*Robb v. Fitbit Inc.*,
216 F. Supp. 3d 1017 (N.D. Cal. 2016) ..................................................... 18

*Safron Cap. Corp. v. Leadis Tech., Inc.*,
274 F. App'x 540 (9th Cir. 2008) ................................................................. 4

- vii -

4869-3043-6521.v1

**Page**

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) ................................................................................ 6

*Schuh v. HCA Holdings, Inc.*,
    947 F. Supp. 2d 882 (M.D. Tenn. 2013) ............................................................ 15

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011) .................................. 9

*State Treasurer of Mich. v. Countrywide Fin. Corp.*,
    2011 WL 13220150 (C.D. Cal. Aug. 22, 2011) .................................................. 18

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ............................................................................ 13

*Sundaram v. Freshworks Inc.*,
    2023 WL 6390622 (N.D. Cal. Sept. 28, 2023) ................................................... 15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .............................................................................................. 2

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................. 5

*Wallace v. IntraLinks*,
    2013 WL 1907685 (S.D.N.Y. May 8, 2013) ......................................................... 4

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ....................................................... 18

*Weston Family P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .......................................................................... 10, 11

- viii -

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77 ...................................................................................................... 3, 4, 17
§77k ........................................................................................................... 4, 13
§77k(a) ............................................................................................................. 5
§77k(e) ........................................................................................................... 19
§77l(a)(2) ............................................................................................... 4, 13, 20
§77m ......................................................................................................... 16, 17
§77o ............................................................................................................... 20
§78j(b) ........................................................................................................... 3, 4
§78u-4 ......................................................................................................... *passim*

Federal Rules of Civil Procedure
Rule 8 ........................................................................................................ 3, 4, 5
Rule 8(a) ............................................................................................................ 3
Rule 9(b) .................................................................................................... 3, 4, 5
Rule 12(b) ....................................................................................................... 15
Rule 12(b)(6) ................................................................................................. 2, 3

17 C.F.R.
§210 ............................................................................................................... 11
§229.105 ......................................................................................................... 13
§229.105(a) ..................................................................................................... 13
§240.(b)(5) ........................................................................................................ 5

4869-3043-6521.v1

| ABBREVIATION | DEFINITION |
|---|---|
| ¶___ and ¶¶___ | Citations to paragraphs in Plaintiffs' First Amended Consolidated Class Action Complaint for the Violation of Federal Securities Laws |
| AC | Plaintiffs' First Amended Consolidated Class Action Complaint for the Violation of Federal Securities Laws (ECF 91) |
| Ex. __ | Refers to the exhibits (A-D) attached to the Declaration of Laurie L. Largent in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, filed herewith |
| IPO | Torrid's initial public offering conducted on July 1, 2021 |
| MTD | Defendants' Notice of Motion and Motion to Dismiss Second Amended Complaint with Prejudice (ECF 95) |
| MTD Hearing | Hearing on Defendants' Motion to Dismiss held 11/3/23 |
| Norris Decl. | Declaration of Austin Norris in Support of Defendants' Motion to Dismiss Second Amended Complaint with Prejudice (ECF 96). All references to Ex. 3 are to the exhibit appended thereto. |
| Plaintiffs | Lead Plaintiff City of Warren Police and Fire Retirement System and additional plaintiff Erika Schroth |
| RS | Torrid's Registration Statement publicly filed on Form S-1 with the SEC in connection with the planned sale of Torrid common stock |
| Torrid or the Company | Torrid Holdings, Inc. |

- x -

4869-3043-6521.v1

## I.      INTRODUCTION AND SUMMARY OF FACTS

The gravamen of Plaintiffs' §11 claim is that Torrid's IPO registration statement misrepresented the Company's supply chain and inventory management capabilities and omitted that Torrid was suffering from worsening product delays that adversely affected its business, including its ability to replenish inventory – the backbone of its operations.  The AC plausibly asserts that Defendants were required to disclose this information under Regulation S-K (Items 303 and 105).  Defendants also had a duty to disclose this information to investors to ensure that the statements made in the RS were not misleading in any material aspect.

Prior to the IPO, Torrid experienced supply chain and inventory problems for years.  ¶56.  In fact, in July 2017, Defendants attempted to take Torrid public, but because of inventory management problems, withdrew the registration statement in April 2019.  *Id.*  In the lead up to the IPO, however, Torrid executives claimed Torrid had fixed its prior inventory problems and falsely asserted in the RS that Torrid's critical supply chain and inventory management systems were operating with maximum speed, flexibility and efficiency.  ¶¶57-62, 64-72.

Unknown to investors, however, Torrid faced a severe breakdown in these systems prior to the IPO.  ¶¶40-49, 56-62, 68.  After an initial lull in sales due to the pandemic, Torrid experienced a surge in demand in the quarter before the IPO that depleted its inventory. ¶45.  At the same time, worsening product delays crippled its inventory replenishment, resulting in millions of backlogged orders prior to the IPO. ¶41.  Torrid's inability to replenish products also led to stockouts for some of Torrid's most high-demand items, resulting in lost sales as restock timing cycles were missed. ¶43.  The delays also caused Torrid to miss crucial selling windows for new product merchandise, further impacting sales.  ¶42.  In fact, post-IPO, Torrid admitted that substantial product delays led to restricted product availability for the Company's customers and "***impacted [Torrid's] results of operations for the three- and nine-***

- 1 -

*months ended October 30, 2021*," meaning these issues pre-dated the IPO by at least five months.  Ex. A.  At the same time, the broken inventory management system Torrid claimed to have fixed led to excessive product ordering, with the inability to match product with demand.  ¶¶56-62.  These conditions were not the usual supply chain or inventory ebb and flow inherent in retail operations, but rather an unprecedented combination of adverse events for Torrid.  These occurrences severely hampered Torrid's pivotal function (to obtain and sell inventory), constituting an extraordinary challenge for Torrid at the time of the IPO.

These pre-IPO problems, their impact, and the falsity of the RS statements, came to light only after the IPO.  On December 8, 2021, Torrid informed investors it missed 3Q 2021 sales estimates and slashed FY 2021 guidance because of limited product availability due to the delays.  ¶89.  This disclosure caused Torrid's stock price to drop to $11.28 per share – *46% below* the IPO price of $21 per share.  Ex. B. In the quarters that followed, as the delayed inventory was received, inventory levels skyrocketed and Torrid's financial struggles persisted.  By June 2022, inventory was up 51% compared to 2019 levels and gross margins were significantly declining as Torrid unloaded excess and outdated inventory at increased discounts. ¶90.  By early December 2022, Torrid's stock was trading at $3.35 per share, an 84% fall from the IPO price.  ¶8.

## II.    ARGUMENT

### A.    Legal Standards

On a Rule 12(b)(6) motion, courts must consider the complaint in its entirety, "accept all factual allegations . . . as true," and construe them in the light most favorable to plaintiffs. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  A complaint need only contain sufficient factual matter that states a claim for relief "'plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]  In

---

[1]    Citations and footnotes are omitted and emphasis added unless otherwise indicated.

- 2 -

deciding plausibility, the Court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

The Securities Act "protects investors by ensuring that companies issuing securities . . . make a 'full and fair disclosure of information' relevant to a public offering." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 178 (2015). Section 11 imposes a "stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983). Accordingly, a plaintiff "need only show a material misstatement or omission to establish [its] *prima facie* case." *Id*. at 382.

### B.    Rule 8 Pleading Standards Apply

Securities Act claims are subject to the permissive notice pleading standards of Rule 8(a). *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 624 (9th Cir. 2017). Rule 8(a) does not impose "an onerous burden" as "'[s]pecific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

Plaintiffs' allegations that Defendants "'***knew*** about the shipment delays before the IPO,'" do not subject Plaintiffs' claims to the Rule 9(b) pleading standard. MTD at 8-9. The AC alleges strict liability claims against Torrid (¶103) and negligence claims against all other Defendants. ¶¶104, 106-107. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *4 (N.D. Cal. Aug. 7, 2020) (Rule 9(b) not applied to complaint only alleging §11 strict liability and negligence claims). The intent to defraud is not an element of Plaintiffs' claims, nor is the underlying conduct alleged to be fraudulent. *Lako v. Loandepot, Inc.*, 2023 WL 444151, at *10 (C.D. Cal. Jan. 24, 2023) (Staton, J.) (finding plaintiffs' §11 claims that do not overlap with Rule 10(b) claims "do not sound in fraud, and thus need only clear the bar of Rule 12(b)(6)"); *In*

- 3 -

*re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *10 (C.D. Cal. July 21, 2005) (finding Rule 8 applied to allegations "rooted in the assertion that the Prospectus was false and misleading as a result of Defendants' negligence").

Plaintiffs' assertion of an Item 303 violation, which requires knowledge (or at least a plausible inference of knowledge), does not change the analysis. *Wallace v. IntraLinks*, 2013 WL 1907685, at *12 (S.D.N.Y. May 8, 2013) ("[T]he allegations that [defendant] failed to disclose a ***known*** uncertainty supports the claim of Section 11 and 12(a)(2) liability pursuant to Regulation S–K, which plaintiffs are able to allege without requiring the application of Rule 9(b).") (emphasis in original); *see also In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597, at *3 (S.D.N.Y. Oct. 30, 2017) (plaintiff asserting Item 303 may "proceed[] under strict liability and negligence theories").[2]

Defendants' reliance on the unpublished decision *Katz v. China Century Dragon Media, Inc.*, 2011 WL 6047093, at *2 (C.D. Cal. Nov. 30, 2011), is unpersuasive. Notably, there are no published Ninth Circuit decisions applying Rule 9(b)'s particularity requirement to a §11 claim where, as here, the underlying conduct was ***not*** also alleged to have constituted fraud under §10(b) of the Exchange Act. That is because courts generally apply Rule 8 to §11 claims where only non-fraud bases for liability are pled. *See, e.g.*, *Safron Cap. Corp. v. Leadis Tech., Inc.*, 274 F. App'x 540, 541 (9th Cir. 2008); *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 684 (9th Cir. 2005); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 546 (N.D. Cal. 2009) (Securities Act claims only and applying Rule 8 pleading standards); *Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *5 (D. Nev. July 12, 2019) (Rule 9(b) not applied to complaint alleging only negligence claims under §11 and Item

---

[2] *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010) ("'[T]hat a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud.'"); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120-22 (2d Cir. 2012) (Item 303 claims brought under §11 are governed by Rule 8).

- 4 -

4869-3043-6521.v1

303); *Rafton v. Rydex Series Funds*, 2011 WL 31114, at *7 (N.D. Cal. Jan. 5, 2011) (Rule 8 applies to §11 claims.) *In re Harmonic Inc. Sec. Litig.*, 163 F. Supp. 2d 1079 (N.D. Cal. 2001), is equally unpersuasive as it included Rule 10(b)(5) fraud claims.

Even if the Court disagrees, Plaintiffs have satisfied the Rule 9(b) particularity requirement by alleging the "'who, what, when, where, and how'" to demonstrate falsity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Crews v. Rivian Auto., Inc.*, 2023 WL 4361098, at *7 (July 3, 2023) (Staton, J.) (same).[3] ¶¶40-73, 83-87.

### C. Plaintiffs Plead Material Misstatements or Omissions Under §11

Under §11(a) of the Securities Act, Plaintiffs must plausibly allege the RS "contained an untrue statement of a material fact" or "omitted to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. §77k(a). "'[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.'" *Loandepot*, 2023 WL 444151, at *7.

The RS repeatedly portrayed Torrid's supply chain and inventory systems as robust and able to efficiently, and quickly, replenish and refresh inventory, which was critical to Torrid's lean-inventory business model. *See* ¶¶64-68. For example, the RS stated that Torrid had enhanced its supply chain efficiency by "shorten[ing] [its] development cycle by two weeks," implying improved responsiveness to customer demand. ¶65. The RS also touted the speed of Torrid's product replenishment cycles, stating Torrid was able to "accelerate product replenishment cycles, improve inventory turnover and drive higher margins." ¶66. Not only did this statement imply quick replenishment times, but also that Torrid's effective supply chain drove

---

[3] Even under the Rule 9(b) pleading standard, falsity is subject to the reasonable inference standard of plausibility set out in *Twombly* and *Iqbal*, and not the strong inference standard of plausibility required by the PSLRA. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023).

- 5 -

4869-3043-6521.v1

financial performance.  The RS further emphasized Torrid's supply chain flexibility as a key strength, stating: "[W]e have the flexibility to react quickly to product performance, make-in-season inventory purchasing adjustments where possible and to respond to the latest sales trends by ordering or re-ordering as appropriate." ¶64.  The RS also told investors that the Company could "effectively manage a continuous refreshed plus-size inventory," implying Torrid was able to regularly update and replenish inventory, and was well positioned to meet demand.  ¶67.

These statements were materially misleading at the time they were made because Torrid could not replenish its depleted inventory due to worsening product delays, initially due to port congestion and factory closures in late 2020, that severely worsened by May 2021.  ¶¶40-49, 68.  In the quarter in which the IPO took place (the three-month period beginning May 1, 2021), Torrid's in-transit inventory (inventory on the way to Torrid from its manufacturers) increased from the prior quarter, meaning that product shipment times from Torrid's manufacturers were rapidly increasing.  ¶¶50-51.  The delays caused millions of backlogged orders before the IPO.  ¶¶41, 68(a).  The delays also caused Torrid to miss release schedules for its planned 2021 fashion cycles, with at least half missed or delayed prior to the IPO.  ¶¶42, 68(d).  Moreover, Torrid's inventory system was not effectively able to match supply with demand, causing product over-ordering.  ¶¶56-62.

Once Defendants "chose to tout [this positive information to the market], they were bound to do so in a manner that wouldn't mislead investors." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008); *see also City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1181 (N.D. Cal. 2021).  Defendants' duty to speak truthfully to investors included the obligation to disclose "'adverse information that cut[] against the positive information.'" *Forescout*, 63 F.4th at 764 (quoting *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016)); *see also Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *12 (C.D. Cal. Jan. 17, 2020).  Defendants violated this duty by failing to disclose

- 6 -

4869-3043-6521.v1

in the RS that, contrary to the portrayal of Torrid's supply chain and inventory systems operating at peak speed, flexibility, and efficiency, internally, the reality was starkly different as Torrid had millions of backlogged orders, severe inventory shortages, and had missed planned 2021 new product releases due to worsening delays. ¶¶40-55, 68.

The AC plausibly alleges materiality. ¶¶83-87. Torrid's revenues rely entirely on procuring and selling fashion-forward clothing that aligns with customer demand. ¶85. The RS's assurance of operational efficiency and agility signaled Torrid's ability to quickly capitalize on customer demand. Moreover, investors knew that Torrid employed a lean inventory business model, where it prioritized cost savings by minimizing on-hand inventory. ¶84. Therefore, investors recognized the critical necessity for Torrid to be able to quickly replenish inventory, and keep pace with new product releases. The RS statements were rendered all the more misleading when read in context of the other information investors received at the time of the IPO. Namely, that the Company: (i) had fixed its prior inventory management problems (¶¶57-62, 86); (ii) had decreasing inventory in-transit implying improved product replenishment cycles (¶51); and (iii) had overcome prior pandemic-related supply chain disruptions by implementing operational changes to improve its supply chain. ¶87.

Defendants ignore that the AC has re-pled them consistent with the Court's December 1, 2023 Order Granting Defendants' Motions to Dismiss (ECF 90) ("Order"). MTD at 12-13. For example, the statements the Court found were puffery, have been eliminated. Order at 8. The AC now alleges the statements that portrayed Torrid as enabled to continually refresh inventory, accelerate product replenishment, and shorten production cycles and based on a failure to disclose that worsening product delays had, in reality, left Torrid unable to perform these critical functions. Defendants' other challenges likewise fail.

***The Alleged Statements Are Not Puffery***.  Defendants wrongly contend that because the RS used words like "flexibility," "quickly," and "accelerate," these types

- 7 -

4869-3043-6521.v1

of statements cannot be actionable because they are vague statements of corporate optimism, *i.e.*, puffery.  MTD at 13.  But"'[i]n determining whether a statement is puffery, the context matters.'"  *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2013 WL 5206216, at *17 (S.D. Cal. Sept. 13, 2013) (quoting *FTC v. Trudeau*, 579 F.3d 754, 766 (7th Cir. 2009)).  "What might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation." *Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989).

As discussed above, the alleged misstatements were made in the context of assurances that Torrid: (i) had fixed its inventory management issues (¶¶57-62, 86); (ii) decreased its inventory in-transit (¶51); and (iii) overcome pandemic-related supply chain disruptions through operational changes (¶87).  Also, Torrid employed a lean inventory business model, which made it critical for Torrid to be able to quickly replenish and restock inventory.  ¶84.  "Accordingly, the Court may not assess the statements listed in the FAC in a vacuum, 'plucking the statements out of their context to determine whether the words, taken *per se*, are sufficiently "vague" so as to constitute puffery,' . . . ."  *Mulligan v. Impax Laby's, Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014); *see also Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 872-73 (W.D. Wash. 2022) (denying puffery defense based on defendants' "myopic" characterization of alleged misstatements).

***Torrid's Pandemic-Related Risk Factors Do Not Provide Immunity***. Defendants also wrongly claim that the RS disclosures about general pandemic risk and its "potential" for further disruptions immunizes them.  MTD at 15.  These purported warnings were meaningless, and themselves misleading, because they did not alert investors about the disruptions that ***already*** manifested at the time of the IPO. ¶¶40-62, 68.  *See In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948-49 (9th Cir. 2023) ("We held that falsity allegations were sufficient to survive a motion to dismiss when the complaint plausibly alleged that a company's SEC filings warned that risks 'could'

- 8 -

4869-3043-6521.v1

occur when, in fact, those risks had already materialized.") (citing *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702-05 (9th Cir. 2021)); *Forescout*, 63 F.4th at 781 ("[C]autionary language is not 'meaningful' if it discusses as a mere ***possibility*** a risk that has already materialized.") (emphasis in original); *see In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *6 (C.D. Cal. June 7, 2018) ("hypothetical risk disclosures . . . do not absolve Defendants of their duty to disclose known material" facts).

For example, the RS did not warn that Torrid's depleted inventory was not being timely replenished because of the delays and Torrid was suffering from inventory shortages and stockouts, millions in backlogged orders and lost sales. ¶¶40-49, 68; *Siracusano v. Matrixx Initiatives, Inc.,* 585 F.3d 1167, 1181 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011) (a company's risk disclosures warning of product liability claims in the abstract were misleading when the company was already facing multiple such lawsuits). Indeed, Torrid itself recognized the importance of this information to investors because it eventually made such a disclosure in its Form 10-Q for 3Q 2021 filed with the SEC, revealing that at least five months before the IPO "significant product delays" due to "[i]ncreased port congestion and COVID-19-related factory closures . . . ***impacted our results of operations for the three and nine months ended October 30, 2021.***" Ex. A at 10-11.

Defendants' reliance on risk disclosures about the past effects of the pandemic, also fails. MTD at 6. These warnings were presented alongside statements telling investors Torrid had effectively fixed its pandemic-related supply chain issues before the IPO, implying that any pandemic-related supply chain issues had been overcome. ¶87. Defendants' inapposite cases involved specific disclosures absent here. [4]

---

[4] *Belodoff v. Netlist, Inc.*, 2009 WL 1293690, at *9 (C.D. Cal. Apr. 17, 2009) (no omission of "excessive" inventory where disclosures showed inventory levels "more than doubled"); *In re Progenity, Inc. Sec. Litig.*, 2023 WL 219345, at *9 (S.D. Cal. Jan. 13, 2023) (involved deficient allegations of knowledge which Defendants do not challenge here); *Golubowski v. Robinhood Mkts., Inc,*, 2024 WL 269507, at *17 (N.D. Cal. Jan. 24, 2024) (no omission of reliance on revenue from cryptocurrency trading where prospectus disclosed volatility in crypto market, that a substantial portion of

- 9 -

***Torrid's Report of "Fluctuating" Inventory Is an Issue of Fact***. Defendants' immunity claim based on Torrid's reported "fluctuating inventory" and that Torrid never said it was "pandemic-proof," also fail because they are fact-based and go to the issue of materiality. MTD at 14, 15; *In Re DDi*, 2005 WL 3090882, at * 11 ("'[A] court deciding a motion to dismiss shall be mindful that the issue of whether a statement or omission is material is usually a question for the fact finder.'"). Also, these claims miscast the allegations. Here, the escalating delays coincided with depleted inventory levels that hampered Torrid's ability to replenish inventory, causing shortages and lost sales. ¶¶40-42, 68. These factors, coupled with an inefficient inventory management system, created inventory conditions Torrid was not likely to recover from in the near term. For instance, delays were causing stockouts and backlogs of Torrid's most popular items, and less sought after and late-arriving products were quickly accumulating. ¶¶46, 68(e). In fact, once the delayed inventory began arriving, inventory levels ballooned and Torrid was forced to sell excess and obsolete inventory at massive discounts. ¶¶88-91. By June 2022, inventory was up 51% compared to 2019 levels and gross margins were significantly declining. ¶90.

***Defendants Had a Duty to Disclose Interim Information***. Finally, Defendants assert Torrid had no duty to disclose "real-time" (intra-quarter) information. MTD at 10-12. But that is not black-letter law. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013) ("That Facebook identified the trend intra-quarter is of no issue; under Item 303, Defendants were required to disclose the issues even though it arose intra-quarter."); *Nayani v. Lifestance Health Grp., Inc.*, 2023 WL 3260260, at *1-*2 (S.D.N.Y. May 4, 2023) (finding defendants had duty to disclose declining retention data that occurred in same quarter as IPO). Indeed, the case Defendants rely on, *Weston Family P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 615, 620 (9th Cir. 2022), favors Plaintiffs. *Twitter*

company revenue was from cryptocurrency trading, and that *Robinhood*'s business model had shifted to non-traditional trading like cryptocurrency trading).

- 10 -

confirms that a company can only speak selectively about its business "so long as its statements do not paint a misleading picture." *Id.* at 615.  In other words, material intra-period information must be disclosed.  Here, the statements that Torrid's supply chain systems were operating with maximum speed, flexibility, and efficiency were factually untrue and misleading at the time of the IPO because (as Defendants admit) delays were crippling Torrid's ability to replenish inventory and its business was adversely affected at least five months before, as well as long after the IPO.  ¶¶40-49, 68.  It is only common sense that this type of information would be material to investors when investing in a retail fashion company whose very business depended on its ability to replenish product and maintain inventory to fulfill customer demand.  ¶¶84-85.  Moreover, as discussed below, Torrid had a duty to disclose under Items 303 and 105.

Defendants' reliance on *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010), is misplaced.  MTD at 11.  In *Noah*, the court relied on an SEC financial reporting regulation that ***is not*** at issue here, in determining plaintiff had not sufficiently pled "an extreme deviation from past performance" to require disclosure of interim results.  *Id.* at \*7 (citing *DeMaria v. Andersen*, 318 F.3d 170, 180-82 (2d Cir. 2023) (determining whether material facts were disclosed under SEC Regulation S–X, 17 C.F.R. § 210)).  That is not the materiality standard to be applied here.  The inquiry is whether there is """"a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."""" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011)*; Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 889 (9th Cir. 2008).  As discussed herein the answer here is yes and *Noah* is not persuasive*.*  Also, *Noah* ignores that the "duty to disclose [material information] under Item 303 is much broader than what is required under the standard [applicable to claims for securities fraud.]" *Crews*, 2023 WL 4361098 at \*15 (citing *In re NVIDIA Corp. Sec. Litig*., 768 F.3d 1046, 1055 (9th Cir. 2014)).

- 11 -

4869-3043-6521.v1

### D. Torrid's Risk Factors Are Also Actionable

The misleading risk factors alleged in ¶¶70-71 (that untimely shipments "***may***" impact Torrid or "***could cause***" a delay in customer demand) and ¶73 (that the pandemic "***has the potential***" to cause disruption in Torrid's supply chain), are actionable because the adverse effects of the worsening delays – inability to replenish depleted inventory, millions of backlogged orders, stockouts, missed fashion cycles, and lost sales – began before the IPO. ¶¶40-55, 68. The Ninth Circuit has affirmed "risk disclosures can be misleading to investors when they 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of the[] risks may already have come to fruition.'" *Forescout*, 63 F.4th at 781; *see also In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 769-70 (N.D. Cal. 2020) (risk factor misleading where "warned-of risks" already materialized); *Berson*, 527 F.3d at 986 (statement that "speaks entirely of as-yet-unrealized risks and contingencies" does not "alert[] the reader that some of these risks may already have come to fruition"); *see also In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2022 WL 2762213, at *9 (C.D. Cal. July 13, 2022) (risk disclosures may be actionable where they "do not 'alert[ ] the reader that some of the[] risks may already have come to fruition'").

Again, Defendants' reliance on *Noah* fails. MTD at 16. As *Noah* affirms, whether or not a statement (or risk factor) is misleading, is a "'fact-specific' inquiry" that must be considered in context. 2010 WL 1372709, at *7. Here, unlike in *Noah*, Plaintiffs allege the RS reported decreasing inventory in-transit, which implied to investors that Torrid's supply chain was improving in speed, when in fact the opposite was true. ¶¶50-51. Even Defendants acknowledged at the MTD Hearing that investors would have relied on this very information. Ex. D at 19:19-21 ("[T]here's robust discussion about [inventory-in-transit] with investors every quarter. Nobody was hiding from it. Nobody was concealing it."). In this context, the alleged misleading risk factors are actionable. *Rafton*, 2011 WL 31114, at *7 ("where the

- 12 -

adequacy of the disclosures is at issue, Defendants must make a 'stringent showing' that 'reasonable minds could not disagree' that the disclosures were not misleading") (citing *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005)) (Dismissal based on sufficient cautionary language "requires a stringent showing: There must be sufficient 'cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading.'").

### E.    Defendants' Violation of Items 303 and 105

Item 303 of Regulation S-K required the RS disclose "'any known trends or uncertainties that have had or are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.'" *Crews*, 2023 WL 4361098, at *15. A "'disclosure duty exists where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation.'" *Id.* (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998)). Defendants do not challenge that the worsening delays created an actionable Item 303 "uncertainty" (focusing instead solely on "trends"). Their motion must be denied on this ground alone.

Item 105 of Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required the RS contain "a discussion of the material factors that make [the] offering speculative or risky." 17 C.F.R. §229.105(a); *Crews*, 2023 WL 4361098, at *15. "Allegations sufficient to state a claim under Items 105 and 303 are also sufficient to state a claim under Sections 11 and 12(a)(2) of the 1933 Act." *Crews*, 2023 WL 4361098, at *15; *see also Snap*, 2018 WL 2972528, at *8 (sustaining §11 claims based on Items 303 and 105 violations). Defendants violated both regulations.

As set forth above, before the IPO, delays of Torrid's products from its manufacturers in Asia worsened, leaving Torrid unable to timely replenish its product.

- 13 -

¶¶40-41, 47, 50-55, 68, 82. The lengthening delays were knowable from the Company's increasing in-transit inventory that was not publicly reported until after the IPO. ¶¶50-55. The AC also alleges internal indicators, pre-dating the IPO, that lengthening delays were negatively impacting the Company's operations: (i) millions in backlogged orders because of the delays (¶41); (ii) impairment to the Company's ability to introduce its 2021 fashion cycles as scheduled (¶42); and (iii) disruption to Torrid's planned product restocks, causing stockouts (sold-out products with no definite re-supply date) of popular, high-demand core and basic items, which was resulting in lost sales (¶43). *McKenna v. SMART Techs. Inc.*, 2012 WL 3589655, at *4 (S.D.N.Y. Aug. 21, 2012) (internal indicators at the company and post-IPO decline in the company's performance were "sufficient to support plaintiff's [Item 303] claim that there was 'uncertainty'" over demand for the company's product).

There is little doubt that worsening delays were reasonably likely to (and did) have a material unfavorable impact on Torrid's operations and financial condition. ¶89. At the time of the IPO, Torrid was facing three-month product delays under depleted inventory conditions, that were already negatively impacting its ability to meet customer demand. ¶¶40-49, 68. The ability to replenish inventory, particularly under Torrid's lean-inventory model, was critical to the success of Torrid's operations – no inventory, no sales. In fact, Torrid admitted, post-IPO, that the product delays had impacted Torrid's results of operations as early as five months before the IPO. Ex. A. This is the very information the RS should have disclosed but did not. *In re Blue Apron Holdings, Inc.*, 2020 WL 1950783, at *9 (E.D.N.Y. Apr. 22, 2020) (knowledge of ongoing delays in launching the Company's fulfillment center coupled with risk warnings about delays and post-IPO statements that delays adversely affected the Company's financial condition sufficient to infer defendants reasonably expected the delays to be material prior to IPO); *see also Loandepot*, 2023 WL 444151, at *11 (knowledge of a trend or uncertainty inferred where defendants' scheme was unsustainable and "would cause a decrease in future revenues"). The AC

- 14 -

4869-3043-6521.v1

thus adequately pleads violations of Items 303 and 105 that support Plaintiffs' §11 claim.

Contrary to Defendants' claim, "'the case law is far from settled regarding the length of time necessary to constitute a 'trend' for the purpose of Item 303.'" *Sundaram v. Freshworks Inc.*, 2023 WL 6390622, at *7 (N.D. Cal. Sept. 28, 2023). "Item 303's disclosure obligations . . . do not turn on restrictive mechanical or quantitative inquiries." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 122 (2d Cir. 2012) (citing *Matrixx*, 563 U.S. at 39-40 (explaining that the problem with "bright-line" and "categorical" rules is that they "would artificially exclude information that would otherwise be considered significant to the trading decision of a reasonable investor") (cleaned up)).   Indeed, adverse trends and uncertainties manifested within the same quarter as an IPO have been found to be the basis of an Item 303 disclosure obligation. *See, e.g.*, *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1066-67 (M.D. Tenn. 2022) (allegations of "sudden downward trend[s]" in three financial metrics in quarter in which IPO occurred were sufficient to plead a material omission under Item 303); *Facebook*, 986 F. Supp. 2d at 513 n.28 (finding Defendants had a duty to disclose a material negative impact to revenues which occurred ten days prior to the IPO); *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999) (Item 303 required disclosure of known declining sales trend that occurred in the same quarter as the offering.); *Sundaram*, 2023 WL 6390622, at * 7 (finding one quarter of financial deceleration constituted an Item 303 trend); *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 891-92 (M.D. Tenn. 2013) (recognizing "what may not constitute a trend in one industry may signal a trend in another" and rejecting that "'a two month period of time does not establish a "trend" for purposes of the disclosures required by Item 303'").

At a minimum, Plaintiffs' allegations satisfy the requirements of Item 303 and raise factual issues inappropriate for resolution under Rule 12(b). *Lyft*, 484 F. Supp. 3d at 776 n.7 ("[T]he question of whether the bike issues constituted a 'trend' is a

- 15 -

4869-3043-6521.v1

factual inquiry to be resolved at a later stage of these proceedings. For now, it is sufficient that Plaintiff pleads that Lyft knew of the defects prior to its IPO, and that the suspension or removal of the bikeshare program would have an 'unfavorable impact . . . on revenues.'"); *Loandepot,* 2023 WL 444151, at *12 (accepting inference that non-disclosures alleged to have violated Item 303 were material, refusing to resolve materiality on the pleadings).

### F.    Defendants' Other Defenses Fail

#### 1.    Defendants' Statute of Limitations Defense Fails

Defendants' statute of limitation arguments are premature and internally contradictory. MTD at 19-20. Section 11 claims must be brought within one year of when the statute of limitations begins to run. 15 U.S.C. §77m. The statute of limitations in securities cases "does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation[.]'" *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010). A fact is only "discovered" "'when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint …with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss."'" *Booth v. Strategic Realty Tr., Inc.*, 2014 WL 3749759, at *4 (N.D. Cal. July 29, 2014).

As an initial matter, Defendants' arguments are premature at the motion to dismiss stage due to the "fact intensive" nature of inquiry notice. *Id.* (denying motion to dismiss securities claims as untimely and finding defendants' arguments premature); *see also In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 967 (N.D. Cal. 2010) (same); *Alameda v. Nuveen Mun. High Inc. Opportunity Fund*, 2009 WL 1424529, at *8 (N.D. Cal. May 20, 2009) (same); *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158819, at *16-*17 (S.D. Cal. Jan. 20, 2005) (same); *Rafton*, 2011 WL 31114, at *9 (same); *Lilley v. Charren*, 936 F. Supp. 708, 715 (N.D. Cal. 1996) (same); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1080

- 16 -

(N.D. Cal. 2010) (same) (collecting cases).  On this ground alone, the Court should decline to consider Defendants' arguments.

Even if the Court were to consider this defense, Defendants have not met their burden.  15 U.S.C. §77m; *Pace v. Quintanilla*, 2015 UWL 652719, at *6 (C.D. Cal. Feb. 13, 2015) (claims not time-barred because defendant did not "definitively" demonstrate when a reasonably diligent plaintiff would have discovered facts constituting violation); *see also Booth*, 2014 WL 3749759, at *6 (disclosure of some internal control problems insufficient to show full extent); *Rafton*, 2011 WL 31114, at *10  (disclosure of deviations did not inform of the cause of those deviations). Defendants incorrectly argue that the truth, regarding some but not all of the alleged misstatements, was fully revealed on September 8, 2021.  MTD at 18-19.

First, Defendants' argument is internally inconsistent.  Defendants themselves admit the "September 8th disclosure cannot support Plaintiffs' claims," because on the first trading day following the September 8 disclosure Torrid's stock price "***surged upward*** by 32% in a single day."  MTD at 1, 21 (Defendants' emphasis).  This fact alone makes it implausible that a reasonably diligent investor would have been put on inquiry notice of a potential Securities Act claim.  On the September 8 earnings release Defendants downplayed the impact of the shipping delays by reporting strong Q2 2021 results, providing robust guidance and assuring investors Torrid could use its "vast" inventory collection and promotional discounts to "flex in different directions" and "encourage her into categories that we do have inventory in."  Norris Decl., Ex. 3 at 10.  As a result, analysts following Torrid left the September 8 conference call feeling that Torrid's supply chain issues were "manageable."  Ex. C.  In the end, the question at this stage "is whether it is ***plausible*** that [the September 8 disclosure was] insufficient to supply a reasonably diligent plaintiff with the information necessary to plead the Section 11 claims . . . ."  *Booth*, 2014 WL 3749759, at *6 (emphasis in original).  The answer is, yes, it was plausibly insufficient given these facts.

- 17 -

Second, Defendants completely ignore the remainder of Plaintiffs' allegations as to post-IPO events.  For example, on December 8, 2021, Torrid reported "supply chain disruptions limited product availability" for "all" product categories, causing lower sales from "out-of-stocks," lower gross margins from increased freight charges, and a 40% increase for in-transit inventory.  ¶89.  Upon this news, Torrid's stock price declined 28%.  Ex. B.

Based on the foregoing, Defendants' statute of limitations arguments must be denied.[5]

### 2.    Defendants' Negative Causation Defense Fails

Plaintiffs are not required to plead loss causation for their §11 claim.  *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1036 (N.D. Cal. 2016); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1171 (C.D. Cal. 2008).  Rather, Defendants bear the burden on a negative causation defense, and as courts in the Ninth Circuit have repeatedly recognized, this burden is "a 'heavy' one."  *Fitbit*, 216 F. Supp. 3d at 1036 (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994)); *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) (same); *Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir. 1996).  Indeed, dismissal on negative causation grounds is "only appropriate if the complaint makes clear that there is no conceivable basis for loss causation."  *State Treasurer of Mich. v. Countrywide Fin.*

---

[5]    Defendants rely on a series of inapposite cases.  *See* MTD at 19-20 (citing *Barnes v. Edison Int'l*, 2022 WL 822191, at *1 (9th Cir. Mar. 18, 2022) (dismissal where singular, entirely corrective disclosure made more than one year prior to filing of complaint); *Lowthorp v. Mesa Air Grp. Inc.*, 2021 WL 3089118, at *7 (D. Ariz. July 22, 2021) (dismissal where every alleged corrective disclosure issued more than one year before suit was filed); *In re YogaWorks, Inc. Sec. Litig.*, 2020 WL 2549290, at *4 (C.D. Cal. Apr. 23, 2020) (same); *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *12 (S.D. Cal. Sept. 25, 2019) (same); *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *21-*22 (N.D. Cal. Jan. 17, 2017) (corrective disclosure explicitly announced inaccuracy of financial statements at issue); *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *11 (N.D. Cal. 2020) (claim time-barred where facts disclosed were "abundant and largely consistent with" those in the Registration Statement); Defendants also rely on *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 916 (N.D. Cal. 2015), which supports Plaintiffs as the court there held disclosures of financial metrics omitting the extent of the impact did not put plaintiffs on inquiry notice.  *Id.*

4869-3043-6521.v1

*Corp.*, 2011 WL 13220150, at *5 (C.D. Cal. Aug. 22, 2011).  Thus, "[s]o long as the other allegations in the complaint (and matters of which a court may take judicial notice) do not conclusively demonstrate that plaintiffs cannot prove a loss, the complaint survives a motion to dismiss."  *Snap*, 2018 WL 2972528, at *9.

Defendants argue that Torrid's 32% stock price increase after the September 8, 2021 release supports their negative causation defense.  Not so.  Torrid's stock price increase after the September 8, 2021 earnings release proves nothing because Defendants' statements about delays were blunted by concurrent positive statements. *See* Norris Decl., Ex. 3 at 10.  In fact, Defendants' September 8 report on Torrid's 2Q 2021 strong performance and robust guidance left analysts raising estimates and noting that, while delays were a headwind, "they appear less onerous than feared." Ex. C.  Thus, Plaintiffs are free to argue that the market did not appreciate the impact of the inventory delays until later disclosures.  *Countrywide*, 588 F. Supp. 2d at 1172 (crediting theory that "full extent of the decline attributable to the misrepresentations and omissions were not priced into the security until later, more significant disclosures"); *Chen v. Missfresh Ltd.*, 2023 WL 7289750, at *9 (S.D.N.Y. Nov. 6, 2023) ("'The presence or absence of a price movement immediately after a disclosure in not per se dispositive under Section 11(e).'").  At the very least, this is a fact intensive analysis "'generally established by a defendant on a motion for summary judgment or at trial.'"  *Countrywide*, 588 F. Supp. 2 at 1171 (finding negative causation is a "fact-intensive" inquiry); *see also Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1131 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) (declining to consider negative causation defense at motion to dismiss, as the defense is properly "reserved for the summary judgment stage").[6]

---

[6]  Moreover, Defendants ignore the two other events on December 8, 2021 and June 7, 2022 disclosing lower sales, gross margin and guidance due to issues related to the inventory delays, which were followed by 28% and 7% stock price declines, respectively.  Ex. B.

- 19 -

Defendants' argument that Plaintiffs cannot rely on the December 8, 2022 revelation has been expressly rejected. *Compare* MTD at 21-22, *with Kuhne v. Gossamer Bio, Inc.*, 2021 WL 1529934, at *7 (S.D. Cal. Apr. 19, 2021) (rejecting defendants' argument and allowing reliance on post-complaint disclosures); *Snap*, 2018 WL 2972528, at *8-*9 (same, noting plaintiff can prove §11 damages by showing the IPO price did not reflect the company's true value because of the material misstatements and omissions).[7]

### G.    Plaintiffs Plead Claims Under §§12(a)(2) and 15

Because Plaintiffs allege a primary violation of §11, Defendants are also liable for §§12(a)(2) and 15 violations. *See Huddleston*, 459 U.S. at 382; *Crews*, 2023 WL 4361098, at *16.

## III.   CONCLUSION

Defendants' motion should be denied. Should the Court grant the motion to dismiss, in whole or in part, Plaintiffs request leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052-53 (9th Cir. 2003).

DATED:  March 1, 2024                  Respectfully submitted,

                                       ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                       LAURIE L. LARGENT
                                       STEPHEN JOHNSON


                                       s/ LAURIE L. LARGENT
                                       LAURIE L. LARGENT

---

[7] Defendants' cases (some out of circuit) are distinguishable. *In re Shoretel Inc.*, 2009 WL 248326, at *5 (N.D. Cal. Feb. 2, 2009) (negative causation where alleged corrective disclosure reveals nothing about misrepresentation); *Hoang v. Contextlogic, Inc.*, 2023 WL 8879263, at *16 (N.D. Cal. Dec. 22, 2023) (same); *In re Merrill Lynch & Co., Res. Rep. Sec. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. Oct. 29, 2003) (corrective disclosure occurred after plaintiff alleged decline in value); *Cali v. Switch, Inc.*, 2020 WL 3893246, at *4 (D. Nev. July 10, 2023) (corrective disclosure issued after complaint filed); *In re Velti PLC Sec., Litig.*, 2015 WL 5736589, at *28, *31 (N.D. Cal. Oct. 1, 2015) (plaintiff lacked §11 standing because he sold all shares prior to corrective disclosure).

- 20 -

4869-3043-6521.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
llargent@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

- 21 -

4869-3043-6521.v1

**CERTIFICATE OF COMPLIANCE**

I hereby attest that this brief contains 6,936 words, which complies with the word limit of L.R. 11-6.1

DATED: March 1, 2024

s/ LAURIE L. LARGENT

LAURIE L. LARGENT
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
Email: llargent@rgrdlaw.com

4869-3043-6521.v1