Mark Holscher (SBN 139582)
Austin Norris (SBN 284603)
KIRKLAND AND ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:  (310) 552-4200
Facsimile:   (310) 552-5900
Email: mark.holscher@kirkland.com
Email: austin.norris@kirkland.com

Matthew Solum (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4688
Facsimile: (212) 446-4900
Email: matthew.solum@kirkland.com

*Attorneys for the Torrid, Sycamore, and Individual Defendants*

James N. Kramer (SBN 154709)
Alexander K. Talarides (SBN 268068)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:  (415) 773-5700
Facsimile:   (415) 773-5759
Email: jkramer@orrick.com
Email: atalarides@orrick.com

Darrell S. Cafasso (*Pro Hac Vice*)
Jennifer Keighley (*Pro Hac Vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 506-5000
Facsimile:   (212) 506-5151
Email: dcafasso@orrick.com
Email: jkeighley@orrick.com

*Attorneys for Underwriter Defendants*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA WASWICK, On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TORRID HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-08375-JLS(ASx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**<br><br>FAC Filed:  May 12, 2023<br>SAC Filed:  December 22, 2023<br><br>Judge:  Hon. Josephine L. Staton<br>Hearing:  May 10, 2024<br>Time:  10:30 a.m.<br>Courtroom:  8A |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................. 1

II.     ARGUMENT ......................................................................................... 1

    A.    Rule 9(b) Applies to Plaintiffs' Claims. ................................................ 1

    B.    Plaintiffs Fail to Plead Any Actionable Misstatements or Omissions. .................................................................................................. 3

        1.    Torrid Had No Duty to Disclose Interim Data. ........................ 3

        2.    The Supply Chain Statements Are Non-Actionable Puffery ...... 5

        3.    The Supply Chain Statements Are Not False or Misleading ...... 6

        4.    The Risk Disclosure Statements Are Not Actionable. .............. 7

    C.    Plaintiffs' Regulation S-K Claim Also Fails. ........................................ 8

    D.    Plaintiffs' Shipping Delay Claim Is Time Barred ............................. 10

    E.    Plaintiffs' Claims Are Barred by Negative Causation. ....................... 11

III.    CONCLUSION .................................................................................. 12

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anchor Gaming Secs. Litig.*,
   33 F. Supp. 2d 889 (D. Nev. 1999) ........................................................2

*Belodoff v. Netlist, Inc.*,
   2008 WL 2356699 (C.D. Cal. May 30, 2008).......................................2

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ................................................................7

*In re Blue Apron Holdings, Inc.*,
   2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020)........................................9

*Booth v. Strategic Realty Tr., Inc.*,
   2014 WL 3749759 (N.D. Cal. July 29, 2014) ......................................11

*In re Bridgepoint Educ., Inc. Secs. Litig.*,
   2013 WL 5206216 (S.D. Cal. Sept. 13, 2013) ......................................5

*Cai v. Switch, Inc.*,
   2020 WL 3893246 (D. Nev. July 10, 2020).........................................12

*Casella v. Webb*,
   883 F.2d 805 (9th Cir. 1989) ................................................................5

*In re Convergent Techs. Secs. Litig.*,
   948 F.2d 507 (9th Cir. 1991) ................................................................7

*In re Coty Inc. Secs. Litig.*,
   2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)....................................5, 7

*In re Dropbox Secs. Litig.*,
   2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) .......................................8

*In re Facebook, Inc. IPO Secs. & Derivative Litig.*,
   986 F. Supp. 2d 487 (S.D.N.Y. 2013) ...............................................4, 9

*Franchi v. SmileDirectClub, Inc.*,
   633 F. Supp. 3d 1046 (M.D. Tenn. 2022) .............................................9

ii

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Golubowski v. Robinhood Markets, Inc.*,
   2023 WL 1927616 (N.D. Cal. Feb. 10, 2023).................................................3, 4, 9

*Golubowski v. Robinhood Markets, Inc.*,
   2024 WL 269507 (N.D. Cal. Jan. 24, 2024)....................................................6, 8, 9

*Hoang v. ContextLogic, Inc.*,
   2023 WL 8879263 (N.D. Cal. Dec. 22, 2023) ...................................................11, 12

*Jaeger v. Zillow Grp., Inc.*,
   644 F. Supp. 3d 857 (W.D. Wash. 2022) ..............................................................5

*Katz v. China Cent. Dragon Media, Inc.*,
   2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) .......................................................2

*Kuhne v. Gossamer Bio, Inc.*,
   2021 WL 1529934 (S.D. Cal. Apr. 19, 2021) .......................................................12

*Lako v. Loandepot, Inc.*,
   2023 WL 444151 (C.D. Cal. Jan. 24, 2023)............................................................9

*Lowthorp v. Mesa Air Grp. Inc.*,
   2021 WL 3089118 (D. Ariz. July 22, 2021).........................................................11

*In re Lyft Inc. Secs. Litig.*,
   484 F. Supp. 3d 758 (N.D. Cal. 2020).........................................................4, 7, 9

*Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022)...............................................................................6

*In re Merrill Lynch & Co. Rsch. Reports Secs. Litig.*,
   289 F. Supp. 2d 429 (S.D.N.Y. 2003) .................................................................12

*Milman v. Box Hill Sys. Corp.*,
   72 F. Supp. 2d 220 (S.D.N.Y. 1999) ....................................................................9

*Mulligan v. Impax Laby's, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014).....................................................................5

*Nayani v. LifeStance Health Grp., Inc.*,
   2023 WL 3260260 (S.D.N.Y. May 4, 2023)......................................................4, 5

*Nguyen v. MaxPoint Interactive, Inc.*,
   234 F. Supp. 3d 540 (S.D.N.Y. 2017)...................................................................3

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*In re Noah Educ. Holdings, Ltd. Secs. Litig.*,
  2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010)...............................................3, 4, 7

*In re Obalon Therapeutics, Inc.*,
  2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ...................................................10

*In re Orange 21 Inc. Secs. Litig.*,
  2006 WL 8455352 (S.D. Cal. Mar. 30, 2006).......................................................3

*Pace v. Quintanilla*,
  2015 WL 652719 (C.D. Cal. Feb. 13, 2015)......................................................11

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
  681 F.3d 114 (2d Cir. 2012) ................................................................................8

*Pearlstein v. BlackBerry Ltd.*,
  93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd* 660 F. App'x 23 (2d Cir.
  2016) ....................................................................................................................9

*In re Progenity, Inc.*,
  2021 WL 3929708 (S.D. Cal. Sept. 1, 2021) .......................................................4

*Rafton v. Rydex Series Funds*,
  2011 WL 31114 (N.D. Cal. Jan. 5, 2011)...........................................................11

*Schuh v. HCA Holdings, Inc.*,
  947 F. Supp. 2d 882 (M.D. Tenn. 2013) ..............................................................9

*In re Shoretel Inc., Secs. Litig.*,
  2009 WL 248326 (N.D. Cal. Feb. 2, 2009).........................................................12

*In re Snap Inc. Secs. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018).......................................................12

*In Re Stable Rd. Acquisition Corp.*,
  2022 WL 2762213 (C.D. Cal. July 13, 2022) .......................................................7

*In re Stac Elecs. Secs. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ...............................................................................2

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) .............................................................................8

iv

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Sundaram v. Freshworks Inc.*,
2023 WL 6390622 (N.D. Cal. Sept. 28, 2023)........................................................8

*Terenzini v. GoodRx Holdings, Inc.*,
2022 WL 122944 (C.D. Cal. Jan. 6, 2022)...........................................................10

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016)................................................................11

*Welgus v. TriNet Grp.*, Inc.,
2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .......................................................8

*Welgus v. TriNet Grp.*, Inc.
765 F. App'x 239 (9th Cir. 2019) ..........................................................................8

*Welgus v. TriNet Grp., Inc.*,
2017 WL 167708 (N.D. Cal. Jan. 17, 2017)..........................................................11

*In re YogaWorks, Inc. Secs. Litig.*,
2020 WL 2549290 (C.D. Cal. Apr. 23, 2020)........................................................11

**Statutes**

15 U.S.C. § 77k.............................................................................................2, 7, 8, 12

15 U.S.C. § 77m......................................................................................................10

**Court Rules**

Fed. R. Civ. P. 8......................................................................................................2, 3

Fed. R. Civ. P. 9...................................................................................................1, 2, 3

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| SAC | First Amended Consolidated Class Action Complaint for the Violation of Federal Securities Laws (ECF 91) |
| FAC | Consolidated Class Action Complaint for the Violation of Federal Securities Laws (ECF 59) |
| "Torrid" or the "Company" | Torrid Holdings Inc. |
| MTD | Defendants' Motion to Dismiss Second Amended Complaint with Prejudice (ECF 95) |
| MTD Order | Order Granting Defendants' Motions to Dismiss (ECF 90) |
| Ex. | Exhibits to the January 26, 2024 Declaration of Austin Norris, unless otherwise noted. Page citations refer to the native page numbering at the bottom of each page, where applicable. |
| IPO | Initial Public Offering |
| Sycamore | Sycamore Partners Management, L.P. |
| Opp'n | Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF 98) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiffs' Opposition not only fails to overcome the SAC's fatal defects, but also reveals new ones, confirming that Plaintiffs' claims should be dismissed with prejudice. Plaintiffs do not dispute and thereby concede:

1.    Torrid's customers were aware of the alleged inventory issues before the IPO (SAC ¶43);

2.    Torrid's financial results improved across the board in Q2 2021, the quarter of the IPO (MTD at 8);

3.    Plaintiffs have no evidence supporting their claim that inventory in-transit increased as of the July 1, 2021 IPO, and the minimal increase reported after the IPO was far less than the fluctuation disclosed to investors before the IPO (*id.* at 7–8); and

4.    After the alleged shipping and inventory issues were disclosed to investors in September 2021, Torrid's stock price surged upward by 32% in a single day (*id.* at 8).

In light of these concessions, Plaintiffs have no plausible claim. They do not and cannot cite a single case sustaining a claim where the company's financial results improved after an IPO and the stock price surged upward after the supposed corrective disclosure. Their arguments center on non-actionable puffery and ignore the robust information disclosed to investors—which again, Plaintiffs admit the market already knew. SAC ¶43. At bottom, Plaintiffs advance the same arguments and alleged misstatements that the Court already considered and rejected. Investors know that shipping delays, fluctuating inventory, and supply chain issues "are a part of everyday life for businesses" like Torrid, particularly during a pandemic. MTD Order at 14. As this Court already found, Plaintiffs cannot convert these "everyday" fluctuations into securities violations. The SAC should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Rule 9(b) Applies to Plaintiffs' Claims.

Notwithstanding their allegations that Defendants knowingly misrepresented and

1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

concealed facts from investors, Plaintiffs argue their Securities Act claims need only meet Rule 8. Opp'n at 3–5. But Rule 9(b) governs Section 11 claims "when, as here, they are grounded in fraud." *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

Plaintiffs concede they allege knowing misrepresentations. Opp'n at 3–4. But the issue is not merely that the SAC alleges "an Item 303 violation, which requires knowledge." *Id.* at 4. The SAC asserts that Defendants knew about inventory issues before the IPO (SAC ¶¶53, 55), but realized that "[i]t was absolutely critical to investors that the Company's inventory issues had been fixed" (*id.* ¶84). As a result, Plaintiffs allege, Defendants deliberately misrepresented these issues, which "became a key selling point to investors in the IPO." *Id.* ¶84. This scheme allegedly enabled Defendants to sell millions in stock. *Id.* ¶¶16–20, 27–28; *see also* FAC ¶4 ("Defendants used the IPO to take Torrid public by making untrue claims about the Company, then pocketing millions in proceeds, leaving investors damaged.").

"Failing to state known facts and attempting to create an inaccurate impression of future business are prototypical forms of intentional fraud." *Belodoff v. Netlist, Inc.*, 2008 WL 2356699, at *6 (C.D. Cal. May 30, 2008). And indeed, these are the same essential allegations Plaintiffs relied on to allege their Exchange Act claims. MTD at 2–5. Plaintiffs have now scrubbed all mention of "fraud," but otherwise allege the same facts, knowing misrepresentations, and stock sales. Nothing about these allegations sounds in negligence.

This distinguishes all the authority on which Plaintiffs rely. Here, unlike in Plaintiffs' cases, Plaintiffs allege that Defendants knowingly concealed facts from investors to promote (and profit from) the IPO. Rule 9(b) applies. *See Katz v. China Cent. Dragon Media, Inc.*, 2011 WL 6047093, at *2 (C.D. Cal. Nov. 30, 2011) (applying Rule 9(b) where plaintiff alleged deliberate misrepresentations to promote IPO); *In re Anchor Gaming Secs. Litig.*, 33 F. Supp. 2d 889, 892 (D. Nev. 1999) (applying Rule 9(b) where "the Complaint is rife with insinuations and suggestions that

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants purposefully omitted and misstated material information, intending to benefit therefrom"); *In re Orange 21 Inc. Secs. Litig.*, 2006 WL 8455352, at *2 (S.D. Cal. Mar. 30, 2006) (applying Rule 9(b) where "allegations amount to a theory that Defendants intentionally withheld information in order to guarantee a successful IPO").

### B.   Plaintiffs Fail to Plead Any Actionable Misstatements or Omissions.

Under either Rule 8 or 9(b), and for several independent reasons, Plaintiffs' claims fail.

### 1.   Torrid Had No Duty to Disclose Interim Data.

Defendants' motion explained that companies have "no general obligation to disclose the result of a quarter in progress." *Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 546 (S.D.N.Y. 2017). In fact, courts require such disclosures only where plaintiffs establish "an *extreme*" or "*extraordinary*" deviation from past performance at the time of an IPO. *In re Noah Educ. Holdings, Ltd. Secs. Litig.*, 2010 WL 1372709, at *7 (S.D.N.Y. Mar. 31, 2010); *Golubowski v. Robinhood Markets, Inc.*, 2023 WL 1927616, at *5 (N.D. Cal. Feb. 10, 2023).

Plaintiffs do not even attempt to meet this standard. Opp'n at 10–11. Nor can they, given that: (1) there is no evidence that inventory in-transit had increased at all as of the IPO; (2) total inventory before and after the IPO remained essentially flat; (3) the percentage of inventory in-transit increased by merely 2% at quarter-end following the IPO (13.9% to 16%), far less than before the IPO (9% to 17%); (4) Torrid's financial results improved in the quarter of the IPO; and (5) after the announcement of these results, Torrid's stock price soared. MTD at 7–8.

Unable to refute these points, Plaintiffs impermissibly try to amend the SAC through their Opposition, claiming an unpled statement from Torrid's 10-Q for Q3 2021 shows that supply chain disruptions impacted Torrid "at least five months before the IPO." Opp'n at 9. But that statement addressed events "during the third quarter of fiscal year 2021," months *after* the July 1 IPO. Opp'n Ex. A. That, of course, says *nothing* about the pre-IPO period and provides *no support* for Plaintiffs' latest theory that these

3

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

issues materialized five months before the IPO. Plaintiffs' reliance on this unpled and mischaracterized statement speaks volumes: It is an effective admission that the SAC, which alleges Delta-variant shipping delays starting mere *weeks* before the IPO, is deficient. SAC ¶¶40–41, 47, 68, 76, 77, 82 (alleging delays beginning in May 2021).

Plaintiffs argue that *Noah*—discussed and relied upon in the Court's MTD Order—is somehow inapplicable because it references SEC regulations. Opp'n at 11. *Noah* addressed the same question at issue here: whether the defendant was required to disclose intra-quarter data as of its IPO. *See Noah*, 2010 WL 1372709, at *1, *6–7. In finding no duty, the court looked to "the SEC's reporting regulations, which, at least in the absence of an extreme deviation from past performance, do not require publicly traded companies to disclose interim financial data." *Id.* at *7. Just as in *Noah*, Plaintiffs' theory is "an end-run around the carefully delineated SEC regulations that specify what financial data must be disclosed in offering documents." *Id.*

Many cases support *Noah*'s holding. *See, e.g.*, *Golubowski*, 2023 WL 1927616, at *5 ("Without historical data to show that the May to July 2021 declines … were exceptional and out of line with past fluctuations, that data is not so extraordinary as to mandate specific out-of-quarter disclosure."); *In re Progenity, Inc.*, 2021 WL 3929708, at *6 (S.D. Cal. Sept. 1, 2021) ("Defendants were … under no obligation to audit and report their second quarter 2020 financial results prior to the end of that fiscal quarter."); *In re Lyft Inc. Secs. Litig.*, 484 F. Supp. 3d 758, 773 (N.D. Cal. 2020) ("[C]ourts have been reluctant to impose liability based upon a failure to disclose financial data for a fiscal quarter in progress."); MTD at 11 (citing additional cases).

And the cases Plaintiffs cite are consistent with *Noah. See In re Facebook, Inc. IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013); *Nayani v. LifeStance Health Grp., Inc.*, 2023 WL 3260260, at *4 (S.D.N.Y. May 4, 2023). In both cases—unlike here—the defendant was aware of adverse information pre-IPO that was already materially affecting financial performance. *Facebook*, 986 F. Supp. 2d at 513;

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Nayani*, 2023 WL 3260260, at *1. Neither case involved financial performance that *improved* through the IPO.

This case suffers from the same fatal flaw recognized in Plaintiffs' authority: "plaintiffs … fail[] to allege that the pertinent metric"—i.e. inventory in-transit—"had [increased] at the time of the defendant company's IPO," *Nayani*, 2023 WL 3260260, at *3, much less that the increase was so large as to require intra-quarter disclosure. Plaintiffs baselessly presume that the percentage of inventory in-transit increased as of the July 1 IPO because, months after the IPO, Torrid reported a 2% increase as of July 31. But "these numbers offer little guidance as to the information that was available as of the time of the [July 1] IPO," and "Plaintiffs allege no facts that actually support their assertions that [inventory in-transit was increasing] at the time of the IPO." *In re Coty Inc. Secs. Litig.*, 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016).

### 2.     The Supply Chain Statements Are Non-Actionable Puffery.

The Opposition does not dispute that the supply chain statements (Statements 1 through 5, MTD at 3–4) are riddled with language—"react quickly," "reliability," "flexibility," "speed," "improve," "shortening," "accelerate"—that the Court already determined was puffery. *Compare* SAC ¶¶64–67, *with* MTD Order at 7–8, 15. The Opposition ignores the Court's holding and Defendants' puffery cases, which involve much of the same language Plaintiffs challenge here. MTD at 13.

Plaintiffs instead cite cases that, unlike here, alleged objectively verifiable statements. *See Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) (defendant coupled specific facts about investment with representation that investment was "a sure thing"); *In re Bridgepoint Educ., Inc. Secs. Litig.*, 2013 WL 5206216, at *18, 19–20 (S.D. Cal. Sept. 13, 2013) (while statements about "quality" of staffing were not actionable, specific statements regarding student persistence programs were actionable); *Mulligan v. Impax Laby's, Inc.*, 36 F. Supp. 3d 942, 966–67 & n.2 (N.D. Cal. 2014) (statements that company was "confident" and would resolve issue "as quickly as possible" were not actionable, but other statements containing factual representations were); *Jaeger v.*

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 872–73 (W.D. Wash. 2022) ("statements of fact and conclusions or projections drawn from facts" about home purchases actionable).

Plaintiffs argue that "context matters." Opp'n at 8. But they ignore the relevant context: disclosures of more than a year's worth of fluctuating inventory and inventory in-transit, factual disclosures and warnings about supply chain disruptions and the pandemic's impact, and improving financial performance. MTD at 5–8. Plaintiffs' "context" argument thus fails. *See Macomb Cnty. Employees' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1099 (9th Cir. 2022) (rejecting context argument because "at the time [defendant's] executives made the six challenged statements, the company's sales were still growing in China").

### 3. The Supply Chain Statements Are Not False or Misleading.

Plaintiffs cite alleged inventory and shipping issues. Opp'n at 6. But even assuming their vague allegations are true, none of them contradict the challenged statements. Defendants did not make guarantees with respect to shipments, inventory, fashion cycles, processing time, or product ordering. MTD at 3–4. Although "the statement[s] … described Torrid's efforts to 'minimize' [inventory and supply chain] risks," they never promised that "Torrid's approach would entirely eliminate inventory risk or render the company immune to supply chain issues." MTD Order at 10.

Further, Plaintiffs' arguments cannot be squared with the market's knowledge of supply chain issues and the robust information Torrid disclosed. Indeed, ***Plaintiffs ignore their own admission that customers knew about stockouts and order backlogs before the IPO***. SAC ¶43. This is no surprise. Such issues were widely reported, and the Registration Statement disclosed a history of fluctuating inventory alongside specific disclosures that Torrid's "operations and financial performance have been affected by, and may continue to be affected by, the COVID-19 pandemic," that Torrid's suppliers and manufacturers had also been affected, plus numerous warnings about supply chain disruptions, inventory, and markdowns. MTD at 5–8. Plaintiffs' analyst report acknowledges that "supply chain challenges" were "expected." Opp'n

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Ex. C. These issues "cannot support a securities claim." *Golubowski v. Robinhood Mkts, Inc.*, 2024 WL 269507, at *15 (N.D. Cal. Jan. 24, 2024) (granting motion to dismiss where "a reasonable investor would have been aware of the meme stock and Dogecoin events in early 2021").

At core, Plaintiffs allege that by disclosing accurate historical information, Torrid implied that its operations would continue operating "at peak speed, flexibility, and efficiency." Opp'n at 7. But "Section 11 does not recognize such a theory of liability, or require corporations to downplay or derogate their accurate historical results." *Coty*, 2016 WL 1271065, at *6 (citing cases); *accord In re Convergent Techs. Secs. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991).

### 4.    The Risk Disclosure Statements Are Not Actionable.

The Opposition ignores the Court's holding that "[a] reasonable investor would not read a risk disclosure about 'disruptions' causing 'delayed shipments' to imply that Torrid, in the leadup to the IPO, had categorically experienced neither disruptions nor delayed shipments." MTD Order at 14. Plaintiffs claim that "Defendants' reliance on *Noah* fails," but the Court already determined that "[t]he risk disclosure in this case closely resembles the non-misleading risk disclosure in *Noah Educational*." *Id.* Plaintiffs miss the point of the MTD Order. Risk disclosures concerning inventory, delayed shipments, and supply chain disruptions are not actionable, because they "concern[] a risk that is inherent in running a business, always present to some extent, and the significance of which is not a yes-or-no question of occurrence but one of degree." *Id.* at 13. By contrast, Plaintiffs' cases involved "discrete, relatively rare risk[s], the occurrence of which is itself a significant event." *Id. See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 984 (9th Cir. 2008) (stop-work order); *Lyft*, 484 F. Supp. 3d at 768–69 (sexual assault by drivers); *In Re Stable Rd. Acquisition Corp.*, 2022 WL 2762213, at *8 (C.D. Cal. July 13, 2022) (FAA rejecting license approval).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**C.      Plaintiffs' Regulation S-K Claim Also Fails.**

Plaintiffs' Regulation S-K arguments ignore (a) the Registration Statement's ample warnings and factual disclosures, (b) Plaintiffs' admission that Torrid's customers were aware of shipping and inventory issues before the IPO (SAC ¶43), and (c) that Torrid's performance the quarter of the IPO improved across the board. *Compare* MTD at 17–19, *with* Opp'n at 13–16. For these reasons alone, Plaintiffs cannot state claims under Regulation S-K.

Indeed, the fact that Torrid's financial performance ***markedly improved*** through the IPO defeats Plaintiffs' Item 303 claim as a matter of law. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). As the Ninth Circuit held in *Steckman*, against the backdrop of "positive factual data" in the quarter of a public offering, "***management could not under any imaginable standard***" have "kn[own] that there was a trend and unreasonably failed to predict that there was a likelihood that the company's future earnings and profits would be materially affected." *Id.* at 1297–98 (emphasis added); *see also In re Dropbox Secs. Litig.*, 2020 WL 6161502, at *8 (N.D. Cal. Oct. 21, 2020) (plaintiffs failed to allege how "waning user conversion rate had a materially adverse impact on the company's revenue," and "Dropbox's revenue continued to grow after its IPO"); *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *24 (N.D. Cal. Dec. 18), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) ("This one-off allegation does not support an inference that the 'adverse trends' were either known to Defendants or could have reasonably been expected to have a material impact on TriNet's net sales, revenues or income."); *Robinhood*, 2024 WL 269507, at *14 (dismissing claim where "the complained of declines were not historically extraordinary when viewed in context of the company's overall financials").

Given that Torrid's financial performance improved through the IPO, Plaintiffs' claim that courts have recognized "adverse trends and uncertainties manifested within the same quarter as an IPO" is of no moment. Opp'n at 15. Present in all of Plaintiffs' cases—and missing here—were known, material, and adverse impacts on ***financial***

8

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

*performance*. *See Sundaram v. Freshworks Inc.*, 2023 WL 6390622, at *8 (N.D. Cal. Sept. 28, 2023) (declining rates in year-over-year revenue, calculated billings growth, and net dollar retention); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 121 (2d Cir. 2012) (defendant aware that it "might have to accept returns of a substantial volume, if not all, of the chips it had delivered to its major customers"); *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1066 (M.D. Tenn. 2022) (revenue, gross profits, and EBITDA declining at time of IPO); *Facebook*, 986 F. Supp. 2d at 513 ("Facebook was aware of the material negative impact on Facebook's revenues … ten days before the IPO"); *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999) ("sales were in material decline at the time of the Offering"); *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 890 (M.D. Tenn. 2013) (revenues per admission began steep decline before IPO); *In re Lyft Inc. Secs. Litig.*, 484 F. Supp. 3d 758, 763 (N.D. Cal. 2020) ("Company was days away from closing its first quarter with a massive loss"); *Lako v. Loandepot, Inc.*, 2023 WL 444151, at *11 (C.D. Cal. Jan. 24, 2023) (imminent cessation of unsustainable loan programs would decrease revenues); *In re Blue Apron Holdings, Inc.*, 2020 WL 1950783, at *9 (E.D.N.Y. Apr. 22, 2020) (company admitted that delays "adversely affected [company's] financial condition").

Regardless, inventory and shipping disruptions cannot support Plaintiffs' claims. Investors know these are "part of everyday life for a business," MTD Order at 14, and the Registration Statement disclosed robust on-point warnings as well as data showing inventory and inventory in-transit had fluctuated pre-IPO. *See* MTD at 5–8. Plaintiffs concede that customers were aware of these issues before the IPO. SAC ¶43. Thus, these issues "cannot support a securities claim" under Item 105. *Robinhood*, 2024 WL 269507, at *15.

Moreover, Plaintiffs identify no facts suggesting that Defendants knew that transitory shipping delays caused by "the emergence of the Delta variant of COVID-19" would persist. SAC ¶40. Consequently, Plaintiffs do not "sufficiently allege that the [issues] in the May to July 2021 period 'accurately reflect[] persistent conditions'

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

of [Torrid's] business," as required to state a claim under Item 303. *Golubowski*, 2023 WL 1927616, at *8; *see also Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 245 (S.D.N.Y. 2015), *aff'd* 660 F. App'x 23 (2d Cir. 2016) (no trend "given the pleaded volatility of the smartphone market").[1]

### D.    Plaintiffs' Shipping Delay Claim Is Time Barred.

The SAC starkly admits that public statements made on September 8, 2021 "confirmed what Torrid knew at the time of the IPO, but investors did not: Torrid's previously improving supply chain was getting worse, the Company was experiencing heightened delay in shipments, and these problems were wreaking havoc on Torrid's financial performance." SAC ¶53. Plaintiffs' failure to file within one year of this disclosure makes their shipping-delay claims untimely. MTD at 19–20.

Plaintiffs assert that the September 8 disclosure was "insufficient" to start the limitations period because Torrid's stock price subsequently rose. Opp'n at 17. This market reaction points to a fundamental flaw in Plaintiffs' claim: the key corrective disclosure actually caused a surge in the stock price. But it is not a basis to toll the statute of limitations. The "one-year statute of limitations begins to run when the plaintiff discovered or should have discovered the untrue statement or omission." *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *12 (S.D. Cal. Sept. 25, 2019); *see also* 15 U.S.C. § 77m (actions must be "brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence"). Plaintiffs cite no authority allowing a plaintiff to discover an untrue statement, wait months until the stock drops for an unrelated reason, and then wait another year to file a claim. Moreover, Plaintiffs admit that Torrid's stock dropped below its offering price ($21 per share, SAC ¶4) on September 13, 2021, and

---

[1]    Plaintiffs' assertion that "Defendants do not challenge that the worsening delays created an actionable" uncertainty is incorrect. Opp'n at 13. The SAC uses the terms "trends, events or uncertainties" interchangeably. SAC ¶82. And the same legal standard applies to either term. *See Terenzini v. GoodRx Holdings, Inc.*, 2022 WL 122944, at *8 (C.D. Cal. Jan. 6, 2022). However labeled, Plaintiffs' claim is deficient.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

by late October 2021 was trading below $15 per share. *See* ECF 98-3 (Stock Chart). Yet Plaintiffs did not file until, at the earliest, ***November 16, 2022***. ECF 1. "The [SAC] and judicially noticeable materials therefore show it is simply false that [alleged] damages did not accrue." *In re YogaWorks, Inc. Secs. Litig.*, 2020 WL 2549290, at *4 (C.D. Cal. Apr. 23, 2020).

Equally meritless is Plaintiffs' suggestion that the September 8, 2021 disclosure did not "fully reveal[]" the basis for Plaintiffs' claim. Opp'n at 17–18. The limitations period "does not reset simply because additional information is revealed that could make for a stronger claim." *Lowthorp v. Mesa Air Grp. Inc.*, 2021 WL 3089118, at *8 (D. Ariz. July 22, 2021); *see also Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *22 (N.D. Cal. Jan. 17, 2017) (same); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1054 (N.D. Cal. 2016) (same). Here, unlike in Plaintiffs' cases, Plaintiffs flatly admit that the September 8, 2021 disclosure revealed the basis for a claim. SAC ¶¶52–53.[2] The claims are therefore time-barred.

### E.    Plaintiffs' Claims Are Barred by Negative Causation.

Plaintiffs do not dispute that Torrid's stock price surged by 32% after the September 8, 2021 disclosure and stayed elevated for days. Ex. 4 (Stock Chart); Opp'n at 19. These facts preclude causation. *See Hoang v. ContextLogic, Inc.*, 2023 WL 8879263, at *16 (N.D. Cal. Dec. 22, 2023). Plaintiffs claim that "Defendants' statements about delays were blunted by concurrent positive statements," but those allegations are not in the SAC. Opp'n at 19. While Plaintiffs now argue that "the market did not appreciate the impact of the inventory delays until later disclosures," the SAC

---

[2]    *Cf. Pace v. Quintanilla*, 2015 WL 652719, at *6 (C.D. Cal. Feb. 13, 2015) (denying motion to dismiss where there were "no allegations … showing that a reasonable investor definitely would have discovered Defendants' scienter"); *Booth v. Strategic Realty Tr., Inc.*, 2014 WL 3749759, at *6 (N.D. Cal. July 29, 2014) (disclosure of a "lack of control in one specific area" did not mean that "all investors should have known enough to bring a claim"); *Rafton v. Rydex Series Funds*, 2011 WL 31114, at *10 (N.D. Cal. Jan. 5, 2011) (graphs in prospectus "did not clearly give Plaintiffs notice of the misrepresentations").

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

alleges that "Wehlitz's [September 8, 2021] remarks … ***confirmed what Torrid knew [about inventory delays] at the time of the IPO, but investors did not***." *Compare* Opp'n at 19, *with* SAC ¶53. It is the SAC's allegations that control, not Plaintiffs' unpled (and contradictory) theories. *See Hoang*, 2023 WL 8879263, at *16 (declining to consider disclosure that "is not pled in the SAC"); *In re Shoretel Inc., Secs. Litig.*, 2009 WL 248326, at *6 (N.D. Cal. Feb. 2, 2009) (granting motion to dismiss because "plaintiffs … affirmatively alleged that the January 7, 2008 press release caused the losses").

Plaintiffs' cited cases do not permit reliance on post-complaint corrective disclosures. Opp'n at 20. In *Kuhne*, the court found that the plaintiff could rely on ***pre-complaint*** disclosures. *Kuhne v. Gossamer Bio, Inc.*, 2021 WL 1529934, at *7 (S.D. Cal. Apr. 19, 2021). *Snap* did not address post-filing disclosures either. *In re Snap Inc. Secs. Litig.*, 2018 WL 2972528, at *9 (C.D. Cal. June 7, 2018). Instead, the court addressed whether plaintiffs, who filed when Snap's stock price was above its IPO price, had standing. *Id. Snap* confirmed that "Section 11(e) sets the measure of damages for a plaintiff still holding her securities at the 'value' of those securities ***at the time of suit***." *Id.* Hence, post-filing corrective disclosures are barred. *See In re Merrill Lynch & Co. Rsch. Reports Secs. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003); *Cai v. Switch*, 2020 WL 3893246, at *4 (D. Nev. July 10, 2020).[3]

## III.   CONCLUSION

Defendants respectfully request that the Court dismiss the SAC with prejudice.

---

[3]   In a footnote, Plaintiffs assert that "Defendants ignore … two other events on December 8, 2021 and June 7, 2022." Opp'n at 19 n.6. Plaintiffs do not explain why these events matter. The SAC alleges that inventory issues were disclosed on September 8, 2021 and December 8, 2022. SAC ¶¶52–53, 62. "Plaintiffs have failed to link" their additional disclosures "to any revelation … that had not already been disclosed" to the market. *Hoang*, 2023 WL 8879263, at *16. And market reaction to financial results "reveals nothing about what was allegedly misrepresented in or omitted from the Registration Statement." *Shoretel*, 2009 WL 248326, at *5.

12

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

DATED: March 22, 2024

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: */s/ Austin Norris*
Mark Holscher (SBN 139582)
Austin Norris (SBN 284603)
KIRKLAND AND ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone:   (310) 552-4200
Facsimile:    (310) 552-5900
Email: mark.holscher@kirkland.com
Email: austin.norris@kirkland.com

Matthew Solum (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4688
Facsimile: (212) 446-4900
Email: matthew.solum@kirkland.com

*Attorneys for the Torrid, Sycamore, and Individual Defendants*

DATED: March 22, 2024

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Alexander K. Talarides*
James N. Kramer (SBN 154709)
Alexander K. Talarides (SBN 268068)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, California 94105
Telephone:   (415) 773-5700
Facsimile:    (415) 773-5759
Email: jkramer@orrick.com
Email: atalarides@orrick.com

Darrell S. Cafasso (*Pro Hac Vice*)

13
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Jennifer Keighley (*Pro Hac Vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone:   (212) 506-5000
Facsimile:    (212) 506-5151
Email: dcafasso@orrick.com
Email: jkeighley@orrick.com

*Attorneys for the Underwriter Defendants*

14
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## ATTESTATION OF COMPLIANCE

Pursuant to L.R. 5-4.3.4, the filer, Austin Norris, attests that all other signatories listed, and on whose behalf the filing is being submitted, concur in the filing's content and have authorized the filing.

DATED:  March 22, 2024                    By: */s/ Austin Norris*
                                              Austin Norris

                                              *Attorney for the Torrid, Sycamore, and*
                                              *Individual Defendants*

15
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## CERTIFICATE OF COMPLIANCE

I hereby attest that this brief contains 4,200 words, which complies with the word limit of the Court's Procedure 7.


DATED: March 22, 2024                    /s/ Austin Norris

                                         *Attorney for Defendants*

16
**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**